IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| IRISH 4 REPRODUCTIVE HEALTH *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES *et al.*, <br><br> Defendants. | Case No. 3:18-cv-0491-PPS-JEM |

## FEDERAL DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS

Federal Defendants move to stay the proceedings in this case in light of the Supreme Court's recent grant of certiorari in *Trump v. Pennsylvania* to review the validity of the Final Rules challenged here. The Supreme Court will soon decide questions of law that will have a controlling (or, at the very least, significant) effect on the claims raised in this case with respect to both the Final Rules and the Settlement Agreement. Indeed, the Supreme Court's grant of certiorari has already caused another court to stay a case challenging the Final Rules *sua sponte*. Minute Order, *California v. HHS*, 4:17-cv-5783 (Jan. 22, 2020).

The Supreme Court is expected to issue a decision in *Trump v. Pennsylvania* in just a few months—by the end of the current Term in June. There is thus no reason to litigate this case prior to the Supreme Court's decision. To move forward would unnecessarily duplicate proceedings, threaten to create inconsistent rulings, and place unnecessary burdens on both the parties and this Court. Accordingly, in order to promote judicial economy and preserve the

1

parties' resources, Federal Defendants respectfully request that further proceedings in this case be stayed pending the Supreme Court's decision.

## BACKGROUND

Plaintiffs present two theories related to the so-called contraceptive mandate. First, Plaintiffs challenge the Final Rules promulgated by the Departments of Health and Human Services, Labor, and the Treasury (the Agencies) to expand conscience exemptions to the contraceptive mandate.[1] Second, Plaintiffs challenge the Settlement Agreement between the government and Notre Dame to resolve Notre Dame's prior litigation concerning the contraceptive mandate. That Settlement Agreement was based in part on the Agencies' determination, articulated in the Interim Final Rules which proceeded the Final Rules, that requiring entities with religious objections, like Notre Dame, to comply with the contraceptive mandate or the accommodation would violate the Religious Freedom Restoration Act (RFRA). Settlement Agreement, Ex. A to Compl., ECF No. 1-1.

The Final Rules were preliminarily enjoined by courts in Pennsylvania and California. *See Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa. 2019); *California v. HHS*, 351 F. Supp. 3d 1267 (N.D. Cal. 2019). Defendants appealed the preliminary injunctions to the Third and Ninth Circuits, which upheld the injunctions. *Pennsylvania v. Trump*, 930 F.3d 543 (3d Cir. 2019), *as amended* (July 18, 2019); *California v. HHS*, 941 F.3d 410, 418 (9th Cir. 2019). Federal defendants and intervenor-defendant then sought Supreme Court review of the Third Circuit's decision.[2] Pet. for a Writ of Cert., *Trump v. Pennsylvania*, No. 19-454 (U.S. filed Oct.

---

[1] Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act (ACA), 83 Fed. Reg. 57,536 (Nov. 15, 2018); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 83 Fed. Reg. 57,592 (Nov. 15, 2018).

[2] The deadline for filing a petition for certiorari in the Ninth Circuit case was extended to February 19, 2020.

3, 2019); Pet. for a Writ of Cert., *Little Sisters of the Poor v. Pennsylvania*, No. 19-431 (U.S. filed Oct. 1, 2019).

On January 17, 2020, the Supreme Court granted certiorari to review the Third Circuit's decision. *See* Orders in Pending Cases, Nos. 19-431, 19-454 (Jan. 20, 2020) (granting certiorari and consolidating the cases). A decision is expected by the end of June 2020.

