UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| IRISH 4 REPRODUCTIVE HEALTH, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>*Defendants*. | Case No. 3:18-cv-491-PPS-MGG<br><br>Judge Philip P. Simon |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**FEDERAL DEFENDANTS' MOTIONS TO STAY ALL PROCEEDINGS**

Janice Mac Avoy
Anne Aufhauser
R. David Gallo
FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
janice.macavoy@friedfrank.com
anne.aufhauser@friedfrank.com
david.gallo@friedfrank.com

Jeffrey A. Macey
*Macey Swanson LLP*
445 N. Pennsylvania Street, Suite 401
Indianapolis, IN 46204
Telephone: (317) 637-2345
jmacey@MaceyLaw.com

*Counsel for all Plaintiffs*

(continued on next page)

Richard B. Katskee
Alison Tanner
*Americans United for Separation of
  Church and State*
1310 L Street, NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-3234
katskee@au.org
tanner@au.org

Fatima Goss Graves*
Gretchen Borchelt
Sunu Chandy
Michelle Banker
Lauren Gorodetsky*
*National Women's Law Center*
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Telephone: (202) 588-5180
fgossgraves@nwlc.org
gborchelt@nwlc.org
schandy@nwlc.org
mbanker@nwlc.org
lgorodetsky@nwlc.org

*Counsel for Plaintiffs Irish 4 Reproductive
Health and Jane Doe 1*

Emily Nestler
Jessica Sklarsky
*Center for Reproductive Rights*
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
enestler@reprorights.org
jsklarsky@reprorights.org

*Counsel for Plaintiffs Natasha Reifenberg,
Jane Doe 2, and Jane Doe 3*


\* Motion for *pro hac vice* admission
forthcoming.

**INTRODUCTION**

Two years ago, in February 2018, the University of Notre Dame announced that it would stop complying with the contraceptive coverage requirement of the Affordable Care Act, citing a Settlement Agreement that it executed with the Federal Government. In the years since, Notre Dame has refused to cover the full range of FDA-approved contraception for women, denying its students and employees the coverage that they are entitled by law to receive. With each day that passes, Plaintiffs and others enrolled in health plans offered to Notre Dame students and employees continue to incur harm that is immediate and recurring. And yet Plaintiffs' relief has been delayed in large part due to Federal Defendants' multiple requests for lengthy extensions and issuance of the Final Rules mid-litigation, which had the effect of restarting the clock on these proceedings.

Federal Defendants now move to stay all proceedings based on the erroneous assertion that the Supreme Court's decision in *Trump v. Pennsylvania* will resolve the legal and factual issues in this case. ECF No. 85. Defendants are mistaken. And it is their burden to justify a stay. First, the *Pennsylvania* action involves only a challenge to the Final Rules and does not involve any claim or present any question concerning the settlement, challenged here, that permanently exempts Notre Dame and the other signatories from the ACA contraceptive coverage requirement *and* any materially similar future regulations requiring contraceptive coverage. Second, with respect to the Final Rules, the Supreme Court's upcoming decision cannot be dispositive because the Court is reviewing a preliminary injunction, which is, by definition, *preliminary* and does not bar Plaintiffs from litigating their claims. Third, neither of the lower courts in the *Pennsylvania* action reached the question whether the Final Rules and Settlement Agreement violate the Establishment Clause, and so even if the posture of *Pennsylvania* involved review of a permanent rather than preliminary injunction, the Supreme Court's decision in that case would not resolve the Establishment Clause claims here. Finally, the Supreme Court may well not address any question of substantive illegality

1

because a determination that the Final Rules are likely procedurally infirm would be ample ground for affirmance in *Pennsylvania*.

Thus, even if the *Pennsylvania* decision turned out to be relevant to some of the claims in this action, it cannot be dispositive for any of them. Furthermore, the parties anticipate that the Supreme Court will issue a decision in *Pennsylvania* by the end of June of this year, ECF No. 85 at 1, well before this Court will be asked to weigh in on dispositive motions in the instant action. A stay will therefore accomplish nothing aside from further delaying development of the factual record necessary for the parties' inevitable preparation of dispositive motions or trial in this case. Federal Defendants have thus failed to satisfy their burden of justifying a stay, which not only would be unwarranted but also would prolong Plaintiffs' harm and further delay resolution of this matter.

