IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| IRISH 4 REPRODUCTIVE HEALTH *et al.*, <br><br>    Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES *et al.*, <br><br>    Defendants. | Case No. 3:18-cv-0491-PPS-JEM |

**REPLY MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS'
<u>MOTION TO STAY ALL PROCEEDINGS</u>**

Plaintiffs do not dispute that the Supreme Court will, in approximately four months, decide two of the precise challenges in their Amended Complaint—whether the Final Rules are procedurally valid and whether they are authorized by the Affordable Care Act (ACA) and authorized or required by the Religious Freedom Restoration Act (RFRA). Instead, Plaintiffs oppose a stay on the grounds that the Supreme Court is reviewing a preliminary injunction, and that some issues may remain to be resolved in this case depending on what hypothetical path the Supreme Court takes.

Neither of these is a persuasive reason to proceed without the Supreme Court's guidance. The Supreme Court's forthcoming opinion, on a preliminary injunction standard or not, will shed vital light on the validity of the Final Rules, including whether they are statutorily authorized by ACA or RFRA. And the standard for granting a stay is not that another case will *certainly* dispose of the case being stayed, but only that it is likely to streamline the remaining litigation, which is more than satisfied here. *See Landis v. N. Am. Co.,* 299 U.S. 248, 256 (1936) (noting

1

that an appeal need not "settle every question of . . . law" to justify a stay, so long as it will streamline the Court's merits review and conserve judicial resources by "settl[ing] some issues" and "simplify[ing] others").

Plaintiffs further suggest that, because the Supreme Court is expected to issue its decision by this June, this Court will take on little additional burden if it denies a stay and instructs the parties to proceed with discovery. But Federal Defendants object to discovery in this APA case, and any effort put into resolving these disputes now may be rendered unnecessary or meaningless after the Supreme Court's decision.

Federal Defendants previously noted that two other courts considering challenges to the Final Rules had already stayed their cases pending the Supreme Court's decision. Minute Order, *California v. HHS*, 4:17-cv-5783 (Jan. 22, 2020); Order 4-5, *Pennsylvania v. Trump*, No. 17-cv-4540 (E.D. Pa. July 31, 2019), ECF No. 232. Since Federal Defendants' initial motion, a third such case has likewise been stayed. Order, *Massachusetts v. HHS*, No. 17-cv-11930-NMG (Feb. 7, 2020), ECF No. 132. Each of these cases is at the motion for summary judgment stage, and each of these cases includes an Establishment Clause challenge to the Final Rules or Religious Exemption Rule—similar to Plaintiffs' Establishment Clause challenge to the Final Rules here— that is not directly before the Supreme Court. *See* Am. Compl. ¶¶ 190-95, *Pennsylvania v. Trump*, ECF No. 89 (Establishment Clause challenge to the Final Rules); 2d Am. Compl. ¶¶ 248-54, *California v. HHS*, ECF No. 170 (Establishment Clause challenge to the Final Rules); 2d Am. Compl. ¶¶ 102-07, *Massachusetts v. HHS*, ECF No. 106 (Establishment Clause challenge to the Religious Exemption Rule). Thus, the fact that every other court currently considering

2

challenges to the Final Rules has stayed those challenges reinforces that the Supreme Court's guidance will be vital to resolving the questions in this case.[1]

## ARGUMENT

Plaintiffs agree that the relevant factors for the Court to consider "include whether a stay will unduly prejudice or tactically disadvantage the non-moving party, whether a stay will simplify the issues in question and streamline the trial, and whether a stay will reduce the burden of litigation on the parties and on the court." *Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*, No. 15-C-1038, 2016 WL 270224, at *1 (E.D. Wis. Jan. 20, 2016); Pls.' Mem. Opp'n Defs.' Mot. Stay (Pls.' Opp'n) 5, ECF No. 88.

Here, a stay will potentially be dispositive of this case, and at a minimum will simplify the issues in question and streamline their eventual resolution. Likewise, a stay will reduce the burden on the parties and the Court. While Plaintiffs admit that this Court will likely not be able to resolve dispositive motions before the Supreme Court's decision this summer, they propose taking discovery in the interim. Engaging in discovery and discovery disputes that may become irrelevant if the Supreme Court's decision has a dispositive effect would be highly inefficient, especially given that discovery is neither warranted nor appropriate to resolve this APA case. And, a stay would neither "tactically disadvantage" nor "unduly prejudice" Plaintiffs. While a stay necessarily involves some measure of potential delay in the resolution of a case, Plaintiffs do not dispute that their position will remain "the same as it has been throughout this litigation"

