**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

IRISH 4 REPRODUCTIVE HEALTH
*et al.*,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES
*et al.*,

    Defendants.

Case No. 3:18-cv-0491-PPS-JEM

**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

ISSUES STATEMENT ..................................................................................................1

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................4

      I.      The Affordable Care Act and the Contraceptive-Coverage Mandate..........4

      II.     The Interim Final Rules .................................................................................6

      III.    Settlement of Notre Dame Case......................................................................7

      IV.    The Final Rules .............................................................................................9

      V.     The Supreme Court's Decision in *Little Sisters*........................................10

      VI.    The Present Case..........................................................................................12

ARGUMENT..............................................................................................................13

      I.      *Little Sisters* Requires that the Court Dismiss Plaintiffs' Challenges
            to the Settlement Agreement Because the Decision to Execute It Is
            Committed to Agency Discretion by Law. .................................................13

      II.     Even if the Settlement Agreement Were Reviewable, Plaintiffs'
            Claims Fail as a Matter of Law.................................................................16

            A.     Plaintiffs' Argument Based on the Meese Memo Is Not
                   Cognizable And, in Any Event, the Settlement Agreement
                   Does Not Violate Internal DOJ Guidance. ....................................16

            B.     The Settlement Agreement Does Not Violate the Women's
                   Health Amendment. ......................................................................19

      III.    The Final Rules and Settlement Agreement Are Consistent With the
            Establishment Clause. ................................................................................20

CONCLUSION...........................................................................................................24

i

## ISSUES STATEMENT

(1) Can Plaintiffs challenge Federal Defendants' decision to exercise their enforcement discretion by entering a settlement agreement with Notre Dame, notwithstanding *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), which held that an agency's decision to "refus[e] to take enforcement steps" is a decision presumptively committed to "an agency's absolute discretion"?

(2) Can Plaintiffs state a claim that the settlement agreement between Federal Defendants and Notre Dame is contrary to internal Department of Justice guidance that does not confer substantive rights on private parties, or that it violates the prohibition on cost sharing?

(3) Can Plaintiffs state an Establishment Clause claim when the Final Rules and the Settlement Agreement do not endorse a particular religious belief, but rather free parties to act as they otherwise would in the absence of government-imposed regulations?

## INTRODUCTION

Last July, in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), the Supreme Court sided with religious objectors to the so-called contraceptive-coverage mandate of the Affordable Care Act ("ACA") for the second time in six years.  The Court held that the ACA's grant of "unbridled discretion" to determine the scope of the women's preventive service mandate, as well as possible exemptions to that mandate, authorized the federal agencies responsible for administering the ACA[1] ("the Agencies") to create religious and moral exemptions to the contraceptive-coverage mandate.  140 S. Ct. at 2379-82.  It further counseled that, in crafting such exemptions, the Agencies were all but required to consider

---

[1] The Department of Health & Human Services, the Department of Labor, and the Department of the Treasury.

1

concerns that the mandate would violate the Religious Freedom Restoration Act ("RFRA") in order for the mandate and its corresponding exemptions to be substantively reasonable. *Id.* at 2382-84. Accordingly, the Court vacated decisions enjoining the Agencies' 2018 rules (the "Final Rules")[2] providing exemptions accommodating the sincere religious and/or moral objections of certain employers to the contraceptive-coverage mandate.

The Court's opinion in *Little Sisters* also has significant implications for this case, even after Plaintiffs filed their second amended complaint on August 20, 2020. ECF No. 102. Plaintiffs, a student association and individuals enrolled in health plans provided by Notre Dame, continue to challenge the Final Rules as unlawful under the Administrative Procedure Act ("APA") and the Establishment Clause of the First Amendment. They also assert that a settlement agreement ("Settlement Agreement") among the Agencies, Notre Dame, and other entities previously in litigation with the government should be void because it violates the APA, the Establishment Clause, and internal Department of Justice guidance with respect to settlements. *Little Sisters* makes clear that Plaintiffs' remaining claims against the Settlement Agreement and the Final Rules are no longer viable, and must be dismissed.

First, Plaintiffs' challenge to the Settlement Agreement is not reviewable. Under the APA, decisions to refrain from enforcement action, such as by entering into the Settlement Agreement, are presumptively committed to agency discretion as a matter of law and are thus beyond the scope of judicial review. Although this Court previously rejected this argument, *Irish 4 Reproductive Health v. U.S. Dep't of Health & Human Servs.*, 434 F. Supp. 3d 683, 696-99 (N.D. Ind. 2020), it did so based on a narrow understanding of the Agencies' statutory authority,

---

[2] *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 83 Fed. Reg. 57,536 (Nov. 15, 2018) (the "Religious Exemption Rule"); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 83 Fed. Reg. 57,592 (Nov. 15, 2018) (the "Moral Exemption Rule").

an understanding that the Supreme Court has now repudiated.  In light of the Agencies'

"virtually unbridled discretion" to "identify and create exemptions from [their] own Guidelines

[for women's preventive care]," *Little Sisters*, 140 S. Ct. at 2380, the Agencies did not abuse

their enforcement discretion by deciding to settle pending litigation with entities whose religious

objections were not fully addressed by earlier regulations, such as Notre Dame.

Second, Plaintiffs' substantive challenges to the Settlement Agreement are without merit.

Even if the Court were to conclude that the Settlement Agreement is reviewable notwithstanding

*Heckler*, the *Little Sisters* opinion makes it clear that the Women's Health Amendment imposes

few restraints on the Agencies' ability to create exceptions to coverage requirements.  Moreover,

the Settlement Agreement does not violate the Department of Justice's internal guidelines for

settling cases, even if one assumes that Plaintiffs could overcome the threshold objections to

raising such a claim.  Nor does the Settlement Agreement violate the ACA's rule that preventive

services must be provided without cost sharing.

