# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

IRISH 4 REPRODUCTIVE HEALTH, et al.,

                                        *Plaintiffs*,

     v.

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES, et al.,

                                        *Defendants*.

Case No. 3:18-cv-491-PPS-MGG

Judge Philip P. Simon

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

Janice Mac Avoy (admitted *pro hac vice*)
Anne S. Aufhauser (admitted *pro hac vice*)
R. David Gallo (admitted *pro hac vice*)
Kellie P. Desrochers (admitted *pro hac vice*)
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
janice.macavoy@friedfrank.com
anne.aufhauser@friedfrank.com
david.gallo@friedfrank.com
kellie.desrochers@friedfrank.com

Jeffrey A. Macey
*Macey Swanson LLP*
445 N. Pennsylvania Street, Suite 401
Indianapolis, IN 46204
Telephone: (317) 637-2345
jmacey@MaceyLaw.com

*Counsel for all Plaintiffs*

(continued on next page)

Richard B. Katskee (admitted *pro hac vice*)
*Americans United for Separation of*
*  Church and State*
1310 L Street, NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-3234
katskee@au.org

Fatima Goss Graves (admitted *pro hac vice*)
Gretchen Borchelt (admitted *pro hac vice*)
Sunu Chandy (admitted *pro hac vice*)
Michelle Banker (admitted *pro hac vice*)
Lauren Gorodetsky (admitted *pro hac vice*)
*National Women's Law Center*
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Telephone: (202) 588-5180
fgraves@nwlc.org
gborchelt@nwlc.org
schandy@nwlc.org
mbanker@nwlc.org
lgorodetsky@nwlc.org

*Counsel for Plaintiffs Irish 4 Reproductive*
*Health and Jane Doe 1*

Emily Nestler (admitted *pro hac vice*)
Jessica Sklarsky (admitted *pro hac vice*)
Caroline Sacerdote (admitted *pro hac vice*)
Jen Samantha D. Rasay (admitted *pro hac*
*vice*)
*Center for Reproductive Rights*
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
enestler@reprorights.org
jsklarsky@reprorights.org
csacerdote@reprorights.org
jrasay@reprorights.org

*Counsel for Plaintiffs Natasha Reifenberg,*
*Jane Doe 2, and Jane Doe 3*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

ISSUE STATEMENT ........................................................................................................ 4

BACKGROUND ............................................................................................................... 4

ARGUMENT .................................................................................................................... 7

I.      THE SETTLEMENT AGREEMENT IS REVIEWABLE IN THIS PROCEEDING ....... 7

     A.     The Settlement Agreement is Justiciable. ............................................................ 7

          1.     *Little Sisters* Does Not Disturb This Court's Conclusion That the
Settlement Agreement is Reviewable. ...................................................... 7

          2.     The Court Should Decline Defendants' Invitation to "Reconsider"
Its Undisturbed Reviewability Analysis. .................................................. 11

     B.     *Little Sisters* Does Not Alter This Court's Determination That Plaintiffs'
Challenge to the Settlement Agreement Is Ripe. .................................................. 13

II.     BOTH THE RULES AND THE SETTLEMENT AGREEMENT VIOLATE THE
ESTABLISHMENT CLAUSE ...................................................................................... 15

     A.     The Rules and the Settlement Agreement Impermissibly Favor and
Advance Religious Beliefs. .................................................................................. 15

          1.     *Little Sisters* Did Not Even Consider Constitutional Challenges. ............ 15

          2.     The Rules and the Settlement Agreement Do Not Alleviate a
Substantial Government-Imposed Burden on Religion. .......................... 16

          3.     The Rules and the Settlement Agreement Impermissibly Harm
Third Parties. .......................................................................................... 18

     B.     RFRA Cannot Authorize Or Require A Policy That Violates the
Constitution. ........................................................................................................ 20

III.    THE SETTLEMENT AGREEMENT IS VOID FOR ILLEGALITY ............................. 21

     A.     The Settlement Agreement is Unlawful Because It Violates the Lawful
Regulations Implementing the ACA, and Also Violates the APA. ...................... 21

     B.     Federal Defendants' Decision to Permit Notre Dame to Impose Costs on
Students and Faculty for Contraception Violates the Women's Health
Amendment and its Implementing Regulations. .................................................. 26

CONCLUSION ................................................................................................................. 31

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Action on Smoking & Health v. Civ. Aero. Bd.*,
    713 F.2d 795 (D.C. Cir. 1983) .................................................................21

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    570 U.S. 205 (2013) ............................................................................20

*Am. Acad. of Pediatrics v. Food & Drug Admin.*,
    379 F. Supp. 3d 461 (D. Md. 2019) .........................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................29, 30

*Bowen v. Roy*,
    476 U.S. 693 (1986) ............................................................................17

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) .......................................................................17, 20

*Clark v. Suarez Martinez*,
    543 U.S. 371 (2005) ............................................................................19

*Cmty. Nutrition Inst. v. Young*,
    818 F.2d 943 (D.C. Cir. 1987) .............................................................10

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
    884 F.3d 560 (6th Cir. 2018), *appealed and aff'd on unrelated issue sub nom.*
    *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) .................................18

*Emp. Div. v. Smith*,
    494 U.S. 872 (1990) ............................................................................18

*Fluker v. Cty. of Kankakee*,
    741 F.3d 787 (7th Cir. 2013) ...............................................................14

*Goldberg v. Kelly*,
    397 U.S. 254 (1970) ............................................................................20

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ...........................................................7, 8, 9, 11, 12

*Hispanic Affairs Project v. Acosta*,
    263 F. Supp. 3d 160 (D.D.C. 2017), *aff'd in part, rev'd in part*, 901 F.3d 378
    (D.C. Cir. 2018) .................................................................................25

*Hobbie v. Unemployment Appeals Comm'n*,
    480 U.S. 136 (1987)............................................................................................................16

*Irish 4 Reproductive Health v. U.S. Dep't of Health & Human Servs.*,
    434 F. Supp. 3d 683 (N.D. Ind. 2020) ........................................................... *passim*

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971)............................................................................................................15

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020)........................................................................................... *passim*

*Lyng v. Nw. Indian Cemetery Prot. Ass'n*,
    485 U.S. 439 (1988)............................................................................................................17

*Maddonna v. U.S. Dep't of Health & Human Servs.*,
    No. 19-cv-3551 slip op. (D.S.C. Aug. 10, 2020) ...................................................11

*Miller v. Johnson*,
    515 U.S. 900 (1995)............................................................................................................17

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015)..............................................................................................................19

*Pub. Citizen Health Research Grp. v. Acosta*,
    363 F. Supp. 3d 1 (D.D.C. 2018) ..................................................................................9

*RWJ Mgmt. Co. v. BP Prods. N. Am. Inc.*,
    672 F.3d 476 (7th Cir. 2012) .......................................................................................14

*Santa Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000)....................................................................................................15, 19

*United States v. Lee*,
    455 U.S. 252 (1982)............................................................................................................17

*United States v. UCB, Inc.*,
    970 F.3d 835, 851 (7th Cir. 2020) .............................................................................11

*Webster v. Doe*,
    486 U.S. 592 (1988)............................................................................................................11

*Wis. Right to Life State Political Action Comm. v. Barland*,
    664 F.3d 139 (7th Cir. 2011) .......................................................................................13

**Statutes**

5 U.S.C. §§ 551-559 .............................................................................................................2

5 U.S.C. § 551(5) ............................................................................................................9, 24

5 U.S.C. § 553 .................................................................................................................9, 24

5 U.S.C. § 706 .................................................................................................................9, 24

42 U.S.C. § 300gg-13(a) .......................................................................................................27

42 U.S.C. § 300gg-13(a)(4) ........................................................................................1, 27, 28

42 U.S.C. § 2000bb-1 ...........................................................................................................21

42 U.S.C. §§ 2000bb-2000bb-4 .............................................................................................1

**Regulations**

78 Fed. Reg. 39,870 (July 2, 2013) .......................................................................................31

80 Fed. Reg. 41,318 (July 14, 2015) .....................................................................................31

83 Fed. Reg. 57,536 (Nov. 15, 2018) ....................................................................................28

83 Fed. Reg. 57,592 (Nov. 15, 2018) ....................................................................................28

**Other Authorities**

Arthur H. Garrison, *The Opinions by the Attorney General and the Office of Legal
      Counsel: How and Why They Are Significant*, 76 ALB. L. REV. 217, 238 &
      n.85 (2013) .....................................................................................................................25

Memorandum from Edwin Meese III, Attorney General, to All Assistant
      Attorneys General and All United States Attorneys (Mar. 13, 1986).........................24, 25, 26

Memorandum from Randolph D. Moss, Acting Assistant Attorney General, to
      Raymond C. Fisher, Associate Attorney General 4, (June 15, 1999).........................24, 25, 26

## INTRODUCTION

Defendants would have this Court believe that the Supreme Court's decision in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), handed them a complete victory in this case. But *Little Sisters* held only that the Patient Protection and Affordable Care Act, 42 U.S.C. § 300gg-13(a)(4) (the "ACA"), authorized the Departments to issue rules and that the Rules actually issued were not procedurally improper. It did not decide whether the Settlement Agreement is valid; whether the Rules violate the Establishment Clause or are arbitrary and capricious; and whether the Rules are authorized or required under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4 ("RFRA").[1] Those questions are the ones presented by this case.

