IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| IRISH 4 REPRODUCTIVE HEALTH *et al.*,<br><br>　Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES *et al.*,<br><br>　Defendants. | Case No. 3:18-cv-0491-PPS-JEM |

**REPLY SUPPORTING FEDERAL DEFENDANTS' MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

**Table of Contents**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

    I.       The Settlement Agreement Is Not Reviewable Under 5 U.S.C. § 701(a)(2). .................. 3

    II.      Even If the Settlement Agreement Were Reviewable, Plaintiffs' Claims Fail as a
            Matter of Law. ................................................................................................................ 5

        A.      Plaintiffs' Argument that the Settlement Agreement Conflicts with the Prior
              Regulatory Regime Is Not Cognizable. ..................................................................... 5

        B.      Plaintiffs' Claim Based on the Meese Memo Is Not Cognizable and, in Any Event,
              the Settlement Agreement Does Not Violate Internal DOJ Guidance. ....................... 6

        C.      The Settlement Agreement Does Not Affect Enforcement With Respect to
              Contraceptive Methods to Which the Plaintiff-Signatories Do Not Object on
              Religious Grounds, and Does Not Violate the Women's Health Amendment. ........... 9

    III.     The Rules and Settlement Agreement Are Consistent With the Establishment Clause. 10

        A.      The Final Rules and Settlement Agreement Alleviate a Substantial Burden
              Imposed by the Government on the Exercise of Religious Freedom. ....................... 10

        B.      The Rules and Settlement Agreement Do Not Impermissibly Burden Third Parties.
              ................................................................................................................................... 13

CONCLUSION ........................................................................................................................... 14

**INTRODUCTION**

The Supreme Court's decision in *Little Sisters v. Trump*, 140 S. Ct. 2367 (2020), casts a long shadow over Plaintiffs' remaining claims, and confirms that Counts I, II, and IV in Plaintiffs' second amended complaint, ECF No. 102—as well as Count III to the extent that it raises Establishment Clause claims—should be dismissed. Plaintiffs' efforts to avoid the obvious implications of *Little Sisters* fail.

First, Plaintiffs continue to assert that the Department of Justice's (DOJ) decision to enter the Settlement Agreement is reviewable, notwithstanding *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), because the settlement supposedly constituted an abdication of DOJ's statutory authority and otherwise exceeded the Agencies'[1] authority. But the Court must start with the presumption that decisions not to take enforcement action, like the Settlement Agreement, are unreviewable. *Heckler*, 470 U.S. at 832. Then the only question is whether that presumption is rebutted in this case because the Affordable Care Act (ACA) "has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 833. *Little Sisters* confirms that the answer is no—the ACA affords the Agencies "virtually unbridled discretion" to create religious and moral exemptions to the contraceptive coverage mandate. *Little Sisters*, 140 S. Ct. at 2380. In light of this broad authority, and the absence of any indication in the statute that Congress intended "to circumscribe [the Agencies'] enforcement discretion," *Heckler*, 470 U.S. at 834, the federal government did not abdicate any obligation to enforce the mandate against Notre Dame by entering into the Settlement Agreement. Plaintiffs' other arguments regarding reviewability similarly come up short.

Second, Plaintiffs still insist that the Settlement Agreement is void because it violates internal DOJ guidance on settlement agreement terms and the ACA's requirements regarding cost sharing. But, even if Plaintiffs' challenges to the Settlement Agreement were cognizable, they would fail as a matter of law. To start, Plaintiffs offer no rebuttal to the Agencies' showing that

---

[1] The Department of Health and Human Services, the Department of Labor, and the Department of the Treasury.

DOJ's internal guidance does not create enforceable rights. Nor do Plaintiffs identify any way in which the Settlement Agreement violates such guidance. The plain terms of the Settlement Agreement, meanwhile, refute Plaintiffs' assertion that the agreement permits the signatories to require cost-sharing with respect contraceptive methods to which they do not have religious objections.

