# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| IRISH 4 REPRODUCTIVE HEALTH, *et al.*, | ) ) ) |
| Plaintiffs | ) ) ) |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) ) |
| Defendants. | ) |

Case No. 3:18-cv-491-PPS-JEM

Judge Philip Simon

## REPLY IN SUPPORT OF
## DEFENDANT UNIVERSITY OF NOTRE DAME'S MOTION TO DISMISS
## <u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

Matthew A Kairis
JONES DAY
325 John H McConnell Blvd
 Suite 600
Columbus, OH 43216
(614) 281-3605
makairis@jonesday.com

*Counsel for Defendant*
*University of Notre Dame*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.    *LITTLE SISTERS* MAKES PLAINTIFFS' ATTACK ON THE SETTLEMENT
AGREEMENT PREMATURE....................................................................................... 1

II.   *LITTLE SISTERS* DEMONSTRATES THAT THE GOVERNMENT'S
DECISION NOT TO ENFORCE THE MANDATE AGAINST NOTRE
DAME IS NOT JUDICIALLY REVIEWABLE.................................................................. 3

III.  *LITTLE SISTERS* SHOWS THAT THE SETTLEMENT IS NOT ILLEGAL..................... 5

    A.    The Settlement Does Not Violate Any Constitutional Command ............................... 5

    B.    The Settlement Does Not Violate Any Statutory or Regulatory Authority ................. 8

         1.    The Settlement Is Both Authorized and Required by RFRA.............................. 9

         2.    Plaintiffs' Remaining Allegations of Illegality Are Without Merit.................. 12

CONCLUSION.......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014)..........................................................................1, 8, 10, 11

*Cnty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*,
492 U.S. 573 (1989)............................................................................................5

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
483 U.S. 327 (1987)............................................................................................9

*ERISA Indus. Comm. v. City of Seattle*,
No. 2:18-cv-01188, 2018 WL 4237773 (W.D. Wash. Sept. 6, 2018) ....................15

*Gillette v. United States*,
401 U.S. 437 (1971)..........................................................................................10

*Heckler v. Chaney*,
470 U.S. 821 (1985)....................................................................................3, 4, 5

*Irish 4 Reprod. Health v. U.S. Dep't of Health & Human Servs.*,
434 F. Supp. 3d 683 (N.D. Ind. 2020) ..........................................................2, 3, 4

*Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*,
493 U.S. 378 (1990)............................................................................................7

*Jones v. Carter*,
915 F.3d 1147 (7th Cir. 2019) ..........................................................................11

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
140 S. Ct. 2367 (2020)............................................................................... *passim*

*Locke v. Davey*,
540 U.S. 712 (2004)............................................................................................7

*Northlake Cmty. Hosp. v. United States*,
654 F.2d 1234 (7th Cir. 1981) ............................................................................6

*Priests for Life v. U.S. Dep't of Health & Human Servs.*,
808 F.3d 1 (D.C. Cir. 2015)..........................................................................10, 11

*Reich v. Continental Cas. Co.*,
33 F.3d 754 (7th Cir. 1994) ................................................................................6

*Texas v. United States*,
523 U.S. 296 (1998)............................................................................................3

*Topanga Press, Inc. v. City of Los Angeles*,
409 F. Supp. 2d 1188 (C.D. Cal. 2005) ..............................................................15

*Walz v. Tax Comm'n of City of N.Y.*,
397 U.S. 664 (1970)............................................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Williams v. City of Atlanta*,
   No. 1:17-cv-1943-AT, 2018 WL 2284374 (N.D. Ga. Mar. 30, 2018) ....................................15

*Zubik v. Burwell*,
   136 S. Ct. 1557 (2016).........................................................................................................1, 6, 9

**STATUTES**

42 U.S.C. § 300gg-13 .......................................................................................................5, 14

**OTHER AUTHORITIES**

78 Fed. Reg. 39,870 (July 2, 2013)...............................................................................12

83 Fed. Reg. 57, 536 (Nov. 15, 2018)...........................................................................13, 14

Frequently Asked Questions About Contraceptive Coverage,
   https://uhs.nd.edu/insurance-billing/insurance-faqs/faqs-regarding-
   contraceptive-coverage/ ........................................................................................14

Rev. John I. Jenkins, C.S.C., Letter on Health Care Coverage (Feb. 7, 2018).............................14