## ARGUMENT

Given the Supreme Court's grant of certiorari in *Trump v. Pennsylvania*, this case should be stayed. The Supreme Court will determine whether the Final Rules are lawful, and its decision is likely to be dispositive of Plaintiffs' challenges to the Final Rules here. In addition, the Supreme Court's decision as to the Final Rules is likely to dispose of Plaintiffs' claims against the Settlement Agreement as well. If the Supreme Court upholds the Final Rules, then this Court would not have jurisdiction to consider Plaintiffs' challenge to the Settlement Agreement because a ruling invalidating the Settlement Agreement would not redress Plaintiffs' injuries. (In other words, even if the Settlement Agreement did not exist, Notre Dame would be entitled to take the exemption provided by the Final Rules). And even if the Court had jurisdiction over the challenges to the Settlement Agreement, the Supreme Court's decision regarding whether the Final Rules are justified by RFRA is likely to have a significant, if not controlling, effect on Plaintiffs' Settlement Agreement claims. For example, if the Supreme Court holds that RFRA and/or the ACA provide statutory authority for the Final Rules, that holding would resolve entirely or substantially narrow plaintiffs' argument that the Settlement Agreement is void for illegality. Given the significant overlap of legal issues, staying all proceedings here until the Supreme Court issues its decision would promote judicial economy and avoid wasting the parties' resources. Given that the Supreme Court is expected to issue a decision within the next five months, this stay will be of limited duration.

### A. <u>Courts Routinely Stay Proceedings to Await Guidance from Appellate Courts.</u>

A trial court has broad discretion to stay a case pending the outcome of proceedings in another court. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In considering a stay, "[r]elevant factors for the Court to consider include whether a stay will unduly prejudice or tactically disadvantage the non-moving party, whether a stay will simplify the issues in question and streamline the trial, and whether a stay will reduce the burden of litigation on the parties and on the court." *Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*, No. 15-C-1038, 2016 WL 270224, at *1 (E.D. Wis. Jan. 20, 2016).

Courts within the Seventh Circuit routinely stay proceedings where resolution of an appeal in another matter may present useful guidance. *See Walker v. Monsanto Co. Pension Plan*, 472 F. Supp. 2d 1053, 1055 (S.D. Ill. 2006) (noting that "[s]uch stays are entered quite routinely" and collecting cases); *see also, e.g.*, *Texas Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (staying a case pending the Fifth Circuit's resolution of another case); *Hannahan Endodontic Grp.*, 2016 WL 270224, at *1 (staying a case pending the Supreme Court's resolution of *Spokeo*); *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15 C 5182, 2016 WL 47916, at *5 (N.D. Ill. Jan. 5, 2016) (same); *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 1:08-cv-135, 2010 WL 567993, at *1 (N.D. Ind. Feb. 12, 2010) (staying case until outcome of Supreme Court decision, so as to provide the court with "clear direction on the precise standard to be applied" in evaluating the claims in the case); *Walker*, 472 F. Supp. 2d at 1055 (staying a case pending the resolution of a petition for certiorari).

Courts in other jurisdictions similarly stay proceedings to await guidance from appellate courts. *See, e.g.*, *Univ. of Colo. Health Mem'l Hosp. v. Burwell*, 233 F. Supp. 3d 69, 88 (D.D.C. 2017) ("Because many of the applicable issues may be resolved by the D.C. Circuit, and because the D.C. Circuit may otherwise provide instruction on the issues here, the Court finds a stay would serve the interests of judicial efficiency."); *Cal. Ass'n of Health Facilities v. Maxwell-Jolly*, No. 10-cv-3259, 2010 WL 2612694, at *2 (C.D. Cal. June 24, 2010) (granting a stay pending Supreme Court's decision on a petition for certiorari, because the plaintiffs were challenging the same policy at issue in the case pending before the Supreme Court); *Coombs v. Diguglielmo*, No. 04-cv-1841, 2004 WL 1631416, at *1 (E.D. Pa. July 21, 2004) (stay granted in light of pending petition for certiorari in case that may have "significant impact" on case before the court); *Tax Analysts & Advocates v. IRS*, 405 F. Supp. 1065, 1067 (D.D.C. 1975) (staying proceedings because "the Supreme Court could, in effect, overrule [a relevant precedent] should it choose to grant the petition for certiorari").