## BACKGROUND

Over a year and a half ago, on June 26, 2018, Plaintiffs filed this action challenging both (1) a private Settlement Agreement that Federal Defendants executed with Notre Dame (and more than 70 other entities), exempting Notre Dame in perpetuity from the ACA contraceptive coverage requirement, any materially similar regulation or agency policy, and potentially even other laws requiring the provision of contraceptive coverage to the university's students or employees, (Settlement Agreement, ECF No. 1-1, ¶¶ 2, 4), and (2) Interim Final Rules ("IFRs") issued by the Federal Defendants that create expansive religious and moral exemptions from the contraceptive coverage requirement.[1] ECF No. 1, ¶ 6 & n.2. Defendants sought and obtained extensions to answer the complaint, ECF Nos. 14 & 28, but before ever doing so—on November 15, 2018—

---

[1] Religious Exemptions and Accommodations for Coverage of Certain Preventative Services Under the Affordable Care Act, 82 Fed. Reg. 47,792, 47,807 (Oct. 13, 2017); Moral Exemptions and Accommodations for Coverage of Certain Preventative Services Under the Affordable Care Act, 82 Fed. Reg. 47,838, 47,849 (Oct. 13, 2017) ("Interim Final Rules" or "IFRs").

Federal Defendants promulgated the materially identical Final Rules.[2] This, in turn, forced Plaintiffs to amend their complaint on December 5, 2018, ECF No. 43, and restarted the time for Defendants to respond. Thereafter, this case was put on hold yet again at the request of Federal Defendants, this time because of a government shutdown at the end of December 2018 and lasting well into January 2019. Defendants finally filed their Motions to Dismiss on February 12, 2019, ECF Nos. 58 & 59, and those motions were argued on June 10, 2019. This Court issued an Opinion and Order on January 16, 2020, denying Defendants' Motions to Dismiss on all but two counts and allowing the remainder of Plaintiffs' claims against both the Final Rules and the Settlement Agreement to proceed—including Plaintiffs' claims that the Settlement Agreement is void *ab initio* for illegality and that both the Settlement Agreement and the Final Rules violate the Establishment Clause of the U.S. Constitution. ECF No. 80.

Meanwhile, Pennsylvania and New Jersey brought challenges to the Rules only, as did a coalition of states led by California; and in each case the courts issued and upheld preliminary injunctions against both the interim and final versions of the Rules. *See Pennsylvania v. Trump*, 281 F. Supp. 3d 553, 576, 585 (E.D. Pa. 2017) (preliminarily enjoining IFRs nationwide); *California v. Health & Human Servs.*, 281 F. Supp. 3d 806, 829-30, 832-33 (N.D. Cal. 2017) (same), *affirmed in part and vacated in part sub nom. California v. Azar*, 911 F.3d 558, 585 (9th Cir. 2018) (limiting injunction to plaintiff states); *see also Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 834-35 (E.D. Pa. 2019) (preliminarily enjoining Final Rules nationwide); *California v. Health & Human Servs.*, 351 F. Supp. 3d 1267, 1299-1301 (N.D. Cal. 2019) (preliminarily enjoining Final Rules in plaintiff states). The U.S. Courts of Appeals for the Third and Ninth

---

[2] *See* Religious Exemptions and Accommodations for Coverage of Certain Preventative Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (Nov. 15, 2018); Moral Exemptions and Accommodations for Coverage of Certain Preventative Services Under the Affordable Care Act, 83 Fed. Reg. 57,592 (Nov. 15, 2018) (collectively, the "Final Rules" or "Rules").

Circuits affirmed the preliminary injunctions against the Final Rules in July and October, respectively. *Pennsylvania v. President United States*, 930 F.3d 543, 575-76 (3d Cir. 2019); *California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410, 431 (9th Cir. 2019). The Third Circuit also held that purported intervenors, Little Sisters of the Poor Saints Peter and Paul Home, lacked standing to appeal because they were already protected from any obligation under the ACA contraceptive coverage requirement by operation of, among other things, an injunction in separate litigation. *Pennsylvania*, 930 F.3d at 558-59 & n.6.