---

[1] Federal Defendants previously informed the Court that the government had not yet sought Supreme Court review of the Ninth Circuit's decision on the Final Rules. Fed. Defs.' Mot. Stay (Mot.) 2 & n.2, ECF No. 85. To update the Court, the government has since sought certiorari in that case, but because the Ninth Circuit "did not address any other questions not presented in *Pennsylvania*, . . . . the government respectfully request[ed] that the Court hold this petition pending the Court's decision in *Pennsylvania* and then dispose of the petition as appropriate in light of that decision." Pet. for a Writ of Cert. 14-15, *HHS v. California*, No. 19-1038 (filed S. Ct. Feb. 19, 2020).

during Federal Defendants' proposed stay. Plaintiffs will thus be no worse off, and Plaintiffs have never argued that they should receive preliminary relief. In any event, given that the Supreme Court has recently set argument for April 29, 2020, and is expected to decide the relevant issues this Term, a stay would be of limited duration.

> **A. The Supreme Court's Upcoming Resolution of the Precise Questions at Issue Here on a Preliminary Injunction Standard Will Substantially Shape or Resolve This Case.**

Plaintiffs suggest, implausibly, that because the Supreme Court is reviewing the grant of a *preliminary* injunction, its decision is not likely to significantly affect this case. Pls.' Opp'n 8. This position borders on incredible. As Federal Defendants have previously noted, Plaintiffs' causes of action asserting that the Final Rules are procedurally invalid and in excess of statutory authority are the same questions presented to the Supreme Court in *Trump v. Pennsylvania*. Mot. 6-7. The Supreme Court's decision whether the *Pennsylvania* plaintiffs are likely to succeed on the merits of their claims will provide critical guidance for this Court and other courts across the country to consider in resolving similar claims. *Cf. CFTC v. Board of Trade*, 701 F.2d 653, 657 (7th Cir. 1983) (noting that "decisions granting or denying preliminary injunctions" can "have preclusive effect . . . if the circumstances make it likely that the findings are accurate [and] reliable"); *cf. also Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n.11 (3d Cir. 1997) ("Whether the resolution in the first proceeding is sufficiently firm to merit preclusive effect turns on a variety of factors, including 'whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed.'").

And contrary to Plaintiffs' confident assertion that "challenges to the Rules on the merits would still go forward, both in this case *and* in *Pennsylvania*" if the Supreme Court upheld the validity of the Final Rules, Pls.' Opp'n 7, such an outcome is far from certain. To start, when a

4

legal issue is key to resolving a motion for injunctive relief, the Supreme Court has the power "to examine the merits of the case" and "terminate the litigation" entirely. *Munaf v. Geren*, 553 U.S. 674, 691-92 (2008). And even if the Supreme Court does not exercise that authority, it is not unusual for its holding on a preliminary injunction to end further litigation on an issue. *See generally, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2406 (2018) (the Supreme Court reviewed a preliminary injunction barring enforcement of President Trump's entry restrictions, and plaintiffs voluntarily dismissed their claims on remand following the Supreme Court's decision at *Hawaii v. Trump*, No. 1:17-cv-50, ECF No. 415); *see also Winter v. NRDC*, 555 U.S. 7, 31, 33 (2008) (while not exercising its "authority" to "address the underlying merits of plaintiffs' claims," the Supreme Court made clear that its "analysis of the propriety of preliminary relief is applicable to any permanent injunction as well"). This makes sense, given that the Supreme Court's guidance on key *legal* issues must be of central importance to lower courts, just as the Supreme Court's analysis here of the Final Rules, the ACA, and RFRA will no doubt have significant, if not dispositive, repercussions in this case.

Furthermore, the Supreme Court is considering APA claims against the Final Rules—like the claims at issue in this case—and the preliminary injunction analysis for such APA claims is particularly likely to be similar to the summary judgment analysis because APA cases are typically decided as a matter of law, on the administrative record, and without discovery. For example, in the *Pennsylvania*, *California*, and *Massachusetts* cases challenging the Final Rules, motions for summary judgment were fully briefed on the administrative record, without any discovery, prior to the Supreme Court's grant of certiorari. *See generally* Docket, *Pennsylvania v. Trump*, No. 17-cv-4540; Docket, *California v. HHS*, 4:17-cv-5783; Docket, *Massachusetts v. HHS*, No. 17-cv-11930-NMG. And the courts handling these cases stayed their proceedings pending the Supreme Court's decision, notwithstanding the fact that the Supreme Court is

reviewing the grant of a preliminary injunction. Order, *Massachusetts v. HHS*, No. 17-cv-11930-NMG (Feb. 7, 2020), ECF No. 132; Minute Order, *California v. HHS*, 4:17-cv-5783 (Jan. 22, 2020); *see also* Order 4-5, *Pennsylvania v. Trump*, No. 17-cv-4540 (E.D. Pa. July 31, 2019), ECF No. 232.

### B. The Supreme Court's Upcoming Decision Will Resolve or Substantially Narrow Plaintiffs' Challenges to the Final Rules.