Third, as to Plaintiffs' remaining constitutional claim, it is settled law that the

government may accommodate religion without violating of the Establishment Clause.  Neither

the Final Rules nor the Settlement Agreement advance religion, but instead relieve a burden on

religious exercise—in a way that the Supreme Court has now held is authorized by statute.  The

Supreme Court acknowledged in *Little Sisters* that the Agencies should consider the

accommodation of religious objections in formulating exemptions to the mandate, all but

confirming that Plaintiffs' constitutional claim lacks merit.

The Court should therefore dismiss Counts I, II, and IV of Plaintiffs' Second Amended

Complaint, as well as Count III to the extent it alleges a violation of the Establishment Clause.[3]

_____

[3] Count III's allegation that the Final Rules are arbitrary and capricious is most appropriately
resolved on cross motions for summary judgment after production of the administrative record,

## BACKGROUND

### I.    The Affordable Care Act and the Contraceptive-Coverage Mandate

The ACA requires most group health plans and health-insurance issuers offering group or individual health coverage to provide coverage for certain preventive services without "any cost sharing requirements."  42 U.S.C. § 300gg-13(a).  The Act does not specify the types of women's preventive care that must be covered.  Instead, as relevant here, the Act requires coverage, "with respect to women," of such "additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [HRSA]," a component of the Department of Health and Human Services.  *Id.* § 300gg-13(a)(4).

In August 2011, adopting the recommendation of the Institute of Medicine, HRSA issued guidelines requiring coverage of, among other things, the full range of FDA-approved contraceptive methods for women, including oral contraceptives, diaphragms, injections and implants, emergency contraceptive drugs, and intrauterine devices.  *See* 77 Fed. Reg. 8725, 8725-26 (Feb. 15, 2012).  Coverage for such contraceptive methods was thus required for plan years beginning on or after August 1, 2012.  *See* 76 Fed. Reg. at 46,623.

---

and accordingly, the Federal Defendants plan to produce the administrative record and move for summary judgment on this claim within the next three weeks.  Nonetheless, it bears noting here that *Little Sisters* casts doubt on the Court's prior approach on the arbitrary and capricious claim.  For example, the Court, in its opinion on the motion to dismiss, suggested that the accommodation did not present a substantial burden on religious exercise for the purposes of RFRA.  *See* 434 F. Supp. 3d at 706-08.  But *Little Sisters* found that "it was appropriate for the Departments to consider RFRA," *Little Sisters,* 140 S. Ct. at 2383, and that, "under RFRA, the Departments must accept the sincerely held complicity-based objections of religious entities," *id*, thus calling into question the Court's earlier conclusion.  For this and other reasons that will be discussed in further detail in the forthcoming motion for partial summary judgment, the Court's conclusion that Plaintiffs had plausibly alleged the Final Rules are arbitrary and capricious must be revisited in light of *Little Sisters*.

At the same time, invoking their authority under 42 U.S.C. § 300gg-13(a)(4), the Agencies promulgated interim final rules authorizing HRSA to exempt churches and their integrated auxiliaries from the contraceptive-coverage mandate. *See* 76 Fed. Reg. at 46,623; 77 Fed. Reg. at 8725. Various religious groups urged the Agencies to expand the exemption to all organizations with religious or moral objections to providing contraceptive coverage. *See* 78 Fed. Reg. 8456, 8459-60 (Feb. 6, 2013). Instead, in a subsequent rulemaking, the Agencies offered an "accommodation" for religious not-for-profit organizations with religious objections to providing contraceptive coverage. *See* 78 Fed. Reg. 39,870, 39,874-82 (July 2, 2013). The accommodation allowed a group health plan established or maintained by an eligible objecting employer, or arranged for students by an eligible organization that is an institution of higher education, to opt out of any requirement to directly "contract, arrange, pay, or refer for contraceptive coverage," *id.* at 39,874, by providing notice of its objection. The regulations then generally required the employer's or school's health insurer (in the case of insured group health plans) or third-party administrator (in the case of self-insured plans) to provide or arrange payments for contraceptives for plan participants. *See id.* at 39,875-80.

The Agencies engaged in nearly "six years of protracted litigation" to defend the mandate and accommodation against challenges brought by both for-profit and non-profit entities with religious or moral objections. *Little Sisters*, 140 S. Ct. at 2373. This litigation led to two rulings from the Supreme Court. In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the Court held that the mandate substantially burdened the religious exercise of a for-profit entity, and that the mandate was not the least restrictive means of achieving a compelling government interest because, at a minimum, the less-restrictive accommodation made available to non-profit entities could be extended to for-profit entities. In *Zubik v. Burwell*, 136 S. Ct. 1557 (2016), the Court vacated rulings from multiple appellate courts regarding the legality of the accommodation

and instructed the Agencies to investigate whether they could "accommodate[] petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans 'receive full and equal health coverage, including contraceptive coverage.'" 136 S. Ct. at 1560. In an effort "to resolve the pending litigation and prevent future litigation from similar plaintiffs" after the *Zubik* decision, the Agencies found it "appropriate to reexamine" the mandate's exemption and accommodation. 82 Fed. Reg. 47,792, 47,799 (Oct. 13, 2017).

## II.     The Interim Final Rules

In October 2017, the Agencies issued two interim final rules ("IFRs") requesting public comments and expanding the exemption while continuing to offer the existing accommodation as an optional alternative. The first IFR expanded the religious exemption to all nongovernmental plan sponsors, as well as to institutions of higher education in their arrangement of student health plans, to the extent that these sponsors and institutions have sincere religious objections to providing contraceptive coverage. *See id.* at 47,806.