Indeed, Defendants implicitly acknowledge, ECF Nos. 108-1 (the "ND MTD") and 109-1 (the "Gov't MTD"), that the Supreme Court did not resolve this case when they ask this Court to take them at their word that the Supreme Court *would* adopt their arguments, and therefore that this Court should cast aside its earlier holdings.[2] *Little Sisters* did not resolve this case and does not disturb this Court's prior holdings as to any of the claims realleged in the Second Amended Complaint. Defendants' arguments for dismissal are largely an attempt to relitigate issues that this Court already resolved. They should be rejected on three grounds.

---

[1] The United States Departments of Labor, Health and Human Services, and Treasury will be referred to as "Departments," and, together with Alex M. Azar II, Eugene Scalia, and Steven Mnuchin, as "Federal Defendants."

[2] In doing so, Defendants repeatedly cite to the concurring opinion of Justices Alito and Gorsuch as if it were the decision of the Court. *See, e.g.*, ND MTD at 2, 11–12 (urging reliance on the opinion of "two Justices" to conclude that there is "no basis for Plaintiffs' claim that the Settlement violates the Establishment Clause"); Gov't MTD at 20 (same); ND MTD at 13 (speculating that concurrence "leaves little doubt as to how the [Supreme] Court would rule" on whether RFRA authorized or required the Settlement Agreement, even though this Court already held that it does not and the *Little Sisters* majority declined to address the question). The concurrence is not binding law.

1

**First**, *Little Sisters* does not diminish this Court's holdings that the Settlement Agreement is judicially reviewable and that Plaintiffs' challenge to it is ripe for review. *Irish 4 Reproductive Health v. United States Dep't of Human Servs.*, 434 F. Supp. 3d 683, 695–99 (N.D. Ind. 2020). *Little Sisters* does not disturb this Court's conclusion that Plaintiffs have alleged that the Settlement Agreement constitutes a reviewable general policy. *Id.* at 698–99. Moreover, this Court already concluded that "*both* the Rules and Settlement Agreement are responsible for Plaintiffs' injuries," *id.* at 700 (emphasis added), and therefore that challenges to the Settlement Agreement are ripe because there is "no question . . . that the Settlement Agreement [along with the Rules] is causing [Plaintiffs'] injury," *id.* at 701. Nothing in *Little Sisters*—which vacated another court's preliminary injunction of the Rules in a case that did not involve the Settlement Agreement— affects this Court's analysis regarding the harm caused by the Settlement Agreement.

**Second**, *Little Sisters* did not address whether the Rules or the Settlement Agreement violate the Establishment Clause. As this Court already held, Plaintiffs have adequately alleged that both the Rules and the Settlement Agreement impermissibly favor religion, and that they advance and prefer certain religious beliefs. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 708–10. Defendants' attempt to muddy the waters based on a two-Justice concurrence should be rejected. And because RFRA can neither authorize nor require what the Establishment Clause forbids, RFRA can have no bearing on Plaintiffs' constitutional challenge.

**Third**, *Little Sisters* did not resolve Plaintiffs' claims that the Settlement Agreement is void for illegality under the Administrative Procedure Act, 5 U.S.C. §§ 551-559 (the "APA"), the Women's Health Amendment of the ACA, and the lawful regulations implementing the ACA. *Little Sisters* expressly left open the question whether the Rules satisfy the APA's substantive requirements, 140 S. Ct. at 2397-98 (Kagan, J., concurring in the judgment). Federal Defendants cannot bypass the APA's strictures by executing a Settlement Agreement that contains the same

infirmities as the Rules. By establishing a general policy to abandon the contraceptive coverage requirement without a rulemaking process as the APA requires, the Settlement Agreement likewise is unlawful. Finally, nothing in *Little Sisters* affects Plaintiffs' claim that the Settlement Agreement is unlawful and a violation of the Women's Health Amendment—even as implemented by the Rules—to the extent that the Settlement Agreement allows Notre Dame to impose cost-sharing for contraception that it willingly covers.

Plaintiffs' Second Amended Complaint responds to the actual effects of *Little Sisters*. This Court should not be distracted by Defendants' speculations about what the Supreme Court *might have held* had it reached issues that it declined to address and that this Court has already decided. The function of this Court is to exercise its best judgment on the issues presented in *this* case, which it has already done. The motions to dismiss should be denied.

**ISSUE STATEMENT**

1. Should the Court accept Defendants' request to reconsider and reverse its rulings that the Settlement Agreement is reviewable and that challenges to it are ripe, even though the *Little Sisters* litigation did not involve or even mention the Settlement Agreement and the Supreme Court did not address or decide any questions regarding justiciability?

2. Should the Court accept Defendants' request to reconsider and reverse its ruling that Plaintiffs have adequately stated Establishment Clause claims, even though the Supreme Court did not address or decide any constitutional questions in *Little Sisters*?

3. Have Plaintiffs adequately stated claims that the Settlement Agreement exceeds the government's settlement authority and violates the ACA; the *lawful* regulations implementing the ACA (i.e., the regulations that will be in force if the challenged Rules are set aside); and the APA's requirements for federal policymaking, when (a) *Little Sisters* did not involve the Settlement Agreement nor did it resolve whether the challenged Rules are lawful, and (b) the Settlement Agreement allows Notre Dame to impose cost-sharing for contraception that Notre Dame otherwise covers?

**BACKGROUND**

This Court is familiar with the factual background of the case. *See Irish 4 Reprod. Health*, 434 F. Supp. 3d at 690–94.[3] Plaintiffs, who include women[4] of child-bearing age enrolled in health

---

[3] Plaintiffs also refer the Court to Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint, ECF No. 61 at 3–13, for a more complete discussion of the facts. Given the Court's familiarity with the details, Plaintiffs focus here on the case's procedural posture.

[4] Because the individual Plaintiffs and identified members of Plaintiff Irish 4 Reproductive Health identify as women—and the Rules and the Settlement Agreement target women—this brief uses the term "women" throughout. The denial of reproductive health care and insurance coverage for that care, however, also affects individuals who may not identify as women, including some gender-nonconforming individuals and transgender men.

plans sponsored by Notre Dame, initiated this action in June 2018 in response to acts by the government and Notre Dame that continue to deprive them, and thousands of other students, employees, and dependents in health plans sponsored by Notre Dame, of meaningful access to essential reproductive health services. ECF No. 1. In their initial complaint, Plaintiffs challenged the interim rules and the Settlement Agreement, *id.*, and they amended their complaint in December 2018 to instead challenge the Final Rules and the Settlement Agreement, ECF No. 43. Defendants filed motions to dismiss that complaint in February 2019, ECF Nos. 58, 59, and the Court heard oral arguments in June 2019.

In January 2020, this Court issued its decision denying in most respects Defendants' motions to dismiss. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 683. It held that Plaintiffs had adequately alleged that the Settlement Agreement was a "conscious and express adoption of a general policy to authorize Notre Dame to prospectively circumvent the contraceptive coverage requirement" and thus was reviewable. *Id.* at 698. The Court also held that Plaintiffs had standing to challenge both the Rules and the Settlement Agreement because Notre Dame was relying on "both the Rules *and* the Settlement Agreement right now to support its contraceptive decisions," and because "both the Rules and Settlement Agreement are responsible for Plaintiffs' injuries." *Id.* at 699–700 (emphasis in original). The Court additionally held that claims relating to the Settlement Agreement were ripe because the Settlement Agreement "is, in its own right, injuring the Plaintiffs right now." *Id.* at 702.