Third, Plaintiffs fail to grapple with the impact of *Little Sisters* on their claim that the Settlement Agreement and Final Rules[2] violate the Establishment Clause. This Court's ruling that Plaintiffs had adequately alleged such a claim rested on the premise that the Settlement Agreement and Final Rules did not relieve Notre Dame of any substantial burden on its religious beliefs. *Irish 4 Reproductive Health v. HHS*, 434 F. Supp. 3d 683, 708-09 (N.D. Ind. 2020). That premise, in turn, was based on the Court's view that it "still do[es]n't buy Notre Dame's argument that checking a box on a piece of paper makes it a 'conduit' to providing birth control, in contravention of its religious beliefs." *Id.* at 707. But *Little Sisters* made clear that such second guessing of complicity-based objections is wrong. 140 S. Ct. at 2383. And Plaintiffs' principal response—that *Little Sisters* did not decide whether that sincere belief was substantially burdened—ignores the fact that *Hobby Lobby* settled *that* question, holding that the very penalty faced by Notre Dame imposed a substantial burden. The Settlement Agreement and Final Rules thus have a legitimate purpose and effect: the removal of a governmentally imposed burden on the exercise of religion. And the Agencies did not impermissibly burden third parties, in contravention of the Establishment Clause, merely by declining to obligate Notre Dame to provide forms of contraceptive coverage to which it has a religious objection.

For these reasons, and those provided below, the Court should dismiss Counts I, II, and IV, as well as Count III to the extent that it alleges violations of the Establishment Clause.

---

[2] Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 83 Fed. Reg. 57,536 (Nov. 15, 2018) (the religious exemption rule); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 83 Fed. Reg. 57,592 (Nov. 15, 2018) (the moral exemption rule).

**ARGUMENT**

I.     **The Settlement Agreement Is Not Reviewable Under 5 U.S.C. § 701(a)(2).**

Plaintiffs contend that Federal Defendants improperly seek to "relitigate" the *Heckler* nonreviewability question.  Pls.' Mem. Opp'n Defs.' Mot. Dismiss Am. Compl. (Pls.' MTD Opp'n) at 11-12, ECF No. 127.  In *Little Sisters*, however, the Supreme Court held that the Agencies, and HHS (through HRSA), had "virtually unbridled discretion" under the ACA to decide both "what counts as preventive care and screenings" and to "create exemptions from [HRSA's] own Guidelines." *Little Sisters*, 140 S. Ct. at 2380-81.  This is exactly the kind of discretion that renders non-enforcement decisions like the Settlement Agreement nonreviewable.

A plaintiff cannot escape *Heckler* nonreviewability simply by claiming that the challenged decision was *ultra vires*.  Indeed, as explained previously, *see* Mem. Supp. Fed. Defs.' Mot. Dismiss 2d Am. Compl. (Fed. Defs.' MTD) at 15, ECF No. 109-1, *Heckler itself* was a case in which the challengers alleged that the agency had violated its statutes and regulations.  *See Heckler*, 470 U.S. at 823-24.

Plaintiffs also have no rejoinder whatsoever to the fact that the agency action in *Heckler* would have been just as nonreviewable were the non-enforcement decision there enshrined in a settlement agreement.  *See id*. at 831.  Instead, Plaintiffs rely on the idea that the Settlement Agreement was not a "run-of-the-mill settlement of litigation" subject to *Heckler*, but rather "an unlawful general policy."  *See* Pls.' MTD Opp'n at 12.  But this is doubly wrong.  First, *Heckler* itself refutes the notion that reviewability turns on "whether Plaintiffs plausibly allege that the agency conduct constitutes an unlawful general policy." *Id.* at 12 n.7.  That case, after all, was a suit challenging a general policy decision not to take certain FDA enforcement actions.  *See Heckler*, 470 U.S. at 823-24.  *Heckler* demonstrates that the analysis should be grounded in whether the statute provides "law to apply" with respect to an agency's enforcement decisions, not

3

in the nebulous question of when a decision not to enforce is broad enough to constitute a "general policy." *See Heckler*, 470 U.S at 831.

Second, *Little Sisters* demonstrated that even if the Settlement Agreement were a "general policy," that policy was permitted by statute. *Little Sisters* held the Agencies have a broad delegation of authority from Congress to create exemptions to the contraceptive coverage mandate. *See* 140 S. Ct. at 2380. Given that *Little Sisters* made clear that the Settlement Agreement is not "a general policy that is so extreme as to amount to an abdication of [the agencies'] statutory responsibilities," *Irish 4*, 434 F. Supp. 3d at 697 (quoting *Heckler*, 470 U.S. at 833 n.4), it no longer makes sense to view the Settlement Agreement as anything other than the lawful exercise of the statutorily-authorized broad enforcement discretion to which *Heckler* nonreviewability applies. *See Little Sisters*, 140 S. Ct. at 2380; *Heckler*, 470 U.S at 831.[3]