## INTRODUCTION

According to Plaintiffs, the Supreme Court's decision in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), should have no further bearing on this litigation. The Court's decision to lift prior injunctions against the Expanded Exemption and hold that the Government has "virtually unbridled discretion" to excuse employers from the Mandate? *Id.* at 2380, 2383. Apparently irrelevant. Pls. Br. 7–15, 21–31. The reality that the Government was directed to "accommodat[e]" religious objections like Notre Dame's? 140 S. Ct. at 2383, 2386. Not worth discussing. Pls. Br. 15–20. Two Justices rejecting Plaintiffs' centerpiece Establishment Clause claim and explaining why RFRA not only authorizes but requires an exemption for complicity-based objections to the Mandate and the Accommodation? 140 S. Ct. at 2389–96 & n.13 (Alito, J., concurring). A mere "distract[ion]." Pls. Br. 3.

Notre Dame does not take the Supreme Court's pronouncements so lightly. Plaintiffs may believe that if that Court faced yet another opportunity to compel compliance with the Mandate, the fourth time would be the charm. *Contra Little Sisters*, 140 S. Ct. 2367; *Zubik v. Burwell*, 136 S. Ct. 1557 (2016); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). But it does not take much insight to see the writing on the wall. Plaintiffs' case rests on the premise that the same Court that praised the Government for exempting religious objectors like Notre Dame, 140 S. Ct. at 2386 (maj. op.), will condemn a Settlement offering similar relief. That beggars belief. Accordingly, this Court should grant the University's motion to dismiss.

## ARGUMENT

### I.     *LITTLE SISTERS* MAKES PLAINTIFFS' ATTACK ON THE SETTLEMENT AGREEMENT PREMATURE

As Notre Dame explained, Plaintiffs' challenge to the Settlement is unripe because *Little Sisters* lifted the injunctions against the Expanded Exemption. Because that Exemption

independently excuses Notre Dame from compliance with the Mandate, the legality of the Settlement is now a moot point. ND Br. 6–7. Plaintiffs' counterarguments are unpersuasive.

*First*, citing language from this Court's decision, Plaintiffs insist they are being injured by the Settlement *right now*. Pls. Br. 13–14. However colorable that claim may have been while the Expanded Exemption was enjoined, it has no merit now. Under that Exemption, Notre Dame is excused from compliance with the Mandate *by operation of law*. Thus, whatever authority the University initially invoked to "'refus[e] to provide contraceptive[s],'" Pls. Br. 13, the fact remains that wholly apart from the Settlement, Notre Dame has no obligation to provide—and Plaintiffs have no entitlement to receive—cost-free contraceptive coverage. Plaintiffs do not—doubtless because they cannot—explain how they are currently being injured by the provisions of a non-enforcement agreement when there is no underlying obligation for the Government to enforce.

*Second*, Plaintiffs claim that deferring the Settlement challenge would subject them to a "'house of mirrors'" in which "Notre Dame argue[s] that the [Expanded Exemption] rendered the challenge to the Settlement Agreement nonjusticiable and Federal Defendants argue[] the reverse." Pls. Br. 14 (citation omitted). But there is no house of mirrors. This Court has already held that Plaintiffs have standing to challenge the Expanded Exemption, *Irish 4 Reprod. Health v. U.S. Dep't of Health & Human Servs.*, 434 F. Supp. 3d 683, at 699–700 (N.D. Ind. 2020), and the Government has not argued that *Little Sisters* changes that. Notre Dame, on the other hand, has explained how the Supreme Court's decision fundamentally alters this Court's ripeness analysis. *See* ND Br. 6–7. Therefore, nothing prevents this Court from exercising its discretion to dismiss the challenge to the Settlement while allowing Plaintiffs' remaining claims to proceed.

*Finally*, Plaintiffs give up the game when they note the Expanded Exemption "remain[s] subject to legal challenge" and "*may* well be enjoined or vacated again." Pls. Br. 14, 9 n.6

– 2 –

(emphasis added). Of course, "that may not occur," and Plaintiffs' reliance on the speculative possibility that it will shows that their claim rests on precisely the sort of "contingent future events" that should prompt this Court to stay its hand. *Texas v. United States*, 523 U.S. 296, 300 (1998).