These principles apply with full force to this case. Indeed, the district court in the Northern District of California recently *sua sponte* stayed *California v. HHS*, 4:17-cv-5783—another ongoing challenge to the validity of the Final Rules—pending the Supreme Court's decision. *See* Minute Order, *California v. HHS*, 4:17-cv-5783 (Jan. 22, 2020) ("ORDER by Hon. Haywood S. Gilliam, Jr. STAYING this action and holding all pending motions in abeyance in light of the Supreme Court granting certiorari in *Little Sisters of the Poor v. Pennsylvania*, Case No. 19-431, and *Trump v. Pennsylvania*, Case No. 19-454."). Similarly, the district court in the Eastern District of Pennsylvania had stayed its case involving challenges to the validity of the Final Rules as soon as it became clear that the parties would seek further review of the Third Circuit's decision, prior to the parties' filing for certiorari, much less the Supreme Court granting it. *See* Order 4-5, *Pennsylvania v. Trump*, No. 17-cv-4540 (E.D. Pa.

5

July 31, 2019), ECF No. 232 ("WHEREAS further appellate review may impact the posture and resolution of the outstanding claims and issues raised by the parties . . . making resolution of those motions at present an inefficient use of judicial resources . . . IT IS HEREBY ORDERED that further proceedings in this matter are STAYED . . . pending resolution of any appeal of the Third Circuit's decision . . . ."). And the government has recently filed an unopposed motion for a stay in a third pending case challenging the Final Rules. Defs.' Unopposed Mot. for Stay of Proceedings, *Massachusetts v. HHS*, 17-cv-11930, (D. Mass. filed Feb. 5, 2020), ECF No. 131.

### B. Awaiting Supreme Court Guidance Is the Most Efficient Way to Proceed in This Case.

As the above courts have recognized, it makes eminent sense for a district court to refrain from deciding the very same issues that will soon be resolved by a binding appellate court. Here, there can be no doubt that there is significant overlap between the legal issues raised in this case and those before the Supreme Court in *Trump v. Pennsylvania*. Both cases challenge the validity of the Final Rules.

The Supreme Court granted certiorari in *Trump v. Pennsylvania* to address "[w]hether the agencies had statutory authority under the ACA and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.*, to expand the conscience exemption to the contraceptive-coverage mandate" and "[w]hether the agencies' decision to forgo notice and opportunity for public comment before issuing the interim final rules rendered the final rules—which were issued after notice and comment—invalid under the Administrative Procedure Act, 5 U.S.C. 551 *et seq.*, 701 *et seq.*" Pet. for a Writ of Cert. at I, *Trump v. Pennsylvania*, No. 19-454 (U.S. filed Oct. 3, 2019); *see also* Pet. for a Writ of Cert. at ii, *Little Sisters of the Poor v. Pennsylvania*, No. 19-431 (U.S. filed Oct. 1, 2019) (listing one of the questions presented as "[w]hether the federal

6

government lawfully exempted religious objectors from the regulatory requirement to provide health plans that include contraceptive coverage").

These questions line up squarely with Plaintiffs' claims here about the validity of the Final Rules. *See* Am. Compl. ¶¶ 189-98, ECF No. 43 (Plaintiffs' third cause of action asserting that the Final Rules are procedurally invalid); Am. Compl. ¶¶ 206-12 (Plaintiffs' fourth cause of action asserting that, *inter alia*, the Final Rules are contrary to the ACA and lacked valid justification).

Moreover, the Supreme Court's resolution of these issues will likely control, or at least provide significant guidance on, Plaintiffs' other claims as well. For example, the Supreme Court's resolution of the statutory authority for the Final Rules will likely affect the resolution of Plaintiffs' constitutional claims, including their Establishment Clause claim. If the Supreme Court determines that RFRA requires the religious exemption, then Plaintiffs could prevail on their Establishment Clause claim, Am. Compl. ¶¶ 213-17, only if this application of RFRA violates the Establishment Clause. As to Plaintiffs' challenge to the Settlement Agreement, this Court would likely be deprived of jurisdiction over those claims if the Supreme Court upholds the Final Rules, because, among other things, a ruling invalidating the Settlement Agreement would not redress Plaintiffs' alleged injuries. Furthermore, even if this Court had jurisdiction over the Settlement Agreement claims, a decision by the Supreme Court that the Final Rules are authorized by RFRA and/or the ACA would likely dispose of in its entirety or significantly narrow Plaintiffs' argument that the Settlement Agreement is void for illegality. If, on the other hand, the Supreme Court holds that the Final Rules are unlawful, it would still substantially narrow the issues under consideration in this case and provide this Court with relevant guidance. Thus, the Supreme Court's forthcoming decision is certain to be highly relevant to the legal issues currently confronting this Court.