On January 17, 2020, the U.S. Supreme Court granted the Federal Defendants' and Little Sisters' petitions for writs of certiorari in the *Pennsylvania* action on a number of questions, including: whether the agencies' decision to forgo notice and opportunity for public comment before issuing the IFRs rendered the Final Rules invalid; whether a nationwide injunction was appropriate; whether the intervenors have standing; and whether the agencies had statutory authority to issue the Final Rules. *Trump v. Pennsylvania*, No. 19-454, 2020 WL 254168 (U.S. Jan. 17, 2020); *Little Sisters of the Poor v. Pennsylvania*, No. 19–431, 2020 WL 254158 (U.S. Jan. 17, 2020). The Supreme Court has not yet scheduled argument for these consolidated appeals. The Supreme Court has also granted Federal Defendants an extension of time until today, February 19, 2020, to file a petition for certiorari in the *California* action. *California v. U.S. Dep't of Health & Human Servs.*, No 19-15118, ECF No. 179.

None of the other lawsuits against the Rules challenge the Settlement Agreement at issue in this case; and that Agreement remains in effect today. Accordingly—notwithstanding the preliminary injunctions blocking the interim and final versions of the rules—students, employees, and dependents enrolled in health plans offered at Notre Dame have for the past two years been denied, and continue to be denied, contraceptive coverage without cost-sharing. Federal

4

Defendants now seek to stay the case yet again, pending resolution of the Supreme Court's review in *Pennsylvania*.

**ARGUMENT**

The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward," and it is only in "rare circumstances" that a litigant should "be compelled to stand aside" while litigants in another case seek to settle the law. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *accord Exodus Refugee Immigr., Inc. v. Holcomb*, No. 1:15-cv-01858-TWP-DML, 2017 WL 4786004, at *2 (S.D. Ind. Oct. 24, 2017).

When deciding to stay proceedings, courts must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. "Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed Cir. 1997); *see also Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010). Courts consider factors that include "whether a stay will unduly prejudice or tactically disadvantage the nonmoving party," "whether a stay will reduce the burden of litigation on the parties and on the court," and "whether a stay will simplify the issues in question and streamline the trial." *Grice*, 691 F. Supp. 2d at 920 (collecting cases); *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004). "The party seeking the stay carries the burden of establishing its necessity." *Abandoned Prop., LLC v. Kellams*, No. 2:11-CV-384-PPS-PRC, 2012 WL 13041523, at *1 (N.D. Ind. Jan. 26, 2012) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

**I.      A Decision by the Supreme Court in the *Pennsylvania* Action Will Not and Cannot Resolve—and May Not Even Inform—the Issues in This Action.**

Federal Defendants have failed to meet their burden to show why a stay is warranted. Contrary to their assertions, a Supreme Court decision in *Pennsylvania* will not "permeate every aspect of this case." ECF No. 85 at 9. Indeed, not only are Federal Defendants incorrect that the

5

Supreme Court's decision in *Pennsylvania* will likely resolve this litigation—because as a matter of law it cannot do that—but they are also wrong to suggest that the Supreme Court's decision will necessarily even be persuasive. And in all events, the Supreme Court will presumptively decide the case by the end of June—well before this Court would be asked to rule on dispositive motions here. Hence, a stay would only unnecessarily delay the initiation of discovery that will have to occur regardless.

> A.     A Decision by the Supreme Court in the *Pennsylvania* Action Will Not Resolve, and May Not Even Inform, Plaintiffs' Claim that the Settlement Agreement is Void for Illegality.

Unlike the *Pennsylvania* case, this action is not limited to the Final Rules. Rather, in this litigation, Plaintiffs allege that Federal Defendants instituted a policy of refusing to enforce the ACA contraceptive coverage requirement, including by executing the Settlement Agreement (and other similar settlements) to exempt Notre Dame (and others) permanently from the law. This suit challenges the legality of that Settlement Agreement—a challenge that this Court held may proceed. ECF No. 80 at 19–20 ("Judicial review seems particularly warranted in this case where Plaintiffs are alleging that the enforcement policy of the involved agencies amounts to 'abdication of its statutory responsibilities' or abandonment of its promulgated regulations.").