Plaintiffs further argue that this case should not be stayed because their Establishment Clause challenge to the Final Rules is not before the Supreme Court. Pls.' Opp'n 9-10. As Federal Defendants have already explained, Mot. 7, the Supreme Court's ruling will likely provide significant guidance in resolving Plaintiffs' Establishment Clause claim, if it does not render resolution of that claim unnecessary altogether. Plaintiffs respond to this argument only by alluding to their purported need for additional evidence, but the Supreme Court's holding is likely to be highly relevant as a matter of law. For example, if the Supreme Court holds that RFRA requires the Religious Exemption Rule because the accommodation substantially burdens at least some entities' exercise of religion and cannot survive strict scrutiny, that holding would substantially affect the outcome of Plaintiffs' Establishment Clause claim. These issues are clearly linked—this Court previously considered whether the accommodation burdened Notre Dame in declining to dismiss Plaintiffs' Establishment Clause claim. *See* Opinion and Order 41-42, ECF No. 80 (discussing whether the accommodation substantially burdened Notre Dame's religious exercise). If, by contrast, the Supreme Court holds that the Final Rules are improper because they lack statutory authority or are procedurally invalid, such an outcome would moot Plaintiffs' remaining challenges to the Final Rules, thereby rendering it unnecessary to go on to determine whether the Rules would also violate the Establishment Clause. *See*, *e.g.*, *Blum v. Bacon*, 457 U.S. 132, 137 (1982) ("Where a party raises both statutory and constitutional

6

arguments in support of a judgment, ordinarily we first address the statutory argument in order to avoid unnecessary resolution of the constitutional issue."). Thus, either way, the Supreme Court's guidance will shape the resolution of Plaintiffs' remaining challenges to the Final Rules.

The three other courts considering similar challenges to the Final Rules each implicitly recognized this when they stayed their cases, despite the presence of an Establishment Clause challenge to the Final Rules or Religious Exemption Rule in each of those cases. Am. Compl. ¶¶ 190-95, *Pennsylvania v. Trump*, ECF No. 89; 2d Am. Compl. ¶¶ 248-54, *California v. HHS*, ECF No. 170; 2d Am. Compl. ¶¶ 102-07, *Massachusetts v. HHS*, ECF No. 106.

### C. The Supreme Court's Upcoming Decision Will Resolve or Substantially Narrow Plaintiffs' Challenges to the Settlement Agreement.

Plaintiffs also argue against a stay because the Supreme Court is not considering challenges to the Settlement Agreement. Pls.' Opp'n 6-7. Federal Defendants have already explained that there are at least two ways in which the Supreme Court's upcoming decision will likely provide guidance on or simplify consideration of the Settlement Agreement. Mot. 7. First, if the Supreme Court upholds the Final Rules, then any injury to Plaintiffs stemming from the Settlement Agreement would not be redressable. In other words, even if the Settlement Agreement did not exist, Notre Dame would be entitled to take the exemption provided by the Final Rules, and Plaintiffs' challenge to the Settlement Agreement would not be justiciable. *Cf.* Opinion and Order 28 (noting that "the [Final] Rules have been enjoined nationwide" in concluding that Plaintiffs' challenge to the Settlement Agreement is ripe because the Settlement Agreement is "in its own right, injuring the Plaintiffs right now"). Plaintiffs gesture to the possibility that the Final Rules may be "changed or rescinded by a future administration," Pls.' Opp'n 7, but any claim based on such a speculative future change in policy is not ripe for decision *now*.

Second, the Supreme Court's decision regarding whether the Religious Exemption Rule is justified by RFRA is likely to have a significant, if not controlling, effect on Plaintiffs' Settlement Agreement claims. For example, if the Supreme Court holds that RFRA requires or authorizes the Religious Exemption Rule, then RFRA would likely require or authorize the Settlement Agreement as well.

Plaintiffs invoke *Exodus Refugee Immigration, Inc. v. Holcomb*, 2017 WL 4786004 (S.D. Ind. Oct. 24, 2017), Pls.' Opp'n 7, for the proposition that a stay should not be granted when the case to be stayed involves additional claims not present in the other case, but *Holcomb* is inapposite. The plaintiffs in *Holcomb* challenged an action taken in 2015 by then-Governor Pence to prevent the resettlement of Syrian refugees in Indiana. *Holcomb* *1, 2017 WL 4786004. Defendants in *Holcomb* later sought a stay based on the Supreme Court's consideration of President Trump's authority to issue separate Executive Orders dealing with immigration in 2017. *Id.* Given that one lawsuit was against Indiana defendants while the other was against the federal government, and that one lawsuit challenged a state policy while the other challenged an entirely different federal policy enacted two years later, the court in *Holcomb* rightly determined that a stay was inappropriate because the Supreme Court was considering "an entirely distinct issue." *Id.* *2; *see also id.* (noting that the party seeking a stay "concedes that President Trump's authority to issue the Executive Order [the issue on review at the Supreme Court] does not directly impact this case"). Here, by contrast, the questions on review at the Supreme Court do directly impact this case—in fact, the questions presented for the Supreme Court comprise several of the same precise claims that Plaintiffs raised in their amended complaint. It is clear that the Supreme Court's upcoming decision will meet the standard of "simplify[ing] the issues in question and streamlin[ing] the trial," *Hannahan* *1, and

8

it would be highly inefficient to expend further resources on matters that may be irrelevant after the Supreme Court's guidance.