The Agencies acknowledged that contraceptive coverage is "an important and highly sensitive issue, implicating many different views." *Id.* at 47,799. But "[a]fter reconsidering the interests served by the [m]andate," the "objections raised," and "the applicable Federal law," the Agencies "determined that an expanded exemption, rather than the existing accommodation, [wa]s the most appropriate administrative response to the religious objections raised by certain entities and organizations." *Id.* The Agencies explained that the new approach was necessary because, "[d]espite multiple rounds of rulemaking" and even more litigation, they "ha[d] not assuaged the sincere religious objections to contraceptive coverage of numerous organizations" or resolved the pending legal challenges that had divided the courts. *Id.*

The second rule created a similar exemption for entities with sincerely held moral objections to providing contraceptive coverage; unlike the religious exemption, this rule did not

6

apply to publicly traded companies.  *See* 82 Fed. Reg. 47,838 (Oct. 13, 2017).  This rule was

issued in part to bring the mandate into conformity with the long history of Congress and the

states "providing or supporting conscience protections in the regulation of sensitive health-care

issues," *id.* at 47,844, 47,847, and to attempt to resolve legal challenges by moral objectors that

had given rise to conflicting court decisions, *id.* at 47,843.  The IFRs were challenged in several

lawsuits and enjoined by two district courts.  *See California v. Health & Human Servs.*, 281 F.

Supp. 3d 806, 814 (N.D. Cal. 2017), *aff'd in part, vacated in part, remanded sub nom. California

v. Azar*, 911 F.3d 558 (9th Cir. 2018); *Pennsylvania v. Trump*, 281 F. Supp. 3d 553, 563 (E.D.

Pa. 2017), *aff'd*, 930 F.3d 543 (3d Cir. 2019), *rev'd*, 140 S. Ct. 2367 (2020).

## III.     Settlement of Notre Dame Case

Notre Dame sponsors health insurance plans for students, faculty, and staff, and their

dependents.  *See* Second Am. Compl. ¶ 19.  In 2013, Notre Dame filed a lawsuit challenging the

contraceptive-coverage mandate, as modified by the accommodation.  *See Univ. of Notre Dame

v. Burwell*, 786 F.3d 606, 612 (7th Cir. 2015), *cert. granted*, *judgment vacated*, 136 S. Ct. 2007

(2016).  It argued that the accommodation made it a "conduit" for the provision of contraceptive

coverage, in violation of its religious beliefs.  *Id.* at 612.  The Seventh Circuit rejected this

argument, *id.* at 612-19, but the Supreme Court granted certiorari, vacated the Court of Appeals'

decision, and remanded the case in light of the *Zubik* decision, thereby offering the parties a

chance to try to resolve their dispute.  *Notre Dame*, 136 S. Ct. at 2007.

Following the Supreme Court's remands, the President issued Executive Orders

establishing that it is the policy of the Government "to vigorously enforce Federal law's robust

protections for religious freedom" and to "exercise all authority and discretion available . . . to

waive, defer, grant exemptions from, or delay the implementation of any provision or

requirement of the [ACA] that would impose . . . a cost, fee, tax, penalty, or regulatory burden on

. . . health insurers . . .[or] purchasers of health insurance."  Exec. Order No. 13,798, Promoting

Free Speech and Religious Liberty, 82 Fed. Reg. 21,675 (May 4, 2017); Exec. Order No. 13,765,

Minimizing the Economic Burden of the Patient Protection and Affordable Care Act Pending

Repeal, 82 Fed. Reg. 8351 (Jan. 20, 2017).  The Agencies subsequently issued the IFRs

discussed above, in which they stated that "requiring certain objecting entities or individuals to

choose between the Mandate, the accommodation, or penalties for noncompliance imposes a

substantial burden on religious exercise under RFRA"; that "the application of the Mandate to

certain objecting employers [i]s [not] necessary to serve a compelling governmental interest";

and that "alternative approaches can further the interest the Departments previously identified

behind the Mandate."  82 Fed. Reg. at 47,800, 47,806.

       In light of the remand orders, the Executive Orders, and the IFRs, the Department of

Justice ("DOJ") exercised its discretion to settle then-pending lawsuits, including the one

brought by Notre Dame.  These suits challenged the old legal regime, which was at odds with the

new legal framework for contraceptive coverage foreshadowed by the Executive Orders and

established in the IFRs.  *See* Settlement Agreement, Compl., Ex. A, at 2-3, ECF No. 1-1 (noting,

in justifying the settlement, that the remand, Executive Orders, and new rules have placed the

litigation in an "extraordinary posture").  The Settlement Agreement with Notre Dame, executed

on October 13, 2017, provides that "[t]he Government [ ] will treat Plaintiffs and their health

plans, including their insurance issuers and/or third party administrators in connection with those

health plans, as exempt from the Regulations [in place prior to the IFRs] or any materially

similar regulation or agency policy."  *Id.* at 4, ¶ 2.  The agreement goes on to define a "materially

similar regulation or agency policy" as one that, among other things, "includes any requirement

that Plaintiffs, their insurance issuers, or their third-party administrators provide any of the

Objectionable Coverage through or in connection with Plaintiffs' health plans."  *Id.*

IV.     **The Final Rules**

The Agencies requested public comment on the IFRs.  The Agencies considered more than 110,000 comments received on the IFRs, and on November 15, 2018, issued final versions of the religious exemption and moral exemption rules.  The preambles to the Final Rules address the significant comments received by the Agencies.  The Agencies made changes in response to the comments, but those changes do not alter the fundamental substance of the exemptions set forth in the IFRs.