Turning to the question whether the Settlement Agreement was void for illegality, this Court noted the Supreme Court's directive in *Zubik* that parties "should be afforded an opportunity to arrive at an approach going forward that accommodates [objectors'] religious exercise while at the same time ensuring that women covered by [objectors'] health plans receive full and equal health coverage, including contraceptive coverage." *Id.* at 700–01 (quoting *Zubik v. Burwell*, 136

S. Ct. 1557, 1560 (2016)). Because "[t]he Settlement Agreement does not ensure that women get full contraceptive coverage without cost-sharing," this Court held that Plaintiffs had stated a claim that the Settlement Agreement was void for illegality. *Id.* at 701.

This Court further held that RFRA neither authorizes nor requires the Settlement Agreement or the Rules, *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 706–08, and that Plaintiffs had stated a claim that the Settlement Agreement and the Rules violate the ACA and the APA, *id*. at 702–06. And the Court held that Plaintiffs' Establishment Clause claims likewise survived dismissal. *Id.* at 708–10. Only the Due Process and Equal Protection claims were dismissed. *Id.* at 710–11.

Shortly after this Court issued its decision, the Supreme Court granted certiorari in *Little Sisters*, and Federal Defendants moved to stay this case. ECF No. 85. This Court granted the stay, but pointed out that the Supreme Court's decision "may not be dispositive in this matter." ECF No. 93 at 2. That statement was prescient.

On July 8, 2020, the Supreme Court issued its decision in *Little Sisters*. 140 S. Ct. 2367. The Court held that the government had discretion under the ACA to "create the religious and moral exemptions" from the Rules, *id*. at 2381, and that the Rules were not procedurally invalid under the APA, *id.* at 2384–86. The Court expressly declined to reach arguments about whether RFRA authorized or required the exemptions. *Id.* at 2382–83; *cf.* at 2387–96 (Alito, J., joined by Gorsuch, J., concurring) (arguing that the Court should instead have gone on to consider and decide that RFRA compelled the exemptions). Nor did the Court decide "whether the exemptions can survive administrative law's demand for reasoned decisionmaking," *i.e.*, whether the Rules are arbitrary and capricious. *Id.* at 2396–400 (Kagan, J., joined by Breyer, J., concurring in the judgment). "That issue remains open for the lower courts to address." *Id.*

6

After the Supreme Court issued its decision, Plaintiffs filed a notice of voluntary withdrawal of claims affected by *Little Sisters* or previously dismissed by this Court. ECF No. 96. Shortly thereafter, this Court held a telephonic status conference to determine the path forward. The Court directed Plaintiffs to file a second amended complaint, ECF No. 97, and cautioned Defendants that any resulting motions to dismiss should not "rehash" topics that were unaffected by the *Little Sisters* decision. ECF No. 99 at 20–21. The Court underscored that it would ignore arguments that it had already decided. *Id.* Plaintiffs filed the Second Amended Complaint on August 20. *See generally* ECF No. 102 (the "Second Amended Complaint" or "SAC"). On September 21, Defendants moved to dismiss most of Plaintiffs' claims, this Court's warning about relitigating decided issues notwithstanding.

## ARGUMENT

I.    **THE SETTLEMENT AGREEMENT IS REVIEWABLE IN THIS PROCEEDING**

   A.    **The Settlement Agreement is Justiciable**

      1.    Little Sisters *Does Not Disturb This Court's Conclusion That the Settlement Agreement is Reviewable.*

Defendants seek to relitigate the reviewability of the Settlement Agreement, even though nothing in *Little Sisters* alters this Court's holding on that issue, *Irish 4 Reprod. Health*, 434 F. Supp. at 696-99.

This Court concluded that Plaintiffs adequately alleged that the Settlement Agreement constitutes a general policy affecting thousands of people, "and not just a single fact-specific resource-allocation decision subject to *Heckler* [*v. Chaney*, 470 U.S. 821 (1985)] discretion." *Id.* at 198. The Court therefore held that it could review Plaintiffs' claims that Federal Defendants "exceeded their legal authority," "acted unconstitutionally," and "failed to follow their own regulations" in executing the Settlement Agreement, *id.* at 699, and that judicial review was "particularly warranted" because Plaintiffs allege that this general policy *both* "amounts to

abdication of [the government's] statutory responsibilities" *and* constitutes *"abandonment of its promulgated regulations," Id.* at 698. In holding that judicial review is appropriate, the Court found it "especially disturbing" that "Federal Defendants have purported to bind future administrations, as well as future faculty, staff, and students at Notre Dame, by entering into such a broad Settlement Agreement that exempts Notre Dame from 'the Regulations or any materially similar regulation or agency policy,' and provides that no penalties will be assessed for noncompliance with 'any law or regulation' requiring contraceptive coverage." *Id.* (quoting the Settlement Agreement ¶¶ 2, 4).[5]

This Court's clear explanation to the contrary notwithstanding, Federal Defendants now contend that this Court's reviewability analysis was "based on a narrow understanding of the Agencies' statutory authority . . . that the Supreme Court has now repudiated." Gov't MTD at 2–31; *see also* ND MTD at 8. That is incorrect. Nothing in this Court's analysis turned on whether the contraceptive coverage requirement was statutorily mandated, or instead was, as *Little Sisters* held, a creature of regulation. *Little Sisters*, 140 S. Ct. at 2380–82. Nor did this Court's reviewability decision turn on whether Federal Defendants had statutory rulemaking authority to issue regulatory exemptions from the contraceptive coverage requirement. So it is unaffected by the holding in *Little Sisters* that they did. Rather, this Court's reviewability determination was predicated entirely on the apt conclusion that *Heckler* does "not dictate what happens in a case like this," where the government has adopted a general policy that is alleged to violate (1) regulations rightfully in effect, (2) statutes, or (3) the Constitution. *See Irish 4 Reprod. Health*, 434 F. Supp.

---

[5] Contrary to Notre Dame's assertions, it is of no moment that the Women's Health Amendment and implementing regulations "say nothing about how they are to be enforced," ND MTD at 24 (citing *Heckler*, 470 U.S. at 833), because this Court already concluded that Plaintiffs adequately alleged that the Settlement Agreement simply is *not* a single-shot nonenforcement agreement. Thus, it need not also come within the distinct "law to apply" exception to *Heckler* for this Court to review it.

3d at 697–98 (citing *Heckler v. Chaney*, 470 U.S. 821, 833 n.4 (1985); *id.* at 839 (Brennan, J., concurring) (clarifying that *Heckler* does not preclude judicial review of allegations that an agency "has refused to enforce a regulation lawfully promulgated" and properly in effect or that "a nonenforcement decision violates constitutional rights"); *OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998); *Crowley Caribbean Transp. v. Pena*, 37 F.3d 671, 676–77 (D.C. Cir. 1994)). Plaintiffs' claims as to "all three of the[se] violations," *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 699, remain unchanged in all material respects.

First, Plaintiffs maintain that Federal Defendants unlawfully attempted to make policy by settlement, abandoning the lawful regulations establishing the contraceptive coverage requirement for the tens of thousands of individuals covered by Notre Dame's and other covered entities' health plans, without following the APA's requirements for promulgating federal policy.[6] The APA requires agencies to engage in notice-and-comment rulemaking, subject to arbitrary-and-capricious review and constitutional constraints, before amending or revoking a notice-and-comment rule. 5 U.S.C. §§ 551(5), 553, 706. Where, as here, a plaintiff plausibly alleges that an agency's action is "tantamount to amending or revoking a rule," the action "does not warrant a presumption against reviewability" but rather "amounts to substantive rulemaking subject to the APA's constraints and [is] generally reviewable by courts." *Pub. Citizen Health Research Grp. v. Acosta*, 363 F. Supp. 3d 1, 18-19 (D.D.C. 2018) (internal quotation marks omitted); *accord Am.*

---

[6] As explained in Section III.A., *infra*, this Court may consider claims that the Settlement Agreement unlawfully abandoned the lawful regulations previously in place, because if challenges to the Rules in this or in other pending suits are successful, the prior regulations will once again become operative. In any event, Plaintiffs alternatively argue that the Settlement Agreement violates the ACA, even as implemented by the challenged Rules, by allowing Notre Dame to charge co-payments for contraceptives that it has willingly covered for years, and thus ones for which Notre Dame lacks a basis for asserting a religious exemption under the Rules. *Infra*, Section III.B. And as detailed in Section II, *infra*, both the Settlement Agreement and the Rules favor religion and advance and prefer certain religious beliefs in violation of the Establishment Clause.

*Acad. of Pediatrics v. Food & Drug Admin.*, 379 F. Supp. 3d 461, 481 (D. Md. 2019); *see also Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 948 (D.C. Cir. 1987) (agency action that creates rights and obligations and cabins the agency's own discretion "can in fact rise to the level of a substantive, legislative rule").