---

[3] Finally, even if the Settlement Agreement claims were reviewable, they are not ripe so long as the Final Rules are in effect. On the one hand, Plaintiffs claim that the Settlement Agreement is reviewable because it purportedly exempts entities from "all *future* regulations, and potentially even other current or future statutes." Pls.' MTD Opp'n at 12 (emphasis in original). On the other, they maintain that their challenge is still ripe because the Settlement Agreement is currently causing them injury. *See id.* at 13-14. After *Little Sisters*, Plaintiffs cannot have it both ways—the Agencies had lawful authority to promulgate the Rules, which are currently in force and exempt Notre Dame, so Plaintiffs are not currently being harmed by the non-enforcement promises in the Settlement Agreement. *See Little Sisters*, 140 S. Ct. at 2380. Plaintiffs' only remaining cognizable challenge would lie as to the Settlement Agreement's purported future effect. But, as this Court already recognized, their challenge to the future effect of the Settlement Agreement is not ripe. August 8, 2020 Status Conference Tr. at 13:22-14:4 (a challenge to the future effect of the Settlement Agreement "would be brought . . . whenever those changes would be made" by some future administration); *see also id.* ("I don't understand . . . how that would be ripe currently.").

**II.    Even If the Settlement Agreement Were Reviewable, Plaintiffs' Claims Fail as a Matter of Law.**

**A. <u>Plaintiffs' Argument that the Settlement Agreement Conflicts with the Prior Regulatory Regime Is Not Cognizable.</u>**

Even assuming that Plaintiffs present a ripe challenge to the Settlement Agreement's interaction with the prior regulatory regime,[4] Plaintiffs do not explain *how* the Settlement Agreement would allegedly conflict with the past regulatory regime. The Settlement Agreement does not violate the prior regulations simply because it exercises the government's discretion not to enforce the requirements of those regulations as to certain entities to resolve ongoing litigation brought by those entities. After all, the past regulatory regime imposed obligations on group health plans and health-insurance issuers to provide coverage for contraceptive services, not on the government to take enforcement action. Enforcement discretion "involves a complicated balancing of a number of factors," such as "whether a violation occurred," "whether the agency is likely to succeed if it acts," and "whether the particular enforcement action requested best fits the agency's overall policies." *Heckler*, 470 U.S. at 831. If Plaintiffs were correct that the exercise of such discretion could violate the prior regulations, many non-enforcement agreements would "conflict" with the underlying statute or regulation providing the basis for potential enforcement.

At points, Plaintiffs also suggest that the Settlement Agreement is *procedurally* improper because it was not promulgated pursuant to notice-and-comment rulemaking. *See* Pls.' MTD Opp'n at 23-24 ("And the APA expressly requires agencies to engage in notice-and-comment

---

[4] In their opposition, Plaintiffs tacitly concede that the Settlement Agreement is in harmony with the Rules, which are currently in effect, and explain that their objection to the Settlement Agreement is that it allegedly conflicts with the Agencies' *prior* regulations requiring contraceptive coverage. Pls.' MTD Opp'n at 21-24; *see also* Pls.' MTD Opp'n at 9 n.6. Article III does not permit Plaintiffs to obtain an advisory opinion on whether the Settlement Agreement conflicts with a hypothetical regulatory regime that is not currently in place. *Flast v. Cohen*, 392 U.S. 83, 96 (1968). And Plaintiffs notably identify no precedent supporting the resolution of such a hypothetical question.

5

rulemaking . . . before amending or revoking a notice-and-comment rule."); *see also* Pls.' MTD Opp'n at 3; Pls.' MTD Opp'n at 9. But Plaintiffs' second amended complaint does not allege that the Settlement Agreement violated 5 U.S.C. § 706(2)(D), the section of the APA addressing procedural requirements. *Compare* 2d Am. Compl. ¶¶ 160-171, ECF No. 102 (arguing under the APA that the Settlement Agreement is illegal, and citing 5 U.S.C. § 706(2)(A)-(C)), *with* Compl. ¶¶ 184-92, ECF No. 1 (citing § 706(2)(D) to allege Plaintiffs' original, now-defunct procedural APA challenge to the Rules). Even if Plaintiffs had raised this claim in their second amended complaint, the Settlement Agreement did not "amend[] or revok[e] a notice-and-comment rule," Pls.' MTD Opp'n 24, which is Plaintiffs' theoretical hook for why notice-and-comment rulemaking would be required. Indeed, the Agencies' need to promulgate the Final Rules demonstrates that the Agencies had not amended the prior regime through the Settlement Agreement.