## II. *LITTLE SISTERS* DEMONSTRATES THAT THE GOVERNMENT'S DECISION NOT TO ENFORCE THE MANDATE AGAINST NOTRE DAME IS NOT JUDICIALLY REVIEWABLE

In its prior brief, Notre Dame explained that *Little Sister*s requires this Court to reconsider its conclusion that the Settlement is judicially reviewable. That conclusion was premised on the claim that the Settlement "'amount[s] to an abdication of [Federal Defendants'] statutory responsibilities' under the [Affordable Care Act (ACA)]." 434 F. Supp. 3d at 698. *Little Sisters*, however, demonstrates that those "statutory responsibilities" are hardly absolute. To the contrary, the ACA gives the Government "virtually unbridled discretion" to craft exemptions from the Mandate. 140 S. Ct. at 2306. Accordingly, far from "abdicating" its responsibility to enforce a legislative directive, the Government was acting well within its authority when it decided not to enforce the Mandate against Notre Dame and its fellow litigants. ND Br. 7–9.

Plaintiffs now take issue with the claim that the reviewability of the Settlement is in any way dependent on whether the ACA mandates contraceptive coverage. Pls. Br. 8. That was certainly not their position during briefing on the initial motions to dismiss. Then, Plaintiffs argued the Settlement was reviewable because *Heckler v. Chaney*, 470 U.S. 821 (1985) does not "permit federal agencies to usurp *legislative power* by adopting a general policy authorizing ongoing violations of *statutes* that they administer, *which is precisely what Federal Defendants have attempted to do*." Pls. Initial Opp'n 17 (Mar. 19, 2019) (Dkt. 61) (emphases added). Indeed, their filing was littered with references to a purported "statutory" obligation to enforce the Mandate against Notre Dame. *E.g.*, *id.* 1, 2, 18, 19, 20. Not surprisingly, therefore, this Court's analysis

– 3 –

focused on Plaintiffs' allegations that the Government had adopted "a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." 434 F. Supp. 3d at 697.

And for good reason. The *Heckler* question is one of *authority*—specifically, the authority bestowed upon agencies *by congressional act*.  Ultimately, "whether an agency's refusal to institute proceedings should be judicially reviewable" is "le[ft] *to Congress*, and not to the courts." *Heckler*, 470 U.S. at 838 (emphasis added). If *Congress* has "committed" enforcement decisions "to an agency's absolute discretion," then they are "presumed immune from judicial review." *Id.* at 831–32. Conversely, "*Congress* may limit an agency's exercise of enforcement power if it wishes," and an agency's decisions that "disregard *legislative* direction in the statutory scheme [it] administers" are typically reviewable. *Id.* at 833 (emphasis added); *id.* at 833 n.4 (looking to "the *statute* conferring authority on the agency" to assess whether a decision was "committed to agency discretion" (emphasis added)). In short, "[i]f [*Congress*] has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is 'law to apply' . . . and courts may require that the agency follow that law; if it has not, then an agency refusal to institute proceedings is [an unreviewable] decision 'committed to agency discretion by law.'" *Id.* at 834–35; *id.* at 838 (non-enforcement decisions not reviewable "unless *Congress* has indicated otherwise" (emphasis added)).

Plaintiffs' newfound emphasis on the Settlement's purported incongruity with Obama-era regulations is thus beside the point. Pls. Br. 8–11. For starters, those regulations *are not in force*, so there is no "responsibility" of any sort for the Government to "abdicate." *See supra* pp. 1–3. Plaintiffs cite no authority for the proposition that an agency's commitment not to enforce superseded regulations with no legal effect is somehow reviewable. More fundamentally, the ultimate question is whether *Congress* has conferred "absolute discretion" upon the Federal

Defendants with regard to the implementation of 42 U.S.C. § 300gg-13(a)(iv). *Heckler*, 470 U.S. at 831–32. *Little Sisters* confirms that it did. 140 S. Ct. at 2386. "Congress *could* have limited [the agencies'] discretion in any number of ways, but it chose not to do so." *Id.* at 2380 (emphasis added). "Instead, it enacted 'expansive language offer[ing] no indication whatever' that the statute limits" the Federal Defendants' authority to create exemptions. *Id.* That those agencies previously chose to exercise that discretion to require even religious objectors to facilitate access to contraceptive coverage is of no moment: the question is what they possess the *statutory* authority to do. And it cannot seriously be contended that agencies with "virtually unbridled discretion" to excuse whole categories of employers from the Mandate, *id.* at 2380, 2383, somehow lack authority not to enforce the Mandate against Notre Dame.