7

If the Court were to deny a stay here, that would unnecessarily consume the Court's and the parties' resources, and would threaten to complicate future stages of these proceedings. This case challenges agency action, and thus, it should be decided on cross motions for summary judgment and based on the administrative record provided by the Agency. The parties' summary judgment motions, however, will raise many of the same issues that are already before the Supreme Court. That briefing process, and this Court's consideration of the motions, would thus be wasteful in the absence of guidance from the Supreme Court. *Cf. Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 59 (D.D.C. 2013) (granting a stay "[n]ot needing more lawyers to spend more time on more briefs on more subjects"); *Canal Props. LLC v. Alliant Tax Credit V, Inc.*, No. 04-cv-3201, 2005 WL 1562807, at *3 (N.D. Cal. June 29, 2005) (exercising the "power to stay duplicative litigation" because "given the similarity of issues in the two cases, and the potential for [the case on appeal]'s preclusive effect, it would be a poor use of judicial resources to proceed").[3]

In addition, moving forward now—despite the uncertainty inherent in not awaiting Supreme Court review—would create a "risk of inconsistent rulings that the appellate courts [or this Court] might then need to disentangle." *Hawaii v. Trump*, 233 F. Supp. 3d 850, 856 (D. Haw. 2017). For example, a future Supreme Court ruling could "change[] the applicable law," *id.*, such that any intervening rulings by this Court will be nullified or will need to be made anew. Even if the parties were to file motions for summary judgment now and the Court were to decide them, all of it could be for naught—if the Supreme Court freshly articulates the governing legal framework for these cases, this Court (or an appellate court) would then have to go back

---

[3] To the extent Plaintiffs intend to seek any discovery in this case, Federal Defendants would oppose it. Any such discovery disputes would also impose significant burdens on the Court and the parties—burdens which may be avoided by awaiting the Supreme Court's decision in *Trump v. Pennsylvania*.

and re-analyze everything to ensure those prior decisions are consistent with the Supreme Court's decision.

In short, the Supreme Court's decision may control this case—and, at the very least, it will permeate every aspect of this case. Given the Supreme Court's upcoming review, in these circumstances it is far more efficient—and far less burdensome on the parties and the Court—to stay proceedings.

### C. <u>Potential Harm to Plaintiffs Does Not Warrant Proceeding.</u>

In contrast to the significant waste of resources that will occur if this case proceeds before the Supreme Court decides *Trump v. Pennsylvania*, Plaintiffs would not suffer significant harm in the absence of a stay. Plaintiffs have never moved for preliminary injunctive relief in the eighteen months this case has been pending. The Final Rules remain enjoined nationwide, and Plaintiffs' position will continue to be the same as it has been throughout this litigation. And Federal Defendants' proposed stay is of limited duration—the Supreme Court has already granted certiorari to address the validity of the Final Rules and is expected to rule by this June. Thus, all factors weigh squarely in favor of a stay of these proceedings.

\*      \*      \*

Federal Defendants have conferred with counsel for the other parties. Notre Dame has indicated that it agrees this case should be stayed, and Plaintiffs have indicated that they will oppose a stay. Based on the foregoing, Federal Defendants respectfully request that their motion be granted. In accordance with the Local Rules of this Court, a proposed order is attached hereto.

Dated: February 5, 2020 Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

/s/ Rebecca M. Kopplin
REBECCA M. KOPPLIN
Trial Attorney (California Bar No. 313970)
JUSTIN M. SANDBERG
Senior Trial Counsel
MICHAEL GERARDI
CHRISTOPHER R. HEALY
DANIEL RIESS
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 514-3953
Facsimile: (202) 616-8470
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Federal Defendants*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Federal Defendants' Motion to Stay All Proceedings was served on counsel for all parties using the Court's CM/ECF system on February 5, 2020.

*/s/ Rebecca M. Kopplin*
REBECCA M. KOPPLIN
*Counsel for Federal Defendants*