Specifically, Plaintiffs allege that the Settlement Agreement is unlawful and void *ab initio* for several reasons that are unrelated to the issues currently pending before the Supreme Court, including: that the Settlement Agreement purports to grant a permanent exemption not only from the ACA contraceptive coverage requirement but also from all materially similar *future* regulations requiring contraceptive coverage, and potentially also from other statutes requiring such coverage; that the Settlement Agreement contradicts the Supreme Court's unambiguous directive in *Zubik* to ensure that women receive the contraceptive coverage to which they are entitled by law, *Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016) (per curiam); and that the Settlement Agreement violates

6

the Establishment Clause of the U.S. Constitution. Thus, even if the Supreme Court ultimately reached the question whether the Rules are authorized by the ACA or the Religious Freedom Restoration Act—which, as set forth *infra*, may well not happen—that will not control this Court's resolution of Plaintiffs' claim that the Settlement Agreement is void for illegality.

Nor will resolution of the *Pennsylvania* appeal moot Plaintiffs' claims. Even if the preliminary injunction were dissolved and the Rules allowed to take effect, challenges to the Rules on the merits would still go forward, both in this case *and* in *Pennsylvania*. And even if the Rules were changed or rescinded by a future administration, the Settlement Agreement is permanent, so it would still "bind future administrations, as well as future faculty, staff, and students at Notre Dame." ECF No. 80 at 20. As long as the Settlement Agreement exists, it will always be the source of harm for those enrolled in health plans offered at Notre Dame.

There is no reason to delay Plaintiffs' resolution of their claims concerning the Settlement Agreement when the Supreme Court's decision will not and cannot control the resolution of those claims. *See Holcomb*, 2017 WL 4786004, at *3 (denying Indiana's request for a stay pending the Supreme Court's resolution of the travel ban case where that case involved a "distinct issue that will not be resolved by the [Supreme Court] case whatsoever"). Because this case involves the distinct issue of the Settlement Agreement, Plaintiffs are entitled to records related to the Settlement Agreement—including, if necessary, discovery to further inform Plaintiffs' claim that the Settlement Agreement is unlawful (and indeed, unconstitutional). *See infra* Part I.B; *see also Ali v. Quarterman*, 607 F.3d 1046, 1049 (5th Cir. 2010) (overturning stay and noting that district court "may find it reasonable to allow [plaintiff] to develop the factual basis of his claim"); *Waterstone Mortg. Corp. v. Offit Kurman, LLC*, No. 17-CV-796-JDP, 2019 WL 367642, at *2 (W.D. Wis. Jan. 30, 2019) (denying stay and allowing discovery to proceed while proceedings were pending in alternative case).

B. Any Ruling by the Supreme Court Will Be on the Preliminary Injunction and As a Matter of Law Will Not Bar Plaintiffs From Litigating Their Claims Against the Rules on the Merits.

Courts decide preliminary injunctions based on the "likelihood" of success on the merits, attempting to predict, based on a limited record, how the claims will ultimately be resolved. That prediction may turn out to be incorrect once discovery is conducted and the record is fully developed. Accordingly, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted). Rather, "the 'purpose of a preliminary injunction is merely to preserve the relative positions of the parties *until a trial on the merits can be held*.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (emphasis added; quoting *Camenisch*, 451 U.S. at 395); *see also Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 783 (7th Cir. 2011) ("The preliminary injunction, after all, is often seen as a way to maintain the status quo until merits issues can be resolved at trial."). Thus, "decisions at the preliminary injunction phase do not constitute the law of the case. This is true for the reason that a preliminary injunction decision is just that: preliminary." *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (citations omitted); *see also New Jersey Hosp. Ass'n v. Waldman*, 73 F.3d 509, 519 (3d Cir. 1995) (holding that preliminary-injunction rulings "do not foreclose any findings or conclusions to the contrary based on the record as developed at final hearing"); *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974) (preliminary-injunction ruling "does not constitute the law of the case for the purposes of further proceedings and does not limit or preclude the parties from litigating the merits") (collecting cases).[3]

---

[3] While the Northern District of California exercised its discretion to stay proceedings *sua sponte*, that case is, like the Pennsylvania action, at the preliminary injunction stage, and the Supreme Court has already issued a deadline for Federal Defendants to file a petition for a writ of certiorari in that very case. As such, the district court in *California* stayed the case on a very different posture than the instant action.