### D. Proceeding Would Burden the Parties and the Court to Little Benefit.

In all, Plaintiffs' desire to rush ahead with this case will only have the effect of consuming resources towards an end that might be rendered completely superfluous after the Supreme Court's ruling. Plaintiffs concede that in no event will this Court issue a decision in their favor prior to the Supreme Court's ruling. *See* Pls.' Opp'n 2 ("[T]he parties anticipate that the Supreme Court will issue a decision in *Pennsylvania* by the end of June of this year, ECF No. 85 at 1, well before this Court will be asked to weigh in on dispositive motions in the instant action.").[2] Thus, this is not a case where Plaintiffs would be "'compelled to stand aside' while litigants in another case seek to settle the law," Pls.' Opp'n 5 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936))—Plaintiffs apparently agree that it is inevitable that the litigants in *Trump v. Pennsylvania* will settle the law, and only disagree about the need to proceed with this case in the meantime.

Plaintiffs emphasize that they intend to seek discovery relating to the Settlement Agreement. Pls.' Opp'n 7, 9-10. As previously noted, Mot. 8 n.3, Federal Defendants would oppose discovery because Plaintiffs raise APA claims that should be decided on the administrative record. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1081 (7th Cir. 2016) ("Generally, discovery is not appropriate for claims brought under the APA since review of an agency's decision is confined to the administrative record."). Plaintiffs incorrectly assert that the result is different because they raise constitutional claims under the APA. Pls.'

---

[2] Elsewhere, Plaintiffs suggest that a stay should be denied because it would "indefinitely" deny them resolution of this case, Pls.' Opp'n 12, which is inconsistent and inaccurate in light of their agreement that the Supreme Court will act in the next four months.

9

Opp'n 10.  But § 706 of the APA restricts the review of constitutional claims to the administrative record by its plain language.  *See* 5 U.S.C. § 706(2)(B) (permitting judicial review of agency action "contrary to constitutional right, power, privilege, or immunity"); *see also Doe v. Trump*, No. 19-CV-6-SMY-RJD, 2019 WL 5803421, at *2 (S.D. Ill. Nov. 7, 2019) ("The Court recognizes that Plaintiff is challenging the constitutionality of the Defendants' decisions and actions, but the APA contemplates such challenges, . . . .  Because Counts I through V seek relief under the APA, discovery must be limited to the administrative record absent a showing of bad faith or incompleteness.").  In any event, it may be unnecessary to decide these discovery disputes depending on the guidance that the Supreme Court will soon provide in *Trump v. Pennsylvania*.

*   *   *

In sum, proceeding with this case would unnecessarily consume the Court's and the parties' resources and be wasteful in the absence of guidance from the Supreme Court.  It may be that the Supreme Court's decision regarding the procedural validity of the Final Rules and whether they are authorized by the ACA or RFRA will prove dispositive of the issues in this case.  If not, it will at the least be highly relevant guidance that will narrow the issues under dispute here and shape the further course of this litigation, which is more than sufficient to justify a stay.  Accordingly, Federal Defendants respectfully request that this Court stay proceedings.

Dated: February 26, 2020                    Respectfully submitted,

                                                  JOSEPH H. HUNT
                                                  Assistant Attorney General

                                                  /s/ Rebecca M. Kopplin
                                                  REBECCA M. KOPPLIN
                                                  Trial Attorney (California Bar No. 313970)

                JUSTIN M. SANDBERG
                Senior Trial Counsel
                MICHAEL GERARDI
                CHRISTOPHER R. HEALY
                DANIEL RIESS
                Trial Attorneys
                United States Department of Justice
                Civil Division, Federal Programs Branch
                1100 L Street, NW
                Washington, D.C.  20005
                Telephone:  (202) 514-3953
                Facsimile:  (202) 616-8470
                Email: Rebecca.M.Kopplin@usdoj.gov

                *Counsel for Federal Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Federal Defendants' Motion to Stay All Proceedings was served on counsel for all parties using the Court's CM/ECF system on February 26, 2020.

*/s/ Rebecca M. Kopplin*
REBECCA M. KOPPLIN
*Counsel for Federal Defendants*