The religious exemption, in its final form, as in its interim final form, is "necessary to expand the protections for the sincerely held religious objections of certain entities and individuals."  83 Fed. Reg. at 57,537.  It "minimize[s] the burdens imposed on their exercise of religious beliefs, with regard to the discretionary requirement that health plans cover certain contraceptive services with no cost-sharing."  *Id.*  The final religious exemption "do[es] not remove the contraceptive coverage requirement generally from HRSA's Guidelines."  *Id.*  What it does do is "finalize exemptions [for] the same types of organizations and individuals for which exemptions were provided in the Religious [IFR]: Non-governmental plan sponsors including a church, an integrated auxiliary of a church, a convention or association of churches, or a religious order; a nonprofit organization; for-profit entities; an institution of higher education in arranging student health insurance coverage; and, in certain circumstances, issuers and individuals."  *Id.*  "In addition, the [religious exemption rule] maintain[s] a previously created accommodation process that permits entities with certain religious objections voluntarily to continue to object while the persons covered in their plans receive contraceptive coverage or payments arranged by their health insurance issuers or third party administrators."  *Id.*

The final moral exemption rule fulfills the same purpose that it did in its interim form, namely, to "protect sincerely held moral objections of certain entities and individuals."  83 Fed.

9

Reg. at 57,592.  The Agencies considered, but declined to follow, public comments asking for

the moral exemption to be expanded to publicly traded or government entities.  *Id*. at 57,616-19.

Importantly, like the religious exemption rule, the moral exemption rule "do[es] not remove the

contraceptive coverage requirement generally from HRSA's guidelines."  *Id*. at 57,593.  And

"[t]he changes to the rule[ ] being finalized will ensure clarity in implementation of the moral

exemptions so that proper respect is afforded to sincerely held moral convictions in rules

governing this area of health insurance and coverage, with minimal impact on HRSA's decision

to otherwise require contraceptive coverage."  *Id.*

## V.     The Supreme Court's Decision in *Little Sisters*

Before the Final Rules were set to go into effect on January 14, 2019, they were

preliminarily enjoined by district courts in the Third and Ninth Circuits, which found the Final

Rules substantively and procedurally invalid.  The respective courts of appeals affirmed these

injunctions.  *See California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410 (9th Cir.

2019); *Pennsylvania v. President of United States*, 930 F.3d 543 (3d Cir. 2019).  The Supreme

Court granted petitions for a writ of certiorari to the Third Circuit filed by the United States and

the Little Sisters of the Poor, a religious non-profit that intervened in these cases to defend the

rules.  The Court then reversed the court of appeals and remand the cases for further proceedings

consistent with its opinion.  *Little Sisters*, 140 S. Ct. at 2386.  In reaching this conclusion, the

Court recognized the Agencies' care in responding to comments on the IFRs, noting that the

Final Rules "responded to post-promulgation comments, explaining their reasons for neither

narrowing nor expanding the exemptions beyond what was provided for in the IFRs."  140 S. Ct.

at 2378.  The Court also observed that the "final rule creating the religious exemption also

contained a lengthy analysis of the Departments' changed position regarding whether the self-

certification process violated RFRA" and explained that "in the wake of the numerous lawsuits

challenging the self-certification accommodation and the failed attempt to identify alternative accommodations after the 2016 request for information, 'an expanded exemption rather than the existing accommodation is the most appropriate administrative response to the substantial burden identified'" in *Hobby Lobby*. *Id*. (quoting 83 Fed. Reg. at 57,544-45). Finally, the Court made two critical holdings relevant to the present case.[4]

*First*, the Court held that, "[u]nder a plain reading of [42 U.S.C. § 300gg-13(a)(4)] . . . the ACA gives HRSA broad discretion to define preventive care and screenings and to create the religious and moral exemptions." 140 S. Ct. at 2381. The Court found that Congress made a "deliberate choice" to give an "extraordinarily 'broad general directive[e]' to HRSA to craft the Guidelines, without any qualifications as to the substance of the Guidelines or whether exemptions were permissible." *Id.* at 2382 (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). Hence, "HRSA has virtually unbridled discretion to decide what counts as preventive care and screenings," and that discretion "leaves [HRSA's] discretion equally unchecked in other areas, including the ability to identify and create exemptions from its own Guidelines." *Id.* at 2380.

*Second*, the Court rejected Pennsylvania's argument that the Agencies "could not even consider RFRA as they formulated the religious exemptions from the contraceptive mandate." *Id.* at 2382-83. Given "the potential for conflict between the contraceptive mandate and RFRA" and the Court's prior opinions, the Court found it "unsurprising that RFRA would feature prominently in the Departments' discussion of exemptions that would not pose similar legal problems." *Id.* at 2383. Indeed, the Court reasoned that, had the Agencies *not* considered RFRA, they "would certainly be susceptible to claims that the rules were arbitrary and capricious

---

[4] The Court also held that the Third Circuit had erred in concluding the Final Rules were procedurally improper. *Little Sisters*, 140 S. Ct. at 2384-86.

for failing to consider an important aspect of the problem." *Id.* at 2384.  Thus, the Court

concluded that, "[p]articularly in the context of these cases, it was appropriate for the

Departments to consider RFRA." *Id.* at 2383.

**VI.**     **The Present Case**

In February 2018, after execution of the Settlement Agreement but before issuance of the

Final Rules, Notre Dame announced that its health plans would not cover contraceptive methods

that it views as abortifacients or sterilization (for which Notre Dame has never offered coverage)

because of the University's "grave[]" religious objections to such methods; but the University

would cover other contraceptive methods.  *See* Letter from Rev. John Jenkins, President of the

Univ. of Notre Dame, to Faculty and Staff (Notre Dame President's Letter), (Feb. 7, 2018),

https://president.nd.edu/writings-addresses/2018-writings/letter-on-health-care-coverage/;[5]

Second Am. Compl. ¶ 136.  Plaintiffs assert in their second amended complaint that, for the

contraceptives covered by Notre Dame, plan participants must pay co-pays or deductibles.