As alleged in the Second Amended Complaint, Federal Defendants used the Settlement Agreement to bypass lawfully promulgated regulations requiring contraceptive coverage without cost-sharing, thus violating the APA. SAC ¶¶ 168, 175(d). Plaintiffs aim to show that the Rules "flunk the test of reasoned decisionmaking" under the APA (and violate the Establishment Clause, *see* Part II, *infra*) because there is "a mismatch between the scope of the religious exemption and the problem the agencies set out to address," *Little Sisters*, 140 S. Ct. at 2398 (Kagan, J., concurring in the judgment) (quotations omitted); SAC ¶ 104. The Settlement Agreement institutes that same policy, without even the illusion of the requisite rulemaking process. SAC ¶¶ 11, 168, 175(d), *see* Sections II.A. & III.A., *infra*. The APA does not permit Federal Defendants to accomplish via contract what they could not legally accomplish via regulation. Nothing in *Little Sisters* alters this Court's ability to review claims of such unlawful conduct.

Second, Plaintiffs maintain that the Settlement Agreement violates the Women's Health Amendment of the ACA, even as implemented by the Rules, to the extent that it permits Notre Dame to impose cost-sharing for contraceptive methods that it has made the decision to cover. SAC ¶¶ 8, 13–17, 167, 175(c). *Little Sisters* does not alter this Court's determination that it may review a claim that the Settlement Agreement contravenes the ACA.

Third, Plaintiffs maintain that the Settlement Agreement violates the Establishment Clause. SAC ¶¶ 165, 175(a), 188–192. *Little Sisters* expressly did not decide the constitutionality of the Final Rules, let alone of the Settlement Agreement (which was not even at issue in that litigation). *Little Sisters*, 140 S. Ct. at 2383 n.10. Yet Notre Dame suggests that *Little Sisters* stands for the

proposition that statutory authorization to create religious exemptions means that the exemptions ultimately created are immune from judicial review. ND MTD at 9. That is wrong. Congress may not delegate to an agency the discretion to violate constitutional mandates (*see* Section II.A.3., *infra*). And "serious constitutional question[s] . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988).

Indeed, "*Heckler* reserved decision on what result would follow if there were a 'colorable claim . . . that the agency's refusal to institute proceedings violated any constitutional rights' of the plaintiff." *See United States v. UCB, Inc*., 970 F.3d 835, 851 (7th Cir. 2020) (quoting *Heckler*, 470 U.S. at 838)); *see also Heckler*, 470 U.S. at 839 (Brennan, J., concurring). Accordingly, "[c]ourts have often undertaken review of actions having constitutional implications in order to protect the fundamental rights of a challenger within the context of the APA." *Maddonna v. U.S. Dep't of Health & Human Servs.*, No. 19-cv-3551 slip op. at 43, 41–43 (D.S.C. Aug. 10, 2020) ECF No. 43.

*Little Sisters* thus does not affect this Court's conclusion that the Settlement Agreement is subject to judicial review.

### 2. The Court Should Decline Defendants' Invitation to "Reconsider" Its Undisturbed Reviewability Analysis.

Perhaps recognizing that *Little Sisters* truly has no bearing on the reviewability of the Settlement Agreement, Federal Defendants also broadly invite the Court to "reconsider its approach" to reviewability. Gov't MTD at 14. The Court should reject this naked attempt to relitigate the point, and instead should summarily conclude that the Settlement Agreement is reviewable for all the reasons stated in the Court's earlier decision and in Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint, ECF No. 61 at 17–21.

Simply put, this Court's earlier decision was correct. Federal Defendants' argument that this Court's reasoning would allow any plaintiff to "escape *Heckler* reviewability by merely alleging that an agency exceeded its authority in failing to take an enforcement action or entering into a settlement agreement" misapprehends why this Court concluded that the Settlement Agreement is reviewable. Gov't MTD at 14–15. This Court recognized that the Settlement Agreement is not, as Defendants would recast it (Gov't MTD at 14–15; *see also* ND MTD at 8), a mere "failure to take an enforcement action," nor is it a run-of-the-mill settlement of litigation. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 698. The Court based its reviewability determination on the fact that the Settlement Agreement wholly exempts Notre Dame, 74 other entities and individuals, and an unknown number of related entities from complying with the current contraceptive coverage regulations, all *future* regulations, and potentially even other current or future statutes that provide for contraceptive coverage benefits, to the detriment of Plaintiffs and countless other individuals, now and forevermore. Settlement Agreement, ECF No. 102-1, ¶¶ 2, 4. And the Court recognized that the Settlement Agreement "stands in the way of any other mechanism to address the injury at issue in this case," *Irish 4 Reprod. Health*, 414 F. Supp. 3d at 696—precisely the sort of affirmative exercise of "*coercive* power over an individual's liberty or property rights . . . that courts often are called upon to protect," *Heckler*, 470 U.S. at 832 (emphasis in original). As this Court properly held, such policymaking by settlement "that is impacting thousands of individuals right now" is subject to judicial review. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 697–98.[7]

---

[7] Federal Defendants incorrectly argue that the Court's reasoning "would transform every *Heckler* nonreviewability analysis into a decision on the merits." Gov't MTD at 15. Not so. The key question in the reviewability analysis is whether Plaintiffs plausibly allege that the agency conduct constitutes an unlawful general policy as opposed to a "single-shot nonenforcement decision." *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 697. If so, the claim is reviewable, regardless of whether Plaintiffs ultimately succeed on the merits of the claim.

### B.      *Little Sisters* Does Not Alter This Court's Determination That Plaintiffs' Challenge to the Settlement Agreement Is Ripe.

Plaintiffs' challenge to the Settlement Agreement is, no less than before, ripe for review. Nothing about *Little Sisters* alters this Court's previous determination that "[t]he Settlement Agreement challenges are ripe *now* because Plaintiffs' claims address an active controversy that turns on Defendants' past actions and legal issues, not on uncertain future contingencies." *Id.* at 701 (emphasis added). As Plaintiffs previously explained, "the validity of the Settlement Agreement is not contingent on any 'uncertain' events but rather turns purely on whether it was lawfully entered into in the first place." ECF No. 61 at 16; *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) ("Claims that present purely legal issues are normally fit for judicial decision."). And while Defendants may wish to redescribe Plaintiffs' injuries as hypothetical, ND MTD at 7; Gov't MTD at 17, this Court had "no doubt that the Plaintiffs are currently experiencing an injury—they have lost coverage for contraceptive care and are currently paying out-of-pocket for those needs," *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 701-02. The Court thus held that there was "no question . . . that the Settlement Agreement is causing [Plaintiffs'] injury"—in addition to the Rules, *see id.* at 701—because "Notre Dame has repeatedly and specifically invoked it as a basis for refusing to provide contraceptive coverage." *Id.*[8] Indeed, the Court recognized that Plaintiffs' harms attributable to the Settlement Agreement stretch back to October 2017; those harms were ongoing both while the interim rules were in effect and after they were preliminarily enjoined in December 2017, *id.* at 702; *see also* SAC ¶ 6 n.2, and continue today.

---

[8] The fact that the Settlement Agreement also covers future conduct does not alter that conclusion. This Court recognized that the Settlement Agreement is causing harm now, making the case ripe. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 701-02. That Plaintiffs also challenge the Settlement Agreement's application to future administrations does not somehow render ripe claims unripe.

Thus, contrary to Notre Dame's assertions, ND MTD at 6, this Court's ripeness holding did not "hinge[] on" the preliminary injunctions of the Final Rules in other courts; nor did this Court hold that the Settlement Agreement was the "sole basis" of Plaintiffs' injuries. Rather, the Court recognized that the preliminary injunctions of the Rules were just that—preliminary—and relied on Notre Dame's own representations to conclude that "both the Rules and Settlement Agreement are responsible for Plaintiffs' injuries." *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 700. *See id.* (citing Notre Dame's Memorandum of Law in Support of Motion To Dismiss, ECF No. 59-1 at 14 (noting Notre Dame's then-position that the "regulations exempt Notre Dame from the Mandate wholly apart from the settlement agreement")); *see also* Notre Dame's Reply in Support of Motion to Dismiss, ECF No. 68 at 2 ("Notre Dame's refusal to provide coverage is based on *both* the regulatory exemption *and* the settlement." (emphasis in original)). Accordingly, the Court rejected Defendants' "house of mirrors" approach, in which Notre Dame argued that the Rules rendered the challenge to the Settlement Agreement nonjusticiable and Federal Defendants argued the reverse. The Court thus held that Plaintiffs have standing to challenge all the agency actions and that the Settlement Agreement is ripe for review. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 700, 701–02.