### B. Plaintiffs' Claim Based on the Meese Memo Is Not Cognizable and, in Any Event, the Settlement Agreement Does Not Violate Internal DOJ Guidance.

Plaintiffs' arguments based on DOJ's internal guidance, Pls.' MTD Opp'n 24-26, also fail. Plaintiffs now accept that DOJ's internal guidance does not provide an independent cause of action. Instead, Plaintiffs attempt to recast DOJ's internal guidance as "law" that the Settlement Agreement conflicts with, in violation of the APA. But this argument also fails because DOJ's internal guidance does not carry the force of law and the Settlement Agreement is consistent with it in any event.

Plaintiffs' claim fails at the threshold because DOJ's internal guidance is not binding on the agency or enforceable by private parties. Plaintiffs concede that DOJ's internal guidance does not present an independent cause of action, and argue instead that the Meese and Moss Memos are "controlling authority" on how the government must act and are enforceable through the APA. Pls.' MTD Opp'n at 25 & n.12. But to prevail on such an APA claim, Plaintiffs must still identify

6

a binding source of "law" that the Settlement Agreement is "not in accordance with." 5 U.S.C. § 706(2)(A). As Federal Defendants previously showed and Plaintiffs do not meaningfully challenge, the Meese and Moss Memos do not create binding law for two reasons. First, they merely provide internal guidance to "government attorneys involved in the negotiating of . . . settlements," and thus, their requirements cannot be enforced by private parties. *See Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003) (distinguishing courts' ability to review agencies' compliance with internal agency rules intended to benefit private parties, and those intended solely to benefit the agency[5]). Second, the Meese Memo explicitly authorizes government attorneys to depart from the guidance with written approval of specified DOJ officials. Memorandum from Edwin Meese III, Attorney General to All Assistant Attorneys General and All United States Attorneys at 4 (Meese Memo) (Mar. 13, 1986), *reprinted in* U.S. Dep't of Justice, Office of Legal Pol'y, Guidelines on Constitutional Litigation 150, 152-53 (Feb. 19, 1988)). Plaintiffs' cases noting that agencies can consider DOJ's guidance in rulemakings, or that DOJ guidance represents the executive branch's interpretations of the law, Pls.' MTD Opp'n at 25, are not to the contrary.

A related issue has frequently come up when plaintiffs have sued for access to OLC opinions under the Freedom of Information Act, which requires disclosure of an agency's "working law," or agency documents that "have the force and effect of law." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-53 (1975). Courts of appeals have repeatedly rejected such requests, emphasizing that "[a]n OLC opinion . . . qualifies as the 'working law' of an agency only if the agency has 'adopted' the opinion as its own," *i.e.*, as the basis for the agency's action. *Citizens for Responsibility and Ethics in Washington v. DOJ*, 922 F.3d 480, 486 (D.C. Cir. 2019);

---

[5] Federal Defendants' motion to dismiss inadvertently contained an inaccurate quotation from *Lopez*, Fed. Defs.' MTD at 16-17, although the case stands for the proposition asserted.

7

*see also Electronic Frontier Found. v. DOJ*, 739 F.3d 1, 8 (D.C. Cir. 2014) ("The OLC Opinion . . . amounts to advice offered by OLC" and "is not the law of an agency unless the agency adopts it").

Even if Plaintiffs could overcome this threshold hurdle, their claim would fail on the merits because the Settlement Agreement *complies* with DOJ's internal guidance. Plaintiffs offer no clear explanation of how, precisely, they think the Settlement Agreement violates DOJ's internal guidance. *See* Pls.' MTD Opp'n at 24-25. Plaintiffs note that the guidance recognizes that "the notice and comment requirements of the APA" may "limit the settlement authority of the executive branch." Pls.' MTD Opp'n at 24 (quoting the Moss Memo). But the Moss Memo makes clear that this guidance addresses the entirely separate situation in which the Attorney General is considering a settlement that would "commit[] an agency to follow a [] rulemaking process" other than notice and comment when adopting, proposing, or considering a rule. Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec. Branch Discretion (Moss Memo), 23 Op. OLC 126, 163-64 (June 15, 1999) ("For example, the Act may require the agency to proceed only pursuant to notice and comment rulemaking, thereby precluding the agency from making an enforceable promise to undertake regulatory action through means other than the notice and comment procedure."). The Settlement Agreement here contains no such promise—it does not commit the government to adopt or consider any rule, much less without engaging in notice and comment procedures. Indeed, as *Little Sisters* recognized, the Agencies properly complied with the APA's notice and comment requirements in subsequently adopting the Final Rules. *See Little Sisters*, 140 S. Ct. at 2384-87.