Therefore, while Notre Dame continues to believe this Court's previous *Heckler* analysis was erroneous, even under that rubric, the most that remains for this Court to review is Plaintiffs' Establishment Clause claim, ND Br. 9, which fails for the reasons outlined below

## III.   *LITTLE SISTERS* SHOWS THAT THE SETTLEMENT IS NOT ILLEGAL

Even if the Settlement were reviewable, *Little Sisters* makes clear that it is not unlawful.

### A.   The Settlement Does Not Violate Any Constitutional Command

*Little Sisters* shows that there is "no basis" for the argument that the Settlement violates the Establishment Clause. 140 S. Ct. at 2396 n.13 (Alito, J., concurring). Far from preferencing religion, the Settlement—like the Expanded Exemption at issue in *Little Sisters—avoids burdening* religion by relieving Notre Dame "from the source of [its] complicity-based concerns." *Id.* at 2386 (maj. op.). And by definition, government action that lifts a burden on religious exercise does not violate the Establishment Clause. *Cnty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 613 n.59 (1989); ND Br. 9–13.

– 5 –

In response, Plaintiffs make much of the fact that *Little Sisters* "d[id] not even address constitutional claims"—as if that were all to be said on the matter. Pls. Br. 15–16. But of course, a Supreme Court opinion can be relevant to an issue it did not squarely decide. *See Reich v. Continental Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994) (stating that considered Supreme Court dicta "provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it"); *Northlake Cmty. Hosp. v. United States*, 654 F.2d 1234, 1242 (7th Cir. 1981) (relying on the Supreme Court's non-binding observation to conclude that a plaintiff's claim "does not rise even to the level of a colorable constitutional claim"). That is particularly so here, where this Court's Establishment Clause analysis rested on the view that enforcing the Accommodation against religious objectors does not burden religious exercise. That question *was* addressed in *Little Sisters*—both by the majority and by two Justices in concurrence. *See* ND. Br. 9–12. As to the latter, Plaintiffs accuse Defendants of attempting to "muddy the waters based on a two-Justice concurrence." Pls. Br. 2. This Court, of course, is entitled to make what it will of non-binding concurring opinions. But Notre Dame submits that the willingness of (at least) two Justices to dismiss Plaintiffs' flagship claim out of hand should bear on this Court's analysis.[1]

As to the former, Plaintiffs say that the Supreme Court has "never held" that the Accommodation burdens the exercise of religion. Pls. Br. 16. "Not in *Little Sisters*. Not ever." *Id.* But if that were true, then what did the Court direct the Government to "'accommodate'" in *Zubik*? *Little Sisters*, 140 S. Ct. at 2383, 2381 n.7 (quoting *Zubik*, 136 S. Ct. at 1560). And why did it describe the Little Sisters' challenge to the Accommodation as a "fight for the ability to continue in their noble work *without violating their sincerely held religious beliefs*"? *Id.* at 2386 (emphasis

---

[1] Plaintiffs themselves have no aversion to citing opinions issued by less than a majority of the Court when it serves their purposes. *E.g.*, Pls. Br. 9, 10, 11, 17, 19, 20, 22.

added). Plaintiffs do not even attempt to answer these questions, presumably because the conclusion is inescapable: the Accommodation "'forc[es claimants] to engage in conduct that their religion forbids'"—by Plaintiffs' own admission, the textbook example of a "legally cognizable burden on religious exercise." Pls. Initial Opp'n 32.

Instead, Plaintiffs spill a great deal of ink attempting to show that the Accommodation does not impose a "substantial" burden on religious exercise. *See* Pls. Br. 16–18. But the Supreme Court has never held that a burden must be "substantial" before it can be lifted without running afoul of the Establishment Clause. To the contrary, it has expressly held that the Government may craft exemptions from laws that burden religious adherents—*even if those burdens would not be substantial* under RFRA or the Free Exercise Clause. *Compare Walz v. Tax Comm'n of City of N.Y.*, 397 U.S. 664, 673–76 (1970) (upholding, against an Establishment Clause challenge, a state-law exemption from a general property tax that "spar[ed] the exercise of religion from the burden of property taxation levied on private profit institutions"), *with Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 378, 384, 391–92 (1990) (concluding that a general sales tax did not impose a substantial burden necessitating an exemption for religious materials). In other words, "there is room for play in the joints" between what the Establishment Clause "permit[s]" and the Free Exercise Clause (or RFRA) "require[s]." *Locke v. Davey*, 540 U.S. 712, 718–19 (2004); *Walz*, 397 U.S. at 673 ("[T]he limits of permissible state accommodation to religion are by no means co-extensive with the noninterference mandated by the Free Exercise Clause.").