8

As the decision on review by the Supreme Court in *Pennsylvania* is merely a preliminary injunction, the Court's resolution of that appeal will not preclude Plaintiffs from continuing to litigate the legality (and indeed, constitutionality) of the Rules. Thus there is no need to further delay the instant action.

      C.     A Decision by the Supreme Court Will Not and Cannot Resolve Plaintiffs' Claims that Both the Rules and the Settlement Agreement Violate the Establishment Clause of the U.S. Constitution, Because Those Issues Are Not Among the Questions Presented in *Pennsylvania*.

In *Pennsylvania*, the lower courts held that the Rules are likely procedurally infirm and substantively unlawful under the Administrative Procedure Act because they lack statutory authority. Those courts thus had no need to reach the question whether the Rules also violate the Establishment Clause. And the Supreme Court is not considering that question, Federal Defendants' suggestion to the contrary notwithstanding. *See* ECF No. 85 at 7. Simply put, the Supreme Court's resolution of the *Pennsylvania* appeal will not and cannot resolve Plaintiffs' claims that both the Rules and the Settlement Agreement are unconstitutional.

Contrary to Federal Defendants' contentions, Plaintiffs' Establishment Clause claims warrant factual development and close judicial scrutiny. In briefing on the motion to dismiss, Federal Defendants assert that "there is no indication in the Rules or Settlement Agreement of any intention to promote any particular faith or to advance religion in general." ECF No. 69 at 21. This Court cannot credit that assertion without first allowing Plaintiffs to obtain and examine the relevant records and other evidence with respect to both the Rules and the Settlement Agreement. Plaintiffs are not limited to the administrative record when asserting constitutional claims against agency action pursuant to § 706(2)(B) of the Administrative Procedure Act. *See Porter v. Califano*, 592 F.2d 770, 780–81 (5th Cir. 1979) ("The intent of Congress in 5 U.S.C. § 706(2)(B) was that courts should make an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making."); *All. for Nat. Health U.S. v. Sebelius*, 714 F. Supp. 2d 48, 59

9

& n.20 (D.D.C. 2010) ("the role of the Court is the same whether the plaintiff sues directly under the Constitution or under [the APA]" (internal quotation marks omitted)). And indeed, recent cases illustrate the importance of a fully developed evidentiary record when reviewing executive action. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575-76 (2019) (administrative record and extra-record discovery revealed that the government's stated purpose in adding the citizenship question to the census was "contrived"). Given that this Court just held that Plaintiffs stated a plausible claim for relief that both the Settlement Agreement and the Rules violate the Establishment Clause, (ECF No. 80 at 41–45), a fully developed evidentiary record—and not merely the Rules-specific administrative record that Federal Defendants lodged in *Pennsylvania*— is warranted for this Court's review.

At a minimum, then, there is no reason to require Plaintiffs to delay obtaining the relevant records and evidence on whether the Rules and the Settlement violate the Establishment Clause. Indeed, because these questions need to be decided regardless of what the Supreme Court may decide in *Pennsylvania*, "court resources are unlikely to be preserved through a stay." *Flack v. Wis. Dep't of Health Servs.*, No. 18-CV-309-WMC, 2019 WL 2151702, at *2 (W.D. Wis. May 17, 2019). Instead, a stay will only delay this Court's consideration of the ultimate issues in this case by delaying the parties' development of the evidence that they will present on those claims.

> D.  The Supreme Court May Not Address the Questions of Substantive Illegality at the Heart of this Case.

Finally, the Supreme Court could fully dispose of *Pennsylvania* without even speaking to Plaintiffs' claims here, that that the Rules are substantively unlawful because they lack statutory authority. Both the district court and Third Circuit held that the plaintiff states are likely to succeed on their claim that the Rules are procedurally infirm because Federal Defendants bypassed the APA's notice-and-comment rulemaking procedures. *Pennsylvania*, 351 F. Supp. 3d at 812 (holding failure to comply with notice-and-comment procedures "in promulgating the IFRs fatally

10

infected the process such that the Final Rules should also be held invalid"), *aff'd. Pennsylvania*, 930 F.3d at 568–69. The Supreme Court granted certiorari on the question of the Rules' procedural illegality, *see Pennsylvania*, 2020 WL 254168, and may well affirm the decisions below in *Pennsylvania* without having to reach the question of whether the Rules lack statutory authority under the ACA and the Religious Freedom Restoration Act. A holding that the Rules are procedurally infirm would also be irrelevant to Plaintiffs' claims against the Settlement Agreement, which, as noted, are in no sense presented by *Pennsylvania*.