Second Am. Compl. ¶¶ 8, 14, 145.

In June 2018, Plaintiffs—a student association and individuals who use Notre Dame's

faculty or student health plans—filed this lawsuit against the Agencies, their Secretaries (in their

official capacities), and the University.  Both the Agencies and Notre Dame moved to dismiss.

Before the parties completed briefing, the Agencies issued the Final Rules.  Plaintiffs

subsequently amended their complaint, and Defendants renewed their motions to dismiss.  The

Court partially granted these motions in an order filed January 16, 2020.  *Irish 4 Reproductive*

*Health*, 434 F. Supp. 3d 683 (N.D. Ind. 2020).  Shortly thereafter, the Supreme Court granted

---

[5] The letter is incorporated in the Second Amended Complaint by reference, so it may be
considered without converting this motion to a motion for summary judgment.  *Hecker v. Deere
& Co*., 556 F.3d 575, 582 (7th Cir. 2009) (noting that the Seventh Circuit has been "relatively
liberal" in considering documents without converting motions to dismiss into motions for
summary judgment).

certiorari in the *Little Sisters* case, and the Court agreed to stay further proceedings pending the outcome of the Supreme Court's decision.

In light of the Supreme Court's decision, Plaintiffs filed a second amended complaint on August 20, 2020.  The second amended complaint includes four causes of action directed at Federal Defendants: (1) the Settlement Agreement violates the APA, Second Am. Compl. ¶¶ 160-71; (2) the Settlement Agreement is void under federal common law for illegality, *id.* ¶¶ 172-77; (3) the Final Rules violate the substantive requirements of the APA, *id.* ¶¶ 178-87; and (4) the Settlement Agreement and the Final Rules violate the Establishment Clause, *id.* ¶¶ 188-92.

## ARGUMENT

### I.  *Little Sisters* **Requires That the Court Dismiss Plaintiffs' Challenges to the Settlement Agreement Because the Decision to Execute It Is Committed to Agency Discretion by Law.**

In its ruling on the motions to dismiss, this Court recognized that the question of reviewability under 5 U.S.C. § 701(a)(2) presented "a much closer issue" than whether there was an adequate alternative remedy.  *Irish*, 434 F. Supp. 3d 683, 695 (N.D. Ind. 2020).  Nonetheless, the Court found that the Settlement Agreement was not "committed to agency discretion by law" under that provision because, in the Court's view, the Plaintiffs had plausibly alleged that the Settlement Agreement was a "general policy . . . so extreme as to amount to abdication of [Defendants'] statutory responsibilities" under the ACA.  *Id.* at 696-97 (citing *Heckler*, 470 U.S. at 833 n.4); *see also id.* at 698 ("Judicial review seems particularly warranted in this case where Plaintiffs are alleging that the enforcement policy of the involved agencies amounts to 'abdication of its statutory responsibilities' or abandonment of its promulgated regulations."); *id.* at 699 ("I can review these claims because they are not that the Attorney General exercised his discretion poorly but that he settled the lawsuit in a manner that he was not legally authorized to

do.") (internal punctuation omitted).  The Supreme Court's decision in *Little Sisters* has changed that calculus.  It makes clear that the Agencies do in fact possess statutory authority to exempt religious objectors (and others) from the contraceptive coverage requirement.  This Court should therefore revisit the reviewability question and decide it in Defendants' favor.

*Little Sisters* found that the ACA's Women's Health Amendment provides the Government with "virtually unbridled discretion" to decide both "what counts as preventive care and screenings" and to "create exemptions from its own Guidelines."  *Little Sisters*, 140 S. Ct. at 2380.  The Court thus held that the Final Rules were a lawful exercise of the Agencies' statutory authority under the ACA.  *Id.*  Consequently, this Court's prior conclusion that the Settlement Agreement is reviewable notwithstanding *Heckler* because Plaintiffs had plausibly alleged that the Agencies abdicated their statutory authority cannot hold.  Just as the Agencies had authority to create exemptions to the contraceptive coverage mandate in the Final Rules, *see Little Sisters*, 140 S. Ct. at 2380, so too did the Agencies have authority to agree to "treat Plaintiffs . . . as exempt" from that same mandate in the Settlement Agreement.  Settlement Agreement at 4.[6] Therefore, even if this Court adheres to the view that allegations that the failure to take an enforcement action was *ultra vires* can, in principle, make *Heckler* inapplicable, the Settlement Agreement still would be unreviewable because *Little Sisters* confirms that the Agencies had the necessary authority to enter it.

With this primary basis for the Court's decision on § 701(a)(2) reviewability gone, however, the Court should also reconsider its approach to that doctrine.  Under this Court's prior reasoning, any plaintiff can escape *Heckler* nonreviewability by merely alleging that an agency exceeded its authority in failing to take an enforcement action or entering into a settlement

---

[6] Because the Settlement Agreement was attached to the operative complaint, it can be considered on a Rule 12(b)(6) motion to dismiss without converting the motion into a motion for summary judgment.  *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013).

agreement.  *See Irish*, 434 F. Supp. 3d at 698 (finding that *Heckler* was "inapplicable to claims that an agency has taken action that exceeds its legal authority.").  However, this cannot be right, because it would transform every *Heckler* nonreviewability analysis into a decision on the merits.  *Heckler* itself contained allegations that an agency had violated its statutory and regulatory authority by failing to take enforcement action under the Food, Drug and Cosmetic Act—and yet the Supreme Court found that case was not reviewable.  *See Heckler*, 470 U.S. at 823-24.  Surely, *Heckler*'s nonreviewable claims would not suddenly become reviewable if the FDA's nonenforcement decision in that case had been enshrined in a Settlement Agreement.  But the Court's prior approach would appear to require this counterintuitive result.