What is more, the Rules remain subject to legal challenge in this litigation, and they may well be enjoined or vacated again, whether by this Court or some other, which would leave Notre Dame to rely solely on the Settlement Agreement. Accordingly, in the interest of judicial economy this Court should address the merits of both legal questions in one lawsuit, particularly "after almost two years of litigation and a comprehensive opportunity to address the merits of the case." *Fluker v. Cty. of Kankakee*, 741 F.3d 787, 793 (7th Cir. 2013); *see also RWJ Mgmt. Co. v. BP Prods. N. Am. Inc.,* 672 F.3d 476, 481 (7th Cir. 2012) ( "[C]oncerns about judicial economy have

their greatest force when significant federal judicial resources have already been expended to decide the . . . claims. . . .").

## II.   BOTH THE RULES AND THE SETTLEMENT AGREEMENT VIOLATE THE ESTABLISHMENT CLAUSE

This Court has already held that Plaintiffs have adequately alleged that the Rules and the Settlement Agreement violate the Establishment Clause. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 708-10. Defendants now ask the Court to do an about-face in light of *Little Sisters*. But the Supreme Court's holding that the ACA authorizes agencies to create regulatory exemptions from the contraceptive-coverage requirement has no bearing on whether the Constitution requires, permits, or forbids *these particular exemptions*. *Little Sisters* does not even address constitutional claims, much less eliminate "the fundamental limitations imposed by the Establishment Clause," *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302 (2000) (quoting *Lee v. Weisman*, 505 U.S. 577, 587 (1992)), on any government-imposed religious exemption. As this Court has already concluded that Plaintiffs have properly stated claims that the Rules and the Settlement Agreement violate these fundamental limitations, that should end the matter.

### A.   The Rules and the Settlement Agreement Impermissibly Favor and Advance Religious Beliefs.

#### 1.   Little Sisters *Did Not Even Consider Constitutional Challenges.*

This Court, relying on the test first articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), concluded that Plaintiffs adequately alleged that the Rules and the Settlement Agreement "have the primary purpose and principal effect of promoting, advancing, and endorsing religion" and "coercively impose religious beliefs and practices to which Plaintiffs and other affected persons do not subscribe," by "impos[ing] the religious beliefs of a select few on individuals who may not share those beliefs." *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 709 (quoting Amended Complaint, ECF No. 43, ¶¶ 10, 216). Because the Supreme Court in *Little Sisters* did not consider an

Establishment Clause claim, Defendants have no ground to argue that *Little Sisters* somehow altered or diminished these foundational Establishment Clause principles. Hence, there is no basis for this Court to reconsider its holding here.

> 2.    *The Rules and the Settlement Agreement Do Not Alleviate a Substantial Government-Imposed Burden on Religion.*

This Court correctly recognized that "[a]n 'accommodation of religion, in order to be permitted under the Establishment Clause, must lift an identifiable [government-imposed] burden on the exercise of religion.'" *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 708 (second alteration in original) (quoting *Cty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 613 n.59 (1989)). When the burden is insubstantial or nonexistent, religious exemptions impermissibly "single out a particular class of [religious observers] for favorable treatment and thereby have the effect of implicitly endorsing a particular religious belief." *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 145 n.11 (1987).

In keeping with that constitutional prerequisite, this Court already concluded that, among other constitutional defects, the preexisting accommodation was not an "unjustified substantial burden[] on the exercise of moral convictions and religious beliefs," so the prerequisite for a religious accommodation is not met. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 709. Eight of the nine circuits to have considered the question agree. *Id.* at 708-09. And the Supreme Court has never held otherwise. Not in *Little Sisters*. Not ever. That two Justices felt the need in a separate concurrence in *Little Sisters* to state that they "would decide [this] one additional question," going beyond what the majority did, just underscores that the Court did not decide what Defendants wish that it had. 140 S. Ct. at 2387 (Alito, J., concurring). And it remains settled, binding precedent that agencies cannot "accommodate" religious exercise if there is no substantial, government-imposed burden being ameliorated.

16

It likewise remains binding precedent that "the decision about whether an alleged burden is substantial is a legal question . . . committed to the purview of the courts, not to an administrative agency." *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 706 (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 434 (2006)) (explaining substantial-burden prerequisite under RFRA). That does not mean that an agency cannot in the first instance consider whether a religious accommodation might be warranted; nor did this Court ever so suggest, *contra* ND MTD at 14. Rather, it means that the agencies' view is not entitled to deference; at the end of the day, the courts must make the call. *See, e.g.*, *Miller v. Johnson*, 515 U.S. 900, 922–23 (1995). And that is precisely what Plaintiffs sought from the start—and what this Court has already done.

As for the recognition in *Little Sisters* that courts "must accept the sincerely held complicity-based objections of religious entities," *Little Sisters*, 140 S. Ct. at 2383, that simply means that courts cannot judge the validity of a claimant's beliefs. A court cannot say, for example, that "you are wrong as a theological matter that giving the government notice of your objection to contraceptive coverage makes you morally complicit in sin." The statement of this principle in *Little Sisters* was hardly novel. *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 723–24 (2014); *United States v. Lee*, 455 U.S. 252, 263 n.2 (1982) (Stevens, J., concurring) (courts cannot evaluate "the relative merits of differing religious claims").

But whether a burden qualifies as "substantial" as a legal matter is nonetheless an objective question of law to be determined by the courts. *See, e.g., Gonzales*, 546 U.S. at 434; *Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 452 (1988); *Bowen v. Roy*, 476 U.S. 693, 702 (1986) ("[C]laims of religious conviction do not automatically entitle a person to fix unilaterally the conditions and terms of dealings with the Government. Not all burdens on religion are unconstitutional."). While a claimant might genuinely feel burdened in its religious exercise—and while the courts cannot reject that belief as "wrong"—accepting the sincere religious objection

17

does not obviate the need for a judicial determination whether the burden is legally sufficient to satisfy the legal prerequisite of a substantial legal burden. And "[m]ost circuits . . . have recognized that a party can sincerely believe that he is being coerced into engaging in conduct that violates his religious convictions without actually, as a matter of law, being so engaged." *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 588 (6th Cir. 2018), *appealed and aff'd on unrelated issue sub nom. Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).

In short, accepting Notre Dame's belief that complying with the preexisting regulatory accommodation would make it complicit in sin does not resolve whether the notice requirement substantially burdens religious exercise as a matter of law. There is no basis to cast aside the sound conclusion of this Court, the Seventh Circuit, and the overwhelming majority of the other circuits that it is no substantial burden as a legal matter to "hav[e] to give . . . notice" to avail oneself of a regulatory religious opt-out right. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 706-07. Rather, it is the bare minimum that objectors must do for the government to retain lawmaking authority while admitting of religious objections to general legal obligations. *Cf. Emp. Div. v. Smith*, 494 U.S. 872, 879, 885 (1990) (making adherence to generally applicable laws "contingent upon the law's coincidence with" individuals' religious beliefs would "permit every citizen to become a law unto himself" (quoting *Reynolds v. United States*, 98 U.S. 145, 167 (1878))).[9]

> 3.   *The Rules and the Settlement Agreement Impermissibly Harm Third Parties.*

This Court also correctly recognized that it "must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries." *Irish 4 Reprod. Health*, 434 F. Supp.

---

[9] Nor does *Little Sisters* address, much less resolve, the related question whether Notre Dame is substantially burdened as a legal matter by being required to provide coverage without cost-sharing of contraceptives that it is "willing to cover," ND MTD at 22, and that it in fact has been covering for more than two years. *See* SAC ¶¶ 8, 13–17.

3d at 709 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005)). For "[i]f, in purporting to accommodate the religious exercise of some, the government imposes costs and burdens of that religious exercise on others, it favors the faith of the benefitted over the benefits and rights of the burdened, and this could violate the Establishment Clause." *Id.* (*citing Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 709–10 (1985); *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 18 n.18 (1989) (plurality opinion)). And the Court determined that "[t]he burden seems quite evident in this case": "allowing Notre Dame to opt out of providing contraceptive coverage practically affects and injures numerous students and faculty who would otherwise be entitled to the provision of contraceptive coverage." *Id.* at 709-10.

*Little Sisters* changes none of that. Yet Defendants determinedly insist that statutory authorization to create exemptions means that any religious exemptions then afforded are not susceptible to constitutional challenge, and that this Court therefore need not and cannot consider whether they burden nonbeneficiaries. *See* Gov't MTD, at 22-23; ND MTD at 12.