Moreover, while Plaintiffs assert that the "executive branch may not settle on terms that would infringe the constitutional rights of third parties," Pls.' MTD Opp'n at 25 (quoting the Moss Memo), Federal Defendants have not claimed the right to infringe constitutional rights through

8

settlement agreements, and the Settlement Agreement does not violate any constitutional rights. *See infra* Part III.

Finally, to the extent that Plaintiffs are concerned that the Settlement Agreement may bind subsequent administrations in some respects, as Federal Defendants explained in their opening brief and Plaintiffs do not dispute, the Moss Memo makes clear that the Attorney General's congressionally authorized settlement power extends to "a settlement that would bind a subsequent administration's exercise of that same statutorily conferred executive discretion." Moss Memo at 144-45 ("That an agreement of this type would extend beyond the duration of the present administration would not appear to be of independent constitutional significance. . . . The critical point is that such agreements serve to circumscribe and define the enforcement discretion that Congress itself has delegated, not to diminish the executive power that the Constitution has committed to the executive branch.").

    **C.  The Settlement Agreement Does Not Affect Enforcement with Respect to Contraceptive Methods to Which the Plaintiff-Signatories Do Not Object on Religious Grounds, and Does Not Violate the Women's Health Amendment.**

Plaintiffs' second amended complaint argues that "[t]he Settlement Agreement is contrary to law because it" violates the ACA and implementing regulations by allowing the plaintiff-signatories to charge copayments "for contraception that they otherwise cover without objection." 2d Am. Compl. ¶ 167. This is not an accurate description of the Settlement Agreement, as is evident from the Settlement Agreement's plain text. *Contra* Pls.' MTD Opp'n at 31 n.19 ("[T]he scope of the Settlement Agreement remains an open question."). The Settlement Agreement defines "Objectionable Coverage" as FDA-approved contraceptive methods and sterilization procedures "to which Plaintiffs object on religious grounds." Settlement Agreement 1. Then the Settlement Agreement states that the Plaintiffs that are a party to the Settlement Agreement "shall [not] be subject to any penalties or other adverse consequences . . . as a result of their non-

9

compliance with any law or regulation requiring the provision of the Objectionable Coverage."). Settlement Agreement 6. The Settlement Agreement thus contains no provision promising non-enforcement as to the provision of contraceptives to which the plaintiff-signatories do not have religious objections. The scope of the non-enforcement promise in the Settlement Agreement is therefore similar to the scope of the exemption in the Religious Exemption Rule, which applies only to the extent that an entity objects to providing some or all contraceptive coverage on religious grounds, *cf*. Pls.' MTD Opp'n at 28 (describing the scope of the Religious Exemption Rule). The Settlement Agreement thus does not violate the ACA, just as Plaintiffs concede the Religious Exemption Rule does not violate the ACA on this basis.

### III. The Rules and Settlement Agreement Are Consistent With the Establishment Clause.

#### A. The Final Rules and Settlement Agreement Alleviate a Substantial Burden Imposed by the Government on the Exercise of Religious Freedom.

"[T]here is no basis for an argument" that the Rules and Settlement Agreement are inconsistent with the Establishment Clause. *Little Sisters*, 140 S. Ct. at 2396 n.13 (Alito, J., with Gorsuch, J., concurring)). As explained previously, the Rules and Settlement Agreement are consistent with that Clause because they permissibly accommodate the exercise of religion by alleviating significant governmental interference with that exercise, and do not promote or subsidize a religious belief or message. Fed. Defs' MTD at 20-24. Plaintiffs' contrary contention lacks any persuasive force. *See* Pls.' MTD Opp'n at 15-21.