Notre Dame thus has no obligation to show that the burden imposed by the Accommodation is "substantial" (though it is, *infra* pp. 10–12) before the Government can, consistent with the Establishment Clause, lift that burden. And as Notre Dame has detailed, the Accommodation plainly burdens the University's exercise of religion. ND. Br. 11–12.

Plaintiffs also insist that *Little Sisters* "changes no[thing]" about this Court's conclusion that the Settlement impermissibly burdens third parties by denying them access to contraceptive coverage through the University's health plans. Pls. Br. 19. But of course, *Little Sisters* confirmed that the ACA creates no right to such coverage. ND Br. 12–13. Plaintiffs now claim that the burden arises from the denial of benefits to which they were entitled under the old regulations. Pls. Br. 19–20. But this ignores the commonsense distinction between imposing a burden and declining to provide a benefit. In fact, the Supreme Court has rejected any view of government-mandated benefits as a one-way ratchet that, once extended, can never be rescinded. *Hobby Lobby*, 573 U.S. at 729 n.37. Were it otherwise, the Government could force religious objectors to provide all manner of free goods and services—and any request for an exemption from such a mandate could be denied on the grounds that it would "burden" third parties. *See id.*

In any event, the Supreme Court has never said an exemption violates the Establishment Clause merely because it could be said to impose some burden—however slight—on a third party. *See id.* (requiring courts to "'take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries'" (citation omitted)). And as Justice Alito noted, the "burden" on Plaintiffs here could be described as the "[in]convenience" of not having cost-free contraceptive coverage provided through "their general health insurance plans" at a religious University where they chose to work or study. 140 S. Ct. at 2393–94 (Alito, J., concurring). Given the alternative ways they can access the same or similar coverage, *see id.*, this alleged burden does not rise to the level of an Establishment Clause violation.

### B.   The Settlement Does Not Violate Any Statutory or Regulatory Authority

A fair reading of the various opinions in *Little Sisters* further indicates that RFRA both authorizes and requires an exemption for entities with complicity-based objections to the Mandate. But even if RFRA does not apply, Plaintiffs' allegations of illegality fail on their own terms.

### 1.   The Settlement Is Both Authorized and Required by RFRA

**(a)**    Plaintiffs miss the mark in responding to Notre Dame's argument that RFRA *authorizes* the Settlement. ND Br. 13–14. The question is not whether the Government's views on the substantial-burden issue are "entitled to deference." Pls. Br. 17, 21. The point is that the Supreme Court has *already* "held" that the mandate violates RFRA "as applied to religious entities" like Notre Dame "with complicity-based objections." 140 S. Ct. at 2384. As a result, it was "left . . . to the [Government] to decide how best to rectify this problem," *id.* at 2395 (Alito, J., concurring). And here, the Government chose to "rectify" that RFRA violation by declining to enforce the Accommodation against certain litigants who brought complicity-based RFRA claims. As Justice Alito explained, this was well within the range of permissible alternatives. *See* ND Br. 13–14. Nothing *required* the Government to adopt the Accommodation, much less enforce it.

Plaintiffs' only response is that the Government's non-enforcement decisions cannot violate the Constitution. Pls. Br. 20. This is of course true, but Notre Dame has already explained why the Settlement does not violate the Establishment Clause. *See supra* pp. 5–8. But as Plaintiffs repeatedly return to this point, it is worth emphasizing the truly radical and unprecedented nature of their claim. The Supreme Court has *never* held that an exemption authorized under RFRA violates the Establishment Clause—much less a non-enforcement decision made to settle a RFRA claim. Indeed, Notre Dame is aware of no court that has ever so held.[2] To the contrary, the Supreme Court has consistently upheld provisions that exempt religious objectors from generally applicable laws—even in cases where those exemptions impose severe burdens on third parties. *E.g.*, *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 330

---

[2] Pointedly, the prior administration made no attempt to convince the Supreme Court that a RFRA exemption from the Accommodation would somehow violate the Establishment Clause. *See* Respondents Br., *Zubik*, 136 S. Ct. 1557 (No. 14-1418), 2016 WL 537623.

(1987) (Title VII exemption allowing religious employers to discriminate against employees on the basis of religion); *Gillette v. United States*, 401 U.S. 437 (1971) (draft exemption for conscientious objectors, requiring others to fight in their place). If exemptions that allow other individuals to be fired from their jobs or *drafted into combat* do not violate the Establishment Clause, it strains credulity to suggest that the circumstances of this case could justify striking down a RFRA exemption for the first time ever.