In short, the issues before the Supreme Court are not dispositive of, and may not even be pertinent to, the claims here. And a stay will only further delay this action. Federal Defendants have not met their burden to show exceptional circumstances justifying a stay.

## II.     A Stay Will Prejudice Plaintiffs

As Defendants concede, if this Court were to grant a stay, "Plaintiffs' position will continue to be the same as it has been throughout this litigation." ECF No. 85 at 9. That is precisely the problem.

More than two years ago, in February 2018, Notre Dame announced that it would stop complying with the ACA's contraceptive coverage requirement. Starting the next school year, Plaintiffs began paying out of pocket for contraception. For instance, I4RH Member 1 started paying coinsurance for her oral contraception once Notre Dame stopped abiding by the accommodation process. Member 2, who had used a NuvaRing for 8 years, was forced to switch to a long-acting intrauterine device (IUD) in order to avoid paying coinsurance for the NuvaRing; she is now subject to cost-sharing for the removal, replacement, or any office visits related to her IUD.

Notre Dame imposed these costs on Plaintiffs in violation of the ACA. Plaintiffs commenced this litigation in June 2018 and have been seeking a legal remedy for well over a year

and a half, enduring multiple delays. And now, on the eve of *discovery*—not even of a judgment—and after Plaintiffs obtained a favorable ruling from this Court, Defendants again seek to avoid having the real work of this litigation even commence, thus continuing indefinitely to deny Plaintiffs the contraceptive coverage to which they are entitled by law. Given that Defendants have failed to meet their burden to stay this matter, and the delay that has already occurred, Plaintiffs respectfully request that this Court deny Defendants' latest attempt to further prolong the proceedings.

## CONCLUSION

For the foregoing reasons, Federal Defendants' Motion to Stay All Proceedings should be denied.

Dated: February 19, 2020                        Respectfully submitted,

*/s/ Janice Mac Avoy*
Janice Mac Avoy (admitted *pro hac vice*)
Anne Aufhauser (admitted *pro hac vice*)
R. David Gallo (admitted *pro hac vice*)
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
janice.macavoy@friedfrank.com
anne.aufhauser@friedfrank.com
david.gallo@friedfrank.com

/s/ Jeffrey A. Macey
Jeffrey A. Macey
*Macey Swanson LLP*
445 N. Pennsylvania Street, Suite 401
Indianapolis, IN 46204
Telephone: (317) 637-2345
jmacey@maceylaw.com

*Counsel for all Plaintiffs*

Richard B. Katskee (admitted *pro hac vice*)
*Americans United for Separation of
 Church and State*
1310 L Street, NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-3234
katskee@au.org

Fatima Goss Graves*
Gretchen Borchelt (admitted *pro hac vice*)
Sunu Chandy (admitted *pro hac vice*)
Michelle Banker (admitted *pro hac vice*)
Lauren Gorodetsky*
*National Women's Law Center*
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Telephone: (202) 588-5180
fgossgraves@nwlc.org
gborchelt@nwlc.org
schandy@nwlc.org
mbanker@nwlc.org
lgorodetsky@nwlc.org

*Counsel for Plaintiffs Irish 4 Reproductive Health and Jane Doe 1*

Emily Nestler (admitted *pro hac vice*)
Jessica Sklarsky (admitted *pro hac vice*)
*Center for Reproductive Rights*
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
enestler@reprorights.org
jsklarsky@reprorights.org

*Counsel for Plaintiffs Natasha Reifenberg, Jane Doe 2, and Jane Doe 3*

* Motion for *pro hac vice* admission forthcoming.

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Stay was served on counsel for all parties using the Court's CM/ECF system on February 19, 2020.

/s/ Jeffrey A. Macey
Jeffrey A. Macey
*Macey Swanson LLP*
445 N. Pennsylvania Street, Suite 401
Indianapolis, IN 46204
Telephone: (317) 637-2345
jmacey@maceylaw.com
*Counsel for all Plaintiffs*