The Court should abide by the analysis recognized in *Heckler*—where authority for nonenforcement against particular entities is "committed to an agency's absolute discretion," it is not reviewable by the courts.  *Heckler*, 470 U.S. at 831.  *Little Sisters* has now recognized that the ACA provides the Agencies with "virtually unbridled discretion" to create exemptions from the contraceptive coverage requirement.  *See Little Sisters*, 140 S. Ct. at 2380; *Heckler*, 470 U.S at 831.  The exercise of this broad discretion in the enforcement context is exactly the sort of action that *Heckler* says is nonreviewable.  *See Little Sisters*, 140 S. Ct. at 2380; *Heckler*, 470 U.S at 831.  Plaintiffs' challenges to the Settlement Agreement are therefore not subject to judicial review and should be dismissed.[7]

---

[7] To the extent that *Heckler* does not apply to Count II, it is unclear what Plaintiffs' cause of action is as to that claim, or whether they have a valid cause of action at all.  *See* Second Am. Compl. ¶¶ 172-77.  Indeed, the only citations they provide to support their cause of action are contract cases brought by the parties to those contracts, which are not applicable here, where there is no cause of action in contract.  *See id.* (citing *U.S. Nursing Corp. v. Saint Joseph Med. Ctr.*, 39 F.3d 790, 792 (7th Cir. 1994); *Zimmer, Inc. v. Nu Tech Med., Inc.*, 54 F. Supp. 2d 850, 863 (N.D. Ind. 1999)). To the extent they have a cause of action at all, it lies under the APA— Claim II should therefore not evade the nonreviewability restrictions of *Heckler*.

## II.     Even if the Settlement Agreement Were Reviewable, Plaintiffs' Claims Fail as a Matter of Law.

Even if this Court were to find the Settlement Agreement reviewable, however, Plaintiffs'
challenges to the Agreement do not plausibly state a claim.  First, the DOJ guidance
memorandum Plaintiffs identify does not create any cognizable legal rights, and this challenge is
unripe in any event.  Furthermore, even if Plaintiff could surmount these threshold issues, they
have not actually shown that the Settlement Agreement violates DOJ policy.  Second, by its text,
the Settlement Agreement does not violate the prohibition on cost-sharing.  Finally, for the
reasons described elsewhere in this brief, the Settlement Agreement does not violate the
Establishment Clause, nor does it violate lawful regulations implementing the Women's Health
Amendment.  *See infra* II.B, III.

### A.     Plaintiffs' Claim Based on the Meese Memo Is Not Cognizable And, in Any Event, the Settlement Agreement Does Not Violate Internal DOJ Guidance.

Plaintiffs claim that the Settlement Agreement violates internal DOJ guidance set forth in
the so-called "Meese Memo" that allegedly "limits the discretion of a department or agency."
*See* Second Am. Compl. ¶ 166 (citing Memorandum from Edwin Meese III, Attorney General to
All Assistant Attorneys General and All United States Attorneys 3 (Mar. 13, 1986), *reprinted in*
U.S. Dep't of Justice, Office of Legal Pol'y, Guidelines on Constitutional Litigation 150, 152-53
(Feb. 19, 1988)).  This claim fails for a number of reasons.

First, Plaintiffs have not demonstrated that the Meese Memo could impose a cognizable
injury.  The Meese Memo merely provides internal guidance to "government attorneys involved
in the negotiating of . . . settlements," *id*. at 1; it does not carry the force of law or create any
substantive rights in private parties that are enforceable in court.  Private parties "are unable to
enforce internal agency rules that are intended solely to benefit the agency."  *See Lopez v. FAA*,

318 F.3d 242, 247 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003).  The Meese Memo creates no substantive rights for third parties, and it therefore may not be enforced against the Agencies.

Second, the Meese Memo expresses a statement of general policy that does not bind the government itself—it explicitly recognizes that "[t]he Attorney General does not hereby yield his necessary discretion to deal with the realities of any given case," and it authorizes government attorneys to depart from the guidance with written approval of specified DOJ officials.  *Id.* at 4.  Because the Meese Memo provides for this flexibility, Plaintiffs' claim fails at the threshold.

Third, Plaintiffs' claim also is not ripe.  Plaintiffs are not currently harmed by the hypothetical non-enforcement of some future "materially similar" contraceptive coverage or accommodation requirement.  *See* Settlement Agreement at 4 ¶ 2.  As this Court recognized at the recent Telephonic Status Hearing, "that would be something that would be brought . . . whenever those changes would be made" by some future administration.  Tr. at 13:22-14:4; *see also id.* ("I don't understand . . . how that would be ripe currently.").

Finally, even if Plaintiffs could clear these threshold hurdles, their claim would fail on the merits because the Settlement Agreement does not violate the Meese Memo's guidance and its subsequent interpretation by DOJ.  The Meese Memo provides that DOJ should not enter into a settlement agreement that (1) "interferes with [an agency's] authority to revise, amend, or promulgate regulations through the procedures set forth in the [APA]," or (2) "commits [an agency] to expend funds that Congress has not appropriated and that have not been budgeted for the action in question."  Meese Memo at 3.  The memo also provides that DOJ should not enter into consent decrees "that divest[] the [agency] of discretion committed to [it] by Congress or the Constitution."  *See id.* at 3.  The Settlement Agreement does not violate any of these provisions, and Plaintiffs do not allege otherwise.