Not so. Congress cannot pass laws that violate the Constitution. *See, e.g., Clark v. Suarez Martinez*, 543 U.S. 371, 380–81 (2005); *Santa Fe*, 530 U.S. at 302. And because Congress cannot violate the Constitution, it also cannot confer authority or discretion on federal agencies to do so. *Cf., e.g., Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 131–32 (Thomas, J., concurring) (Congress lacks authority to "issue a judicially binding interpretation of the Constitution," and, "[l]acking the power itself, it cannot delegate that power to an agency").

Defendants also seek to relitigate this Court's specific determination that the Rules and the Settlement Agreement burden students and faculty, arguing that the challenged actions leave "affected women . . . no worse off than before the Agencies initially decided to act" because "women had no entitlement to contraceptive coverage without cost sharing" before the coverage requirement was put in place. Gov't MTD at 23; *see also* ND MTD at 12–13. But the Rules and

the Settlement Agreement postdated the effective date of the coverage requirement *by more than five years*, so the *status quo ante* is that Plaintiffs were legally entitled to coverage—coverage that has now been stripped from them. On Defendants' view, a claimant could not raise a due-process challenge to the summary termination of welfare benefits, for example, because there was a time before she became eligible to receive the benefits, or a time before the welfare program became law, when the claimant would have had no entitlement to the benefits. Nor, for the same reason, could anyone ever challenge unconstitutional discrimination in the denial of a federal benefit. That is not how constitutional rights operate. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970) ("The constitutional challenge [to termination of benefits to which a person is statutorily entitled] cannot be answered by an argument that the [benefits] are a 'privilege' and not a 'right.'"); *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (organization's First Amendment rights violated by requirement that it adopt the government's view on a particular issue in order to become eligible to take part in funding program).

> **B.     RFRA Cannot Authorize Or Require A Policy That Violates the Constitution.**

RFRA provides important protections for religious exercise, but it does not and cannot authorize religious exemptions that fail to account for the Establishment Clause's constraints. RFRA thus incorporates the constitutional prohibitions against religious accommodations that are broader than necessary to relieve substantial burdens on religion or that would detrimentally affect third parties—the former expressly on the Act's face, and the latter under settled Supreme Court precedent. *See Irish 4 Reprod. Health*, 434 F. Supp. 3d at 708; *id.* at 709 (quoting *Cutter*, 544 U.S. at 720); *see also Hobby Lobby*, 573 U.S. at 693 ("Nor do we hold . . . that . . . corporations have free rein to take steps that impose 'disadvantages' . . . on others' or that require 'the general public to pick up the tab.'" (citation and alteration omitted); *id.* at 729 n.37; *id.* at 738-39 (Kennedy, J.,

concurring); 42 U.S.C. § 2000bb-1 (incorporating substantial-burden requirement as statutory prerequisite).

For the reasons explained in Section II.A., *supra*, this Court has already correctly determined that Plaintiffs have adequately alleged that the Rules and the Settlement Agreement fail in both respects. Hence, this Court has also rejected Defendants' arguments for why RFRA purportedly authorizes and requires the Settlement Agreement. *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 706-08.

Despite Notre Dame's frank acknowledgment (ND MTD at 13 (quoting *Little Sisters*, 140 S. Ct. at 2382)) that *Little Sisters* "did not 'need [to] reach'"—and, more to the point, undeniably did *not* reach—the question whether RFRA authorizes or requires the exemptions, Defendants ask this Court to revisit and reverse its previous rulings. But again, whatever additional issues Justices Alito and Gorsuch might have wished for the Supreme Court to consider, and however they might have wished that those questions be decided, the *Court* held only that it was "appropriate" for the agencies to "consider RFRA" in crafting regulations. *Little Sisters,* 140 S. Ct. at 2383. That the agencies may, or could, or should consider RFRA does not mean, as we have detailed (*see supra* Section II.A.), that they have carte blanche to create whatever religious exemptions they please, constitutional mandates to the contrary notwithstanding. And again, whether RFRA's prerequisites and the Establishment Clause's requirements are satisfied are legal questions committed to this Court; no deference to any agency is owed or due. *See Irish 4 Reprod. Health*, 434 F. Supp. 3d at 706.

## III.   THE SETTLEMENT AGREEMENT IS VOID FOR ILLEGALITY

### A.   The Settlement Agreement is Unlawful Because It Violates the Lawful Regulations Implementing the ACA, and Also Violates the APA.

If the challenged Rules are vacated, as they should be, the previously promulgated rules will go back into effect. *See Action on Smoking & Health v. Civ. Aero. Bd.*, 713 F.2d 795, 797

(D.C. Cir. 1983) ("To vacate . . . means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside. Thus, by vacating or rescinding the [newly promulgated rules], the judgment of this court had the effect of reinstating the rules previously in force."). Because the Settlement Agreement would contravene the rules then rightfully in effect, Plaintiffs have stated a claim that the Settlement Agreement is contrary to law and must likewise be vacated.

Defendants' protestations notwithstanding, *Little Sisters* did not hold that the challenged Rules are "perfectly lawful," ND MTD at 24, much less that the Settlement Agreement must stand, Gov't MTD at 19 n.9. The Supreme Court held only that the ACA affords Federal Defendants discretion to determine the availability of exemptions from the contraceptive coverage requirement, *Little Sisters*, 140 S. Ct. at 2379-82, which is not the end of the inquiry but the beginning. For example, as the *Little Sisters* Court expressly recognized, the APA still requires a requisite level of process to ensure that the Department's policy reversal is not arbitrary and capricious. *Id.* at 2383-84. The Supreme Court did not determine—but rather expressly declined to consider—whether the Rules were promulgated in accordance with those standards. *Id.* at 2397 (Kagan, J., concurring in the judgment) ("I question whether the exemptions can survive administrative law's demand for reasoned decisionmaking. That issue remains open for the lower courts to address."). Accordingly, whether the challenged Rules are lawful remains a live question before multiple courts, including this one. And *Little Sisters* left wholly undisturbed the basis for this Court's ruling that "[b]ecause [Defendants] have offered little explanation, and have not 'shown that there are good reasons' for the change, Plaintiffs have stated a plausible claim . . . that the Rules are arbitrary and capricious." *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 704; *see also* Gov't MTD at 3 n.3 (recognizing that the arbitrary-and-capricious claims cannot be resolved on these motions to dismiss).

22

Defendants do not dispute that the Settlement Agreement contravenes the prior regulations, or that it would be contrary to governing law were those regulations to go back in effect.[10] Instead, Notre Dame insists that the Settlement Agreement should be allowed to stand no matter what happens to the challenged Rules—*i.e.*, regardless of whether the Settlement Agreement contravenes the law that is ultimately held to be in effect—based on the assertion that the Settlement Agreement is merely a "non-enforcement agreement." ND MTD at 1, 17, 21. But as detailed in Section I.A.1., *supra*, this Court already rejected that argument in holding that Plaintiffs adequately alleged that the Settlement Agreement is "a conscious and express adoption of a general policy," not a "*single*-shot non-enforcement agreement," *Irish 4 Reprod. Health*, 434 F. Supp. 3d at 697-98. To the extent that Defendants suggest that *Little Sisters* somehow changes the analysis, that is incorrect for the reasons already explained. If anything, the Supreme Court's decision only reinforces the impropriety of such "policymaking by settlement" under the circumstances here, because the Court recognized that the government's discretion to reverse the previous federal policy is constrained by the rulemaking requirements of the APA. *See Little Sisters*, 140 S. Ct. at 2383-84 (explaining that the reversal of the previous policy required a rulemaking process that was not arbitrary and capricious). It would defy reason for the Supreme Court to require a full rulemaking process when setting policy by regulation, while at the same time allowing the government to make the very same policy by contracting around the APA's requirements behind closed doors. And the APA expressly requires agencies to engage in notice-and-comment rulemaking, subject to arbitrary-and-capricious review and constitutional constraints, before

---

[10] Federal Defendants argue only (and in a footnote) that "it is not clear why Plaintiffs believe the Settlement Agreement must comply with prior regulations" because "*Little Sisters* held that the Agencies had statutory authority to promulgate the Final Rules." Gov't MTD at 19 n.9. As explained above, that misses the point, for *Little Sisters* did not finally determine the legality of the challenged Rules.

amending or revoking a notice-and-comment rule. 5 U.S.C. §§ 551(5), 553, 706. Were Federal Defendants allowed to reverse those same regulatory policies through sweeping contracts that contain none of the hallmarks of that requisite process, it would render the APA's rulemaking requirements nugatory.[11]