First, Plaintiffs incorrectly contend that Federal Defendants "have no ground to argue that *Little Sisters* somehow altered or diminished" the Court's Establishment Clause analysis. Pls.' MTD Opp'n at 16. The Court's analysis turned on the proposition that the Rules and Settlement Agreement did not alleviate a substantial burden on Notre Dame's exercise of religious beliefs. *Irish 4*, 434 F. Supp. 3d at 708-09. And that proposition, in turn, was based on the Court's

assessment that it "still do[es]n't buy Notre Dame's argument that checking a box on a piece of paper makes it a 'conduit' to providing birth control, in contravention of its religious beliefs." *Id.* at 707. However, *Little Sisters* clarified that the Agencies—and courts—"must accept the sincerely held complicity-based objections of religious entities" and may not "tell [a] plaintiff that [its] beliefs are flawed" because in their view "the connection between what the objecting parties must do . . . and the end that they find to be morally wrong is simply too attenuated." 140 S. Ct. at 2383 (citation and internal punctuation omitted); *see also id.* (explaining that the Agencies must " "accommodate the free exercise rights of those with complicity-based objections to the self-certification accommodation.") (citation and internal punctuation omitted). Thus, contrary to Plaintiffs' contention, *Little Sisters* directly undermined the central pillar of the Court's Establishment Clause analysis.

Second, Plaintiffs' argument that *Little Sisters* did not decide whether the accommodation substantially burdened religious exercise, Pls.' MTD Opp. at 16-18, ignores the fact that *Hobby Lobby* resolved that issue, determining that the identical penalty faced here by Notre Dame constitutes a substantial burden. *Hobby Lobby* held that the contraceptive-coverage mandate, standing alone, "imposes a substantial burden" on objecting employers, and made clear that RFRA requires the government to eliminate the substantial burden imposed by the contraceptive-coverage mandate. 573 U.S. at 726. The Supreme Court "left it to the Federal Government to develop and implement a solution" to this problem. *Little Sisters*, 140 S. Ct. at 2383.

For the same reason, Plaintiffs miss the mark in observing that whether the burden imposed by the mandate "qualifies as 'substantial'" in light of the existence of the accommodation is "an objective question of law to be determined by the courts." Pls.' MTD Opp'n at 17. The substantial burden results from the significant financial penalty imposed for failure to comply with the mandate or accommodation. That is the same penalty the plaintiffs faced in *Hobby Lobby*, where

11

the Court had "little trouble" concluding that the mandate imposed a substantial burden. 573 U.S. at 719; *see also Priests for Life v. HHS*, 808 F.3d 1, 16 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from denial of rehearing en banc). Religious entities whose religious-based complicity objections are not alleviated by the accommodation are thus subject to a burden the Supreme Court has already held to be substantial.

The expanded religious exemption is a permissible—and in the case of some objecting employers like Notre Dame, required—means of "promulgat[ing] rules consistent with these decisions." *Little Sisters*, 140 S. Ct. at 2383. As the Agencies have explained, "[v]arious entities", including Notre Dame, "sincerely contended, in litigation or in public comments, that complying with either the Mandate or the accommodation was inconsistent with their religious observance or practice." 83 Fed. Reg. at 57,546. In light of those sincere religious beliefs, forcing objecting employers to use the accommodation plainly imposes a substantial burden under *Hobby Lobby*. *See Sharpe Holdings, Inc. v. HHS*, 801 F.3d 927, 939-43 (8th Cir. 2015), *vacated and remanded sub nom. HHS v. CNS Int'l Ministries*, 136 S. Ct. 2006 (2016) (mem.); *Priests for Life*, 808 F.3d at 16-21 (Kavanaugh, J., dissenting from denial of rehearing en banc). The Agencies thus correctly "concluded that withholding an exemption from those entities has imposed a substantial burden on their exercise of religion, either by compelling an act inconsistent with that observance or practice, or by substantially pressuring the adherents to modify such observance or practice." 83 Fed. Reg. at 57,546; *see also Little Sisters*, 140 S. Ct. at 2378 (noting that the Agencies "concluded that it was appropriate to expand the exemption to other organizations with sincerely held religious beliefs opposed to contraceptive coverage" (citation and internal punctuation omitted)).