**(b)**     As for the argument that RFRA requires an exemption, ND Br. 14–19, Plaintiffs pin their hopes on the assertion that the Mandate, as modified by the Accommodation, does not substantially burden religious exercise, Pls. Br. 16–18, 20–21. Rather than engage Justice Alito's opinion explaining why it does exactly that, they dismiss his analysis as wishful thinking. To be sure, one could describe the opinion of Justices Alito and Gorsuch as addressing "issues [they] . . . wished . . . the Supreme Court [had] consider[ed]." Pls. Br. 21. But one could just as easily read that opinion as a preview of what is to come were the Court required to reach the RFRA question. *See* 140 S. Ct. at 2382 (concluding that the Court "need not reach" RFRA after "holding that the ACA provided a basis for both exemptions"). After all, the fact that other Justices did not join the concurrence does not imply that they disagree with its analysis. *E.g.*, *Priests for Life v. U.S. Dep't of Health & Human Servs.*, 808 F.3d 1, 16–19 (D.C. Cir. 2015) (Kavanaugh, J., dissenting) (concluding that the Accommodation imposes a substantial burden).

In any event, Plaintiffs repeat their refrain that "'the decision about whether an alleged burden is substantial is a legal question.'" Pls. Br. 17 (citation omitted). And they are of course correct. But courts are to answer that question through application of the two-part test set forth in *Hobby Lobby* and applied by Justice Alito in *Little Sisters*. 140 S. Ct. at 2389 (Alito, J., concurring) (requiring courts to ask first whether "compliance" with the Mandate—through the

Accommodation or otherwise—would "cause the objecting party to violate its religious beliefs, as it sincerely understands them," and then to determine whether "non-compliance [would] have substantial adverse practical consequences" (citing *Hobby Lobby*, 573 U.S. at 720-26)); *Priests for Life*, 808 F.3d at 16–19 (Kavanaugh, J., dissenting) (applying the same test). In other words, as the Seventh Circuit has confirmed, if the objector's religious beliefs are sincere, the *legal* question for courts is limited to whether the "severity" of the consequences for noncompliance would be "substantial." *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019) (Wood, J.).

Here, not even Plaintiffs dispute that Notre Dame would incur "substantial" penalties for refusing to comply with the Accommodation. *See* ND Br. 16. Instead, they baldly assert "that it is no substantial burden as a legal matter to 'hav[e] to give . . . notice' to avail oneself of a regulatory religious opt-out." Pls. Br. 18. As an initial matter, as Notre Dame (and Justice Alito) previously explained, the Accommodation is not an opt out, and Plaintiffs' statement mischaracterizes the nature of the University's religious objection. ND Br. 15–16. More fundamentally, Plaintiffs offer no explanation as to why this ipse dixit is correct. Without the "notice" Plaintiffs so readily dismiss, Notre Dame's "plan[s] could not be used to provide contraceptive coverage." 140 S. Ct. at 2390-91 (Alito, J., concurring). Notre Dame thus understandably believes that submitting the notice makes it complicit in the provision of objectionable coverage. This Court may think otherwise, but it cannot second-guess the University's sincerely held beliefs. *Id.* at 2383 (maj. op.) (stating that courts "must accept the sincerely held complicity-based objections of religious entities"); *Priests for Life*, 808 F.3d at 17 (Kavanaugh, J., dissenting) ("But what if the religious organizations are misguided in thinking that this scheme—in which the form is part of the process by which the

– 11 –

Government ensures contraceptive coverage—makes them complicit in facilitating contraception or abortion? That is not our call to make under the first prong of RFRA.").[3]

Ultimately, "[t]he inescapable bottom line is that the accommodation demand[s] that [Notre Dame] engage in conduct that [is] a necessary cause of the ultimate conduct to which [it] ha[s] [a] strong religious objection[]" on pain of substantial penalties. 140 S. Ct. at 2391 (Alito, J., concurring). That is the very definition of a substantial burden. Because Plaintiffs do not—and cannot—claim the Accommodation satisfies strict scrutiny, ND Br. 17, RFRA requires an exemption for Notre Dame.

### 2.      Plaintiffs' Remaining Allegations of Illegality Are Without Merit

**(a)**      Plaintiffs maintain that the Settlement is "inconsistent with DOJ's long-standing interpretation of the APA and its limitations on the government's discretion to enter into settlement agreements." Pls. Br. 24. As Notre Dame explained, such claims are without merit. ND Br. 19–21. Plaintiffs' selective citation to assorted agency memoranda in response is unpersuasive.