The Settlement Agreement does not constrain the Agencies' authority to issue regulations relating to contraceptive coverage in the future, nor does it commit to any expenditure of funds. *See generally* Settlement Agreement at 4 ¶ 2 (agreeing only to "treat Plaintiffs. . . as exempt"). Plaintiffs allege that the Settlement Agreement improperly transforms "discretionary authority into a mandatory duty . . . to revise, amend, or promulgate regulations."  *See* Meese Memo at 3; Second Am. Compl. ¶ 166.  But the Settlement Agreement does no such thing—it does not require the issuance of any regulations at all.  *See also* Moss Memo at 142 (discussing the Office of Legal Counsel's interpretation of this aspect of the Meese Memo's guidance with respect to "Promises to Promulgate Rules").

Plaintiffs do not allege that the Settlement Agreement violates the third category discussed above, prohibiting divesting agency discretion, *see* Second Am. Compl. ¶ 166, but even if they did, that claim would fail.  By the Meese Memo's terms, this guidance applies to consent decrees.[8]  Moreover, subsequent guidance has made clear that the Attorney General's congressionally authorized settlement power extends to "a settlement that would bind a subsequent administration's exercise of that same statutorily conferred executive discretion." *Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec. Branch Discretion* ("Moss Memo"), 23 Op. OLC 126, 142 (June 15, 1999) ("That an agreement of this type would extend beyond the duration of the present administration would not appear to be of independent constitutional significance. . . . The critical point is that such agreements serve to circumscribe and define the enforcement discretion that Congress itself has delegated, not to diminish the executive power that the Constitution has committed to the executive branch.").

---

[8] The Meese Memo distinguishes settlement agreements from consent decrees because the latter "sometimes [have] resulted in an unwarranted expansion of the powers of [the] judiciary."  *See* Meese Memo at 1, 3.

Finally, even if the Settlement Agreement ran counter to DOJ's internal guidance, the Meese Memo makes clear that certain DOJ officials may authorize departures from the guidance. *See* Meese Memo at 4.  Plaintiffs do not allege any failure by DOJ officials to obtain appropriate authorization for the Settlement Agreement, so the Complaint fails to establish that the Settlement Agreement violated the internal DOJ guidance set forth in the Meese Memo—even if that guidance were judicially enforceable.

**B.      The Settlement Agreement Does Not Violate the Women's Health Amendment.**

Plaintiffs also argue that the Settlement Agreement violates the Women's Health Amendment and implementing regulations by allowing Notre Dame to require cost-sharing for contraceptives that it would "otherwise cover without objection."  Second Am. Compl. ¶ 167. But the Settlement Agreement only protects signatories from providing contraceptive coverage to which they object on religious grounds—it does not promise to excuse noncompliance with the prohibition against cost-sharing for contraceptives to which signatories do not object on religious grounds.  *See* Settlement Agreement at 6 ("The Government agrees [that] Plaintiffs that are party to this agreement . . . shall [not] be subject to any penalties or other adverse consequences . . . as a result of their non-compliance with any law or regulation *requiring the provision of the Objectionable Coverage*") (emphasis added); *see also id.* at 1 (defining "Objectionable Coverage" as FDA-approved contraceptive methods and sterilization procedures "to which Plaintiffs object on religious grounds").  If there is a form of contraception to which a signatory does not have religious objections, the Settlement Agreement makes no promise not to enforce the cost-sharing prohibition with respect to that form of contraception.[9]

---

[9] Plaintiffs separately allege that the Settlement Agreement violates "the regulations operative prior to the Final Rules," Second Am. Compl. ¶ 168, but it is unclear what their basis is for such

This challenge, too, must be dismissed.

## III.    The Final Rules and Settlement Agreement Are Consistent With the Establishment Clause.

Count IV alleges that the Final Rules and Settlement Agreement violate the

Establishment Clause.  Second Am. Compl. ¶ 216b.  But "there is no basis for an argument . . .

that the [Final Rules] violate[] that Clause," nor that the Settlement Agreement does.  *Little*

*Sisters*, 140 S. Ct. at 2396 n.13 (Alito, J., with Gorsuch, J., concurring).  Federal Defendants are

mindful that this Court determined that a prior version of the present complaint adequately stated

an Establishment Clause claim.  434 F. Supp. 3d at 708-10.  However, in light of the Supreme

Court's subsequent decision in *Little Sisters*, Federal Defendants respectfully request that the

Court reconsider this determination.

As noted above, not only did a two-Justice concurrence in *Little Sisters* find no basis to

challenge the Final Rules under the Establishment Clause, but also the majority opinion's RFRA

discussion supports Federal Defendants' arguments that no valid Establishment Clause claim lies

here.  Although the Supreme Court declined to determine whether RFRA independently

compelled the Agencies to adopt the Final Rules, it nonetheless made clear that the Agencies

were required to consider RFRA's requirements in formulating the Final Rules.  Indeed, the

Supreme Court "made it abundantly clear that, under RFRA, the Departments must accept the

sincerely held complicity-based objections of religious entities" and must "accommodat[e] the

free exercise rights of those with complicity-based objections to the self-certification

accommodation."  140 S. Ct. at 2383 (citation and internal punctuation omitted); *see also id*. at

2384 (explaining that if the Agencies "did not look to RFRA's requirements or discuss RFRA at

_____

a claim.  *Little Sisters* held that the Agencies had statutory authority to promulgate the Final
Rules, so it is not clear why Plaintiffs believe the Settlement Agreement must comply with prior
regulations.

all when formulating their solution, they would certainly be susceptible to claims that the rules

were arbitrary and capricious for failing to consider an important aspect of the problem")

(footnote omitted).  In short, the Supreme Court decided not only that the Agencies could

consider and accommodate religious-based objections to the contraceptive-coverage mandate,

but that they were obliged to do so.  Moreover, as explained above, *Little Sisters* held that the

ACA grants "broad discretion to define preventive care and screenings and to create the religious

and moral exemptions."  140 S. Ct. at 2381.  When the Agencies exercised this broad discretion

to exempt Notre Dame from the contraceptive coverage mandate based on its sincere religious

objections, whether through rulemaking or a non-enforcement promise, the Agencies did not run

afoul of the Establishment Clause.