Finally, Federal Defendants' action is inconsistent with DOJ's long-standing interpretation of the APA and its limitations on the government's discretion to enter into settlement agreements. *See Authority of the United States to Enter Settlements Limiting the Future Exercise of the Executive Branch Discretion*, 23 Op. O.L.C. 126, 129 (1999), https://www.justice.gov/file/19516/download (the "Moss Memo") (explaining that "the notice and comment requirements of the APA" may "limit the settlement authority of the executive branch."); *see also* Memorandum from Edwin Meese III, Attorney General, *Department Policy Regarding Consent Decrees and Settlement Agreements*, § II.A, B (Mar. 13, 1986), https://www.archives.gov/files/news/samuel-alito/accession-060-89-1/Acc060-89-1-box9-memoAyer-LSWG-1986.pdf (pdf pp. 6-8) (the "Meese Memo") (prohibiting government from entering into settlement agreements that "limit[] the discretion of a[n executive] department or agency" or that would "convert[] [a federal agency's discretionary authority] into a mandatory duty" for the agency). DOJ's own interpretation of its authority to enter into settlement agreements recognizes that "the Administrative Procedure Act generally limits the manner by which executive branch agencies may adopt, amend, or revise regulatory rules and procedures, and thus [it is]

---

[11] That is especially true here, where the policy was implemented in the form of regulations and a settlement agreement that contain the same terms. If this approach were permissible, the government could always insulate its questionable rulemaking processes from the courts through this belt-and-suspenders approach, for its new policies would then effectively remain in effect regardless of whether a court vacates them as unlawful. *See Irish 4 Reprod. Health*, 434 F. Supp. 3d at 700 (noting that Notre Dame "seems to be relying on both the Rules *and* the Settlement Agreement right now to support its contraceptive decisions" and that if one were struck down Notre Dame would "surely take shelter" in the other).

important to ensure that the terms of any settlement limiting the *otherwise* discretionary regulatory authority of an executive branch agency conform to the terms of that Act." Moss Memo, 23 Op. O.L.C. at 129 (emphasis added). The Moss Memo further acknowledges that the "executive branch *may not settle* on terms that would infringe the constitutional rights of third parties," adding that "[t]here may be . . . statutory provisions that protect the interests of third parties . . . that *limit the settlement authority* of the executive branch." *Id.* (emphasis added).[12]

While Defendants attempt to minimize this authority, it is well-settled that opinions from DOJ's Office of Legal Counsel ("OLC") "are treated as final and conclusive [and] necessarily become the executive branch interpretation of the law." Arthur H. Garrison, *The Opinions by the Attorney General and the Office of Legal Counsel: How and Why They Are Significant*, 76 Alb. L. Rev. 217, 238 & n.85 (2013) (quoting Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1321 (2000)); *see also Hispanic Affairs Project v. Acosta*, 263 F. Supp. 3d 160, 178 (D.D.C. 2017) ("The plaintiffs are correct to point out that [OLC] memoranda are akin to legal authority for an agency engaging in rulemaking on a related subject and therefore may now be considered by the Court, even if the

---

[12] Defendants mischaracterize Plaintiffs' reliance on the Meese and Moss Memos as an independent cause of action and then seek dismissal of that supposed claim. Gov't MTD at 16-17; ND MTD at 20. Plaintiffs do not allege, and never have alleged, that the Meese or Moss Memos create an independent cause of action. *See generally* SAC. Rather, Plaintiffs cite that long-standing DOJ policy as the correct interpretation of the law on how the government must act in order to comply with the APA and the United States Constitution—as well as controlling authority that binds the government. *See* SAC ¶ 166 (listing violation of DOJ policy, including the Meese Memo, as support for why the Settlement Agreement is unlawful under the APA). Defendants' arguments about whether claims under the Meese and Moss Memos are independently "cognizable," Gov't MTD at 16-17, are thus a red herring.

agency elected not to consider such materials."), *aff'd in part, rev'd in part*, 901 F.3d 378 (D.C.

Cir. 2018).[13] And here they are the correct interpretations.

Accordingly, Plaintiffs have stated a claim that the Settlement Agreement is unlawful

because it violates the APA and the lawful regulations implementing the Women's Health

Amendment of the ACA. At best, the Settlement Agreement implements aspects of the challenged

Rules, and the validity of those Rules remains an open question pending before this Court and two

others. If the Rules are vacated, as they should be, the Settlement Agreement will be contrary to

the law then in effect. This Court has already held that "[t]he Attorney General's authority to settle

litigation for its government clients stops at the walls of illegality." *Irish 4 Reprod. Health*, 434 F.

Supp. 3d at 699 (quoting *Exec. Bus. Media Inc. v. U.S. Dep't of Defense*, 3 F.3d 759, 762 (4th Cir.

1993)).

> **B.      Federal Defendants' Decision to Permit Notre Dame to Impose Costs on
> Students and Faculty for Contraception Violates the Women's Health
> Amendment and its Implementing Regulations.**

The Settlement Agreement is also unlawful to the extent that it allows Notre Dame to

impose cost-sharing for contraception that Notre Dame otherwise covers. SAC ¶ 167. Notre Dame

has invoked the Settlement Agreement as a basis to amend its insurance plans in a manner that not

only terminates coverage for some methods of contraception altogether, but also subjects other,

covered forms of contraception to co-payments and deductibles. SAC ¶¶ 134–136, 145; *see also*

---

[13] Defendants point to a clause in the Meese Memo that allows the Attorney General to depart from
the listed policies and exercise "necessary discretion to deal with the realities of any given case."
ND MTD at 21; Gov't MTD at 19. But that provision is not a catch-all shield from responsibility
for any and all statutory and constitutional violations arising from settlement agreements. On the
contrary, OLC made clear that the Attorney General must "accommodate the agency's policy
judgments to the greatest extent possible *without compromising the law*," and that "[o]ther types
of considerations that concern more particular policy aims . . . generally must be rooted in the
purposes of the statutes that govern the agency that has been vested by Congress with the
policymaking discretion and on whose behalf the settlement would be effected." Moss Memo, 23
Op. O.L.C. at 138 (emphasis added).

*Irish 4 Reprod. Health*, 434 F. Supp. 3d at 694. This imposition of cost-sharing for contraception *that Notre Dame otherwise willingly covers* is a sharp departure from the requirements of the Women's Health Amendment and goes beyond even the challenged Rules. SAC ¶¶ 3, 9, 134, 167. The Women's Health Amendment explicitly prohibits the imposition of cost-sharing when providing coverage for preventive care, and nothing in the Rules addresses or alters that central aspect of the statute. Thus, to the extent the Settlement Agreement purports to allow Notre Dame to impose cost-sharing requirements for contraceptive coverage, it clearly violates the ACA. Notre Dame attempts to circumvent this issue by characterizing its actions as a new form of religious objection—one that has never been presented before and which is based entirely upon attorney representations about the University's reasons for imposing cost-sharing requirements. Even if Notre Dame could claim a religious exemption *solely* to the prohibition on cost-sharing for contraceptive methods it has chosen to cover, which Plaintiffs contest as a legal matter, the unsupported facts Notre Dame lodges in service of their position cannot be resolved on a motion to dismiss.

The Women's Health Amendment states that group health plans "shall, at a minimum provide coverage for and *shall not impose any cost sharing requirements* for" preventive care described in HRSA guidelines. 42 U.S.C. §§ 300gg-13(a) (emphasis added); § 300gg-13(a)(4); *see also* SAC ¶¶ 2, 51–58. And HRSA guidelines continue to require coverage without cost-sharing of all FDA-approved methods of contraception for women and related services, education, and counseling.[14] The statute's prohibition against cost-sharing is "critical." *Id.* ¶ 66(g); *see also Irish*

---

[14]   Health Res. & Servs. Admin., Women's Preventive Services Guidelines, https://www.hrsa.gov/womens-guidelines-2016/index.html. *Little Sisters* did not change the prohibition against cost-sharing. 140 S. Ct. at 2373 (acknowledging that the preventive-care requirement prohibits cost-sharing); *see also* SAC ¶¶ 59–64.

*4 Reprod. Health*, 434 F. Supp. 3d at 690 ("Critically, the services must be provided *without cost-sharing.*" (emphasis added) (citing ECF No. 43 ¶ 51; 42 U.S.C. § 300gg-13(a)(4))).[15]

Nothing in the Rules suggests that a religious objector may impose costs for contraceptive methods that it has made a decision to cover. On the contrary, the exemption in the challenged Rules applies only to the extent that an entity "objects, based on its sincerely held [religious beliefs or moral convictions], to its establishing, maintaining, providing, offering, or arranging for . . . [c]overage or payments for *some or all contraceptive services.*" Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,590 (Nov. 15, 2018) (religious exemptions) (emphasis added); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,592, 57,636 (Nov. 15, 2018) (moral exemptions); *see also* SAC ¶ 167. Thus, even if Notre Dame's objection to providing coverage for some contraceptive services were to trigger an exemption under the Rules, the Rules do not sanction its decision to willingly provide coverage for contraceptive services but force employees and students to pay more for those same services than the law permits.