In sum, Plaintiffs' contention that the Rules and Settlement Agreement do not alleviate a substantial burden on the exercise of religion is simply incorrect. As the Supreme Court has recognized, there is "room for play in the joints" when the government acts to accommodate

12

religious exercise. *Walz v. Tax Comm'n*, 397 U.S. 664, 673 (1970); *see also Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005); *Corp. of the Pres. Bishop of the Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334-35 (1987). Here, the Rules and Settlement Agreement permissibly accommodate religious beliefs and moral convictions consistent with the Establishment Clause. And because the Rules do not violate that Clause, Plaintiffs' argument that RFRA cannot authorize an unconstitutional policy is beside the point. Pls.' MTD Opp'n at 20-21. The Agencies reasonably decided to adopt the religious exemption to satisfy their RFRA obligation to eliminate the substantial burden that the mandate imposes on objecting employers, *Hobby Lobby*, 573 U.S. at 725-26.

### B. The Rules and Settlement Agreement Do Not Impermissibly Burden Third Parties.

Plaintiffs also incorrectly contend that the Rules and Settlement Agreement unduly burden third parties in violation of the Establishment Clause. Pls.' MTD Opp'n at 18-20. Calling the *loss* of compelled contraceptive coverage a government burden rests on the "incorrect presumption" that "the government has an obligation to force private parties to benefit [ ] third parties and that the third parties have a right to those benefits." 83 Fed. Reg. at 57,549. Before the contraceptive-coverage mandate, women had no entitlement to contraceptive coverage without cost sharing through their health plans. And the agencies have no statutory obligation to maintain the mandate. It does not "burden" affected women that the same agencies that created and enforce the mandate also created a limited exemption to accommodate sincere religious objections, because they are no worse off than before the agencies first chose to act. *Cf. Amos*, 483 U.S. at 330-38 & n.15 (holding that Title VII's religious exemption permitting religious discrimination in employment was consistent with the Establishment Clause despite allowing the employer to terminate a third party because "it was the Church . . . , and not the Government, who put him to the choice of changing his religious practices or losing his job"). A contrary conclusion would mean that the longstanding

13

exemption for churches and their integrated auxiliaries is inconsistent with the Establishment Clause—a position that Plaintiffs have declined to advance.

Moreover, Plaintiffs err in relying on cases such as *Estate of Thornton v. Caldor*, 472 U.S. 703, 710 (1985). The problem with the statute at issue in *Caldor* was not that it imposed a burden on other employees, but that it intruded on private relationships to favor religious individuals by imposing on employers an "absolute duty" to allow employees to be excused from work on "the Sabbath [day] the employee unilaterally designate[d]." *Id*. at 709. Here, far from taking sides in an otherwise-private dispute between religious employees and their employers, the government has simply lifted a burden on religious employers that the government itself imposed, *see Amos*, 483 U.S. at 338, and, moreover, has done so only after determining that the burden is not narrowly tailored to achieve any compelling governmental interest. The lifting of a *government-imposed* burden on religious exercise is permitted under the accommodation doctrine referenced in *Amos*. *See Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 18 n.8 (1989) (plurality opinion).

The Establishment Clause analysis is not altered by the fact that the Rules and Settlement Agreement postdated the effective date of the contraceptive-coverage mandate. Pls.' MTD Opp'n at 19-20. It remains the case that prior to the imposition of that mandate, women were not entitled to receive contraceptive coverage without cost sharing through their health plans. And because Plaintiffs have not raised a due process claim or free speech claim here, their arguments based on cases such as *Goldberg v. Kelly*, 397 U.S. 254 (1970), and *Agency for International Development v. Alliance for Open Society*, 570 U.S. 205 (2013), are inapposite as the scope of different constitutional rights is not interchangeable.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts I, II, and IV of Plaintiffs' second amended complaint, as well as Count III to the extent it alleges a violation of the Establishment Clause.


Dated: November 5, 2020                             Respectfully submitted,


                                                         JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

/s/ Rebecca M. Kopplin
REBECCA M. KOPPLIN
Trial Attorney (California Bar No. 313970)
JUSTIN M. SANDBERG
Senior Trial Counsel
MICHAEL GERARDI
CHRISTOPHER R. HEALY
DANIEL RIESS
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Telephone:  (202) 514-3953
Facsimile:  (202) 616-8470
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Reply Supporting Federal Defendants' Motion to Dismiss Second Amended Complaint was served on counsel for all parties using the Court's CM/ECF system on November 5, 2020.

*/s/ Rebecca M. Kopplin*
REBECCA M. KOPPLIN
*Counsel for Federal Defendants*