*First*, Plaintiffs emphasize that the "'the terms of any settlement limiting the otherwise discretionary regulatory authority of an executive branch agency [must] conform to the terms of [the Administrative Procedure Act.]" Pls. Br. 25 (citation omitted)). The Settlement, however, neither requires the Government to issue regulations, nor precludes it from doing so. It merely states that the Government will "treat" Notre Dame "as exempt," in that it will not "enforce[]" the Mandate against "[the University] or [its] health plans." Settlement ¶¶ 1–2 (Dkt. 1-1).

*Second*, Plaintiffs note that the Government "may not settle on terms that would infringe the constitutional rights of third parties" and that its settlement authority may likewise be limited

---

[3] Plaintiffs are also wrong to say that provision of notice "is the bare minimum that objectors must do for the government to retain lawmaking authority." Pls. Br. 18. No notice was required under the original Church Exemption. 78 Fed. Reg. 39,870, 39,896 (July 2, 2013).

by "statutory provisions that protect the interests of third parties." Pls. Br. 25 (citation omitted). As *Little Sisters* makes plain, no such statutory provisions are at issue in this litigation. ND Br. 8–9, 12. And as outlined above, no third-party constitutional rights are infringed. *See supra* p. 8.

*Finally*, as the Settlement does not violate the agency memoranda cited by Plaintiffs, questions of whether those documents are judicially enforceable or reflect a "correct interpretation of the law" are academic. Pls. Br. 25 & n.12. Regardless, Plaintiffs cannot have it both ways. Though they deny any claim that "the Meese and Moss Memos are independently 'cognizable,'" they nonetheless insist they are "controlling authority that binds the government." *Id.* As Notre Dame and the Government have explained, that is incorrect. ND Br. 20; Gov't Br. 16–17.

**(b)**   Plaintiffs continue to assert that the Settlement violates the ACA by allowing Notre Dame to cover some contraceptives in its health plan while charging co-payments. Pls. Br. 26–31. Notably, Plaintiffs do not dispute that this argument does not provide grounds to invalidate the Settlement, but only to construe it in a lawful fashion (a construction that, ironically, would provide them with *reduced* access to contraceptives). ND Br. 23. Regardless, their contentions are flawed.

As an initial matter, Plaintiffs misunderstand how both the Expanded Exemption and the Settlement operate. It is undisputed that "compliance with the Mandate or the Accommodation would violate [Notre Dame's] religious beliefs," because in that case, "the University's plan beneficiaries would consequently receive the full range of FDA-approved contraceptives without cost-sharing." ND Br. 21–22. In other words, Notre Dame continues to "object[], based on its sincerely held religious beliefs, to its establishing, maintaining, providing, offering, or arranging for . . . [c]overage or payments for . . . all contraceptive services." 83 Fed. Reg. 57, 536, 57,590 (Nov. 15, 2018). Under either the Expanded Exemption or the Settlement, that qualifies the University for a full exemption from the Mandate. *See id.*; Settlement ¶ 1. At that point, Notre

– 13 –

Dame is under no legal obligation to provide any contraceptive coverage whatsoever. And if there is no obligation to "provide coverage" for contraceptives, there can be no obligation to provide it without "cost sharing." 42 U.S.C. § 300gg-13(a). After all, the University can hardly be required to provide cost-free a service *it does not have to offer in the first place*.

Plaintiffs appear to believe that because Notre Dame—in their words—"*willingly covers*" certain forms of contraception, it objects only to "some . . . contraceptive services." 83 Fed. Reg. at 57,590. Not so. As documents incorporated into Plaintiffs' Second Amended Complaint make plain, Pls. Br. 29 nn.16, 17. Notre Dame continues to believe the use of *any* "artificial contraceptives to prevent conception is contrary to Catholic teaching." Rev. John I. Jenkins, C.S.C., Letter on Health Care Coverage (Feb. 7, 2018), https://president.nd.edu/homilies-writings-addresses/letter-on-health-care-coverage/ ("Jenkins Letter"). And Notre Dame has not "willingly" provided anything. Rather, the University initially "provide[d] the challenged drugs and services" only after it was "compelled" to do so by "[a] federal court decision." *Id.* And it has continued to provide certain drugs after that compulsion was lifted only because Notre Dame's coerced conduct had generated "rel[iance]" interests the University could not ignore. *Id.*[4]