On its face, then, the second amended complaint does not state a valid Establishment

Clause claim.  Plaintiffs contend that the Final Rules and Settlement Agreement have the

"primary purpose and principal effect of promoting, advancing, and endorsing religion" and that

they "excessively entangle the government with religion."  Second Am. Compl. ¶ 191(a), (c).

But *Little Sisters* makes clear that the government *was required to consider* the religious beliefs

of affected entities in promulgating the Final Rules (and in turn, entering into the Settlement

Agreement).  And the Rules and Agreement satisfy the familiar three-part test articulated in

*Lemon v. Kurtzman*, 403 U.S. 602 (1971), for analyzing Establishment Clause challenges to

government acts seeking to accommodate religion.

First, the Rules and Agreement serve the legitimate secular purposes of alleviating

significant governmental interference with the exercise of religion and resolving pending

litigation.  *See Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints

v. Amos*, 483 U.S. 327, 335 (1987); *see also* 83 Fed. Reg. at 57,540 (purpose of the Rules is to

"expand exemptions to protect religious beliefs for certain entities and individuals with religious

objections to contraception whose health plans are subject to a mandate of contraceptive coverage through guidance issued pursuant to the ACA").  As *Little Sisters* explained, in promulgating the Final Rules, the Agencies were required to consider how to alleviate the mandate's significant interference with religious exercise.

Second, the "principal or primary effect" of the Rules and Agreement "neither advances nor inhibits religion." *Lemon*, 403 U.S. at 612.  The Supreme Court has made clear that removing barriers to the exercise of religious freedom does not advance religion; to the contrary, "there is ample room for accommodation of religion under the Establishment Clause." *Amos*, 483 U.S. at 338.  The Final Rules and Settlement Agreement do not themselves promote or subsidize a religious belief or message; instead, they allow entities with objections to contraceptive coverage based on religious beliefs or moral convictions to practice those beliefs and convictions as they otherwise would in the absence of certain government-imposed regulations.

Plaintiffs' contention that the Rules and Agreement somehow "prefer[] some religious beliefs and denominations over others," Second Am. Compl. ¶ 191(e), is baseless.  The exemptions in the Rules are available to any person or entity with religious or moral objections to providing contraceptive coverage, regardless of the person's or entity's denomination or the basis of their religious beliefs or moral convictions.  The Agencies similarly entered into settlement agreements with entities that had filed suit regardless of their denomination or the basis for their religious beliefs.  Plaintiffs do not provide any support for their conclusory allegation of a religious preference by identifying any religious beliefs or denominations that the Rules or Settlement Agreement purportedly disfavor.

Third, the Rules and Agreement do not "entangle the State in an unlawful fostering of religion." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 145 (1987).  In

*Amos*, the Supreme Court upheld a statutory provision that exempted religious groups from Title VII's prohibition against religious discrimination, stating that "[i]t cannot be seriously contended that [the statute] impermissibly entangles church and state; the statute effectuates a more complete separation of the two." *Amos*, 483 U.S. at 339.  The Final Rules and Settlement Agreement operate similarly by reducing government interference with religious exercise, which, as explained in *Little Sisters*, the government was required to consider.  Far from entangling the government in unlawful fostering of religion, the Rules and Agreement in fact achieve a more complete separation of church and state.

Finally, Plaintiffs fail to state a valid Establishment Clause claim by alleging that the Rules and Agreement impose "undue costs, burdens, and harms" on them.  Second Am. Compl. ¶ 191(d).  Characterizing the loss of compelled contraceptive coverage as a government-imposed burden rests on the "incorrect presumption" that "the government has an obligation to force private parties to benefit [ ] third parties and that the third parties have a right to those benefits." 83 Fed. Reg. at 57,549.  Before the contraceptive-coverage mandate, women had no entitlement to contraceptive coverage without cost sharing through their health plans.  It does not "burden" affected women that the same agencies that created and enforce the mandate also created a limited exemption—that the Supreme Court has now held was explicitly authorized—to accommodate sincere religious objections, because affected women are no worse off than before the Agencies initially decided to act.  *See Little Sisters*, 140 S. Ct. at 2396, (Alito, J., with Gorsuch, J., concurring) ("The Court has held that there is a constitutional right to purchase and use contraceptives.  But the Court has never held that there is a constitutional right to free contraceptives.") (internal citations omitted); *cf. Amos*, 483 U.S. at 330-38 & n.15 (holding that Title VII's religious exemption permitting religious discrimination in employment was consistent with the Establishment Clause despite allowing the employer to terminate a third party because

"it was the Church . . . , and not the Government, who put him to the choice of changing his religious practices or losing his job").  The lifting of a *government-imposed* burden on religious exercise is permitted under the accommodation doctrine referenced in *Amos*.  Moreover, Plaintiffs fail to acknowledge that the contrary conclusion would mean that the church exemption, which Plaintiffs have never challenged, would run afoul of the Establishment Clause.

In sum, the Final Rules and Settlement Agreement permissibly accommodate religious beliefs and moral convictions consistent with the Establishment Clause.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts I, II, and IV of Plaintiffs' Second Amended Complaint, as well as Count III to the extent it alleges a violation of the Establishment Clause.

Dated: September 21, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

*/s/ Christopher R. Healy*
CHRISTOPHER R. HEALY
Trial Attorney (DC Bar No. 219460)
JUSTIN M. SANDBERG
Senior Trial Counsel
MICHAEL GERARDI
REBECCA M. KOPPLIN
DANIEL RIESS
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Telephone:  (202) 514-8095
Email: Christopher.Healy@usdoj.gov
*Counsel for Federal Defendants*