Notre Dame concedes that it covers certain methods of contraception subject to cost-sharing requirements but now asserts that its decision to charge co-pays and to leverage deductibles was a "religious determination" made "at the time the University entered into the Settlement." ND MTD at 21-22. In this regard and others, Notre Dame's brief is replete with assertions of facts outside the complaint—including assertions about the teachings of Catholic theology and a

---

[15] One reason this requirement is critical is because copays and deductibles limit access to contraception—something that the Departments themselves have acknowledged. SAC¶¶ 42–48; *see also id.* ¶ 66(g) (recognizing that "cost sharing can be a significant barrier to access to contraception" and that "eliminating cost sharing is particularly critical to addressing the gender disparity [in health coverage]"; *see also* ECF No. 61 at 35 n.24 (compiling Departments' statements).

description of the University's supposed "consultation with theologians and ethicists." *Id.* In lieu of record support for those allegations, Notre Dame's attorneys improperly make naked assertions—assertions that are unsupported by any evidence and far exceed the scope of the Second Amended Complaint.

As a threshold matter, Notre Dame's assertions about the reasons for requiring Plaintiffs to bear these costs simply cannot be considered at the motion-to-dismiss stage, because the Court must accept as true the well-pleaded facts in the complaint, view them in the light most favorable to Plaintiffs, and not allow defendants to offer up their own factual (or counter-factual) assertions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that, to survive a motion to dismiss, a complaint merely needs "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). In contrast to Notre Dame's new assertions, Plaintiffs have alleged that despite numerous public statements on this topic, Notre Dame never previously suggested that its decision to require cost-sharing was based on a religious objection. For example, Notre Dame's February 2018 announcement of its decision to terminate coverage for some methods of contraception altogether and to cover others said only that the faculty and student plans would cover "simple" contraceptives. SAC ¶ 8. Like Notre Dame's prior announcements, the February 2018 announcement did not even mention cost-sharing, let alone voice a religious objection that required students and faculty to incur co-pay charges for "simple" contraceptives. *Id.*; *see also* SAC ¶ 124 (announcing on October 27, 2017, its intention to "withdraw contraceptive coverage from its health plans beginning in the new plan years"); *id.* ¶ 131 (announcing in early November 2017 that it would "'not interfere' with the provision of contraceptive coverage").[16] Likewise, when Notre

---

[16] The Second Amended Complaint cites and incorporates the Letter to Faculty and Staff by President Rev. John I. Jenkins, C.S.C. (Feb. 7, 2018), available at https://president.nd.edu/homilies-writings-addresses/letter-on-health-care-coverage/.

Dame announced in March 2018 on its "Frequently Asked Questions about Contraceptive Coverage" ("FAQ") webpage that it would be imposing cost-sharing for "simple" contraceptives, it did not then even suggest that this was because of any religious objection to the prohibition against cost-sharing. SAC ¶ 138–141.[17] Open questions thus remain about whether, as a factual matter, Notre Dame's decision to impose cost-sharing was actually based on religious reasons at all. That factual dispute cannot be resolved on a motion to dismiss but instead should be addressed through discovery based on contemporaneous evidence. For now, the facts set forth in the Second Amended Complaint are all that matter, and they are more than sufficient to establish that Notre Dame relied on the Settlement Agreement to improperly impose cost-sharing on its students and faculty. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[18]

Accordingly, because the Second Amended Complaint sets forth a claim that the Settlement Agreement has provided Notre Dame cover to impose unlawful cost-sharing for contraceptive coverage, "the Settlement Agreement is contrary to law because it violates the Women's Health Amendment, the Final Rules, and the previously operative implementing

---

[17] The Second Amended Complaint cites and incorporates Notre Dame's "Frequently Asked Questions about Contraceptive Coverage" webpage, available at https://uhs.nd.edu/insurance-billing/insurance-faqs/faqs-regarding-contraceptive-coverage/ (accessed Mar. 2018).

[18] Seeking a blanket defense for its unlawful actions, Notre Dame invokes *Little Sisters* to argue that the scope of its ability to opt out of an applicable statutory obligation is a "line that is undoubtedly Notre Dame's to draw." ND MTD at 23. But as already explained, the ACA and Rules simply do not permit Notre Dame to claim a religious exemption only to the prohibition on cost-sharing, and the Settlement Agreement violates the ACA by allowing Notre Dame to do so. Moreover, as discussed in note 9, *supra*, it remains an open question whether Notre Dame is substantially burdened as a legal matter by being required to provide ACA-compliant coverage for contraceptives it is otherwise covering, rendering any such exemption constitutionally suspect. Finally, even assuming that Notre Dame could show a sincere objection to providing cost-free contraceptive coverage, there remain open questions about whether, as a factual matter, the University's decision to impose cost-sharing was actually based on religious reasons at all. Nothing in the record supports that conclusion. The answer to that factual dispute is not appropriate for a motion to dismiss, and should be addressed through discovery based on contemporaneous evidence.

regulations (*see* 78 Fed. Reg. 39,870; 80 Fed. Reg. 41,318) . . . in contravention of the statute's

requirement that it 'shall not impose any cost sharing requirements.'" SAC ¶ 167.[19]

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Dated: October 21, 2020                    Respectfully submitted,

                                          */s/ Anne S. Aufhauser*

                                          Janice Mac Avoy (admitted *pro hac vice*)
                                          Anne S. Aufhauser (admitted *pro hac vice*)
                                          R. David Gallo (admitted *pro hac vice*)
                                          Kellie P. Desrochers (admitted *pro hac vice*)
                                          FRIED, FRANK, HARRIS, SHRIVER
                                            & JACOBSON LLP
                                          One New York Plaza
                                          New York, NY 10004
                                          Telephone: (212) 859-8000
                                          janice.macavoy@friedfrank.com
                                          anne.aufhauser@friedfrank.com
                                          david.gallo@friedfrank.com
                                          kellie.desrochers@friedfrank.com

                                          Jeffrey A. Macey
                                          *Macey Swanson LLP*
                                          445 N. Pennsylvania Street, Suite 401
                                          Indianapolis, IN 46204
                                          Telephone: (317) 637-5
                                          jmacey@MaceyLaw.com

                                          *Counsel for all Plaintiffs*

---

[19] Although Federal Defendants argue that the Settlement Agreement "does not promise to excuse noncompliance with the prohibition against cost-sharing for contraceptives to which signatories do not object on religious grounds," Gov't MTD at 19, Notre Dame insists that the Settlement Agreement does allow it to charge cost-sharing for contraceptives that it is otherwise "willing to cover," ND MTD at 22, and Notre Dame does not dispute that it has invoked the Settlement Agreement to impose such cost-sharing since 2018, *id.* at 21–23; SAC ¶¶ 8, 13–17. Thus, the scope of the Settlement Agreement remains an open question.

Richard B. Katskee (admitted *pro hac vice*)
*Americans United for Separation of*
  *Church and State*
1310 L Street, NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-3234
katskee@au.org

Fatima Goss Graves (admitted *pro hac vice*)
Gretchen Borchelt (admitted *pro hac vice*)
Sunu Chandy (admitted *pro hac vice*)
Michelle Banker (admitted *pro hac vice*)
Lauren Gorodetsky (admitted *pro hac vice*)
*National Women's Law Center*
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Telephone: (202) 588-5180
fgraves@nwlc.org
gborchelt@nwlc.org
schandy@nwlc.org
mbanker@nwlc.org
lgorodetsky@nwlc.org

*Counsel for Plaintiffs Irish 4 Reproductive Health*
*and Jane Doe 1*

Emily Nestler (admitted *pro hac vice*)
Jessica Sklarsky (admitted *pro hac vice*)
Caroline Sacerdote (admitted *pro hac vice*)
Jen Samantha D. Rasay (admitted *pro hac vice*)
*Center for Reproductive Rights*
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
enestler@reprorights.org
jsklarsky@reprorights.org
csacerdote@reprorights.org
jrasay@reprorights.org

*Counsel for Plaintiffs Natasha Reifenberg, Jane*
*Doe 2, and Jane Doe 3*