---

[4] Plaintiffs question whether the "decision to impose cost-sharing" for that continued coverage "was actually based on religious reasons," and accuse the University of relying on "attorney representations" that "far exceed the scope of the Second Amended Complaint." Pls. Br. 27, 29–30 & n.18. Those "representations" however, are entirely consistent with documents incorporated into the Complaint, which show that "[r]ecommendations about coverage were formulated after consultation with moral theologians and medical experts." Frequently Asked Questions About Contraceptive Coverage, https://uhs.nd.edu/insurance-billing/insurance-faqs/faqs-regarding-contraceptive-coverage/ ("FAQs"). After this "consultation" and "prayerful" "discernment"—"which has a long history in the Catholic spiritual tradition"—Notre Dame decided to "provide coverage" for "simple contraceptives [i.e., drugs designed to prevent conception]." Jenkins Letter. Providing those drugs in a manner "consistent with Catholic principles" required use of "the University's own insurance plans," *id.*, which, as the Second Amended Complaint concedes, impose "out-of-pocket costs" for "prescription drugs." SAC ¶ 141; FAQs; Jenkins Letter (announcing "steps based on Catholic principles that nevertheless provide access to some of the coverage that members of our community seek").

In any event, Plaintiffs' reasoning is perverse. As detailed above, Notre Dame is entitled to refuse to provide *any* access to contraceptive coverage in connection with its health plans. Indeed, that was the University's original plan once the Mandate was lifted. SAC ¶ 124. But rather than provide *no* coverage, Notre Dame ultimately decided to consider Plaintiffs' reliance interests and provide *some* coverage, albeit with cost sharing. Plaintiffs' argument would thus penalize the University for going beyond its legal obligations to provide more benefits than required.

**(c)** As for Plaintiffs' claim that the Settlement violates prior regulatory authority, Pls. Br. 21–24, this assertion makes sense only if the Expanded Exemption is invalid, ND Br. 24. But the Government and Notre Dame have explained why it is lawful, both under RFRA and the Administrative Procedure Act. *E.g.*, ND. Br. 13-19; *supra* pp. 8–12. Moreover, even assuming the cited regulations were in force, Plaintiffs have not explained how a Settlement that falls within an agency's *statutory*, discretionary authority can be deemed illegal due to a purported regulatory conflict. *See supra* pp. 3–5; ND Br. 23–24. Again, *all* non-enforcement agreements allow litigants to operate in a manner inconsistent with otherwise applicable law. *E.g.*, *ERISA Indus. Comm. v. City of Seattle*, No. 2:18-cv-01188, 2018 WL 4237773 (W.D. Wash. Sept. 6, 2018); *Williams v. City of Atl.*, No. 1:17-cv-1943-AT, 2018 WL 2284374, at *4 (N.D. Ga. Mar. 30, 2018); *Topanga Press, Inc. v. City of L.A.*, 409 F. Supp. 2d 1188, 1191 (C.D. Cal. 2005). Were Plaintiffs correct, courts would have to deem all such agreements invalid.[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs' claim against Notre Dame should be dismissed.

---

[5] Plaintiffs cite Justice Kagan's concurrence, claiming the Settlement "contains the same infirmities as the Rules." Pls. Br. 3, 21–24.  But Justice Kagan's (relatively narrow) concerns regarding the Expanded Exemption do not apply to the Settlement: no one disputes Notre Dame has a "religious objection to the accommodation" and the University is not "a publically traded corporation[]."  140 S. Ct. at 2398–99 (Kagan, J., concurring).

Dated: November 5, 2020                          Respectfully submitted,


                                                 /s/ Matthew A. Kairis
                                                 Matthew A. Kairis (OH 0055502)
                                                 JONES DAY
                                                 325 John H. McConnell Blvd., Suite 600
                                                 Columbus, OH 43215
                                                 Tel.: 614-281-3605
                                                 Fax: 614-461-4198
                                                 makairis@jonesday.com

                                                 *Attorney for Defendant*
                                                 *University of Notre Dame*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served to the

Plaintiffs' counsel and to the government defendants using the Court's CM/ECF system on the

5th day of November, 2020:

/s/ Matthew A. Kairis
Matthew A. Kairis (OH 0055502)
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Tel.: 614-281-3605
Fax: 614-461-4198
makairis@jonesday.com

*Counsel for Defendant*
*University of Notre Dame*