**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| IRISH 4 REPRODUCTIVE HEALTH, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Cause No. 3:18-CV-491-PPS-JEM |
| vs. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This case hinges on the provision of contraceptive services for University of

Notre Dame students and employees and it continues to linger before me, this time on a

second round of motions to dismiss.  Previously, I largely denied motions to dismiss

filed by the Department of Health and Human Services, the Department of Labor, and

the Department of the Treasury (the "Federal Defendants"), as well as defendant Notre

Dame, which challenged the regulations allowing Notre Dame to declare itself exempt

from the Women's Health Amendment of the Patient Protection and Affordable Care

Act ("ACA") as well as the private settlement agreement reached between the Federal

Defendants and Notre Dame exempting the university from all existing and future

requirements with respect to contraceptive coverage.  However, following my opinion,

the United States Supreme Court issued a decision in *Little Sisters of the Poor Saints Peter*

*& Paul Home v. Pennsylvania*, ___ U.S. ___, 140 S.Ct. 2367 (2020), which greatly impacts

this case.  This Supreme Court decision prompted Plaintiffs, Irish 4 Reproductive

Health (an association of Notre Dame students), Natasha Reifenberg, and Jane Does 1-3,

to file a second amended complaint, voluntarily streamlining their claims somewhat.

The defendants now seek dismissal of the second amended complaint, relying heavily

on *Little Sisters* and another ensuing case, *Massachusetts v. United States Department of*

*Health & Human Services*, No. 17-11930-NMG, 2021 WL 185243 (D. Mass. Jan. 15, 2021).

Because I find the legal foundation (and indeed precedent established by the Supreme

Court) for these motions to dismiss has changed dramatically from when I issued my

earlier opinion in this case, the motions to dismiss the second amended complaint will

be granted.

## Factual Background

In my opinion dated January 16, 2020, I extensively reviewed the factual

background of this case, as well as the general controversy regarding the provision of

contraceptive care under the ACA. [DE 80.]  Familiarity with my earlier opinion is

assumed, and, as a result, I won't rehash the extensive background of this controversy.

Instead, I will simply pick up where that order left off.

During the previous round of motions to dismiss, I denied dismissal of Counts I-

V of the amended complaint and only dismissed Count VI (for violation of the Fifth

Amendment Due Process Clause) and Count VII (for violation of the Fifth Amendment

Equal Protection Clause).  Following the *Little Sisters* case, Plaintiffs filed a second

amended complaint.  [DE 102.]  The second amended complaint is more narrow than its

predecessor and only states four causes of action: Count I (against the Federal

Defendants) alleges the Settlement Agreement violates the Administrative Procedure

Act ("APA"); Count II (against all defendants) alleges the Settlement Agreement is void

for illegality; Count III (against the Federal Defendants) alleges the Final Rules violate

the substantive requirements of the APA; and Count IV (against the Federal

Defendants) alleges the Settlement Agreement and the Rules violate the Establishment

Clause of the First Amendment.

This case is before me on two motions to dismiss the Second Amended

Complaint.  The Federal Defendants have moved to dismiss all four claims in the

Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1]  Notre

Dame has moved to dismiss the one claim against it in the Second Amended Complaint

(Count II) also under Rule 12(b)(6).

Before I set about analyzing the parties' arguments, it is necessary to summarize

what happened in *Little Sisters*, as it is pivotal to the motions presently before me.  *Little*

*Sisters* entered the landscape after years of litigation across the country, and after the

Departments of Health and Human Services, Labor, and the Treasury exempted certain

---

[1] However, after the Federal Defendants filed their motion to dismiss, they filed a
motion for summary judgment on Count III of the second amended complaint to the
extent that it alleges the Final Rules are arbitrary and capricious. [DE 114.]  This claim
will not be considered here, but will be reserved for summary judgment.  I agreed to
hold in abeyance the motion for summary judgment on the claim that the Rules are
arbitrary and capricious, asking that Plaintiffs file their response to the motion for
partial summary judgment no later than 60 days after I issue this decision. [DE 135.]

employers who had religious and conscientious objections to the regulatory

requirement that employers were required to provide contraceptive coverage to their

employees through their group health plans.  The Third Circuit had upheld district

court decisions (from Pennsylvania and New Jersey) ruling the departments lacked

statutory authority to promulgate the exemptions from the ACA contraceptive

requirements (in the form of interim final rules and final rules), and the issuance of a

nationwide preliminary injunction against the implementation of the Final Rules.

The *Little Sisters* Court reversed and remanded, holding the departments *did*

have authority under the ACA to promulgate the religious and moral exemptions, and

finding the Rules were also free from any procedural defects.  After looking at the text

of the ACA, the Supreme Court found that the Health Resources and Services

Administration ("HRSA") "has virtually unbridled discretion to decide what counts as

preventive care and screenings.  But the same capacious grant of authority that

empowers HRSA to make these determinations leaves its discretion equally unchecked

in other areas, including the ability to identify and create exemptions from its own

Guidelines." *Little Sisters*, 140 S.Ct. at 2380.  The Supreme Court could not have been

clearer when it stated, "[u]nder a plain reading of the statute, then, we conclude that the

ACA gives HRSA broad discretion to define preventive care and screenings and to

create the religious and moral exemptions." *Id.* at 2381.  The late Justice Ginsburg

dissented, insisting that this interpretation thwarts Congress' intent to provide

contraceptive coverage to all women who want it, and this would make it harder for

interested women to obtain easy access to contraception without healthcare.  But the majority found these real world problems to be beside the point because "such a policy concern cannot justify supplanting the text's plain meaning."  *Id.* at 2381, 2411-12.

While the majority did not reach the issue of whether RFRA authorizes the Final Rules, it did note that "it was appropriate for the Departments to consider RFRA" and "[i]t is clear from the face of the statute that the contraceptive mandate is capable of violating RFRA."  *Id.* at 2382-83.  The justices went so far as to find that "our decisions all but instructed the Departments to consider RFRA going forward" and "[i]t is hard to see how the Departments could promulgate rules consistent with these decisions [*Hobby Lobby* and *Zubik*] if they did not overtly consider these entities' rights under RFRA."  *Id.* at 2383.  In the concurring opinion, Justices Alito and Gorsuch said they would have taken one step further, finding "RFRA *compels* an exemption for the Little Sisters and any other employer with a similar objection to what has been called the accommodation to the contraceptive mandate."  *Id.* at 2387 (emphasis added).

The majority of the Supreme Court did address and determine the Final Rules were procedurally proper, finding "[f]ormal labels aside, the rules contained all of the elements of a notice of proposed rulemaking as required by the APA."  *Id.* at 2384.  It held the Rules fully complied with "the maximum procedural requirements [that] Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures."  *Id.* at 2386 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 102 (2015)).

5

The majority opinion finished with a flair leaving little doubt where the Court

now stands on the issue, noting:

> [F]or the past seven years, [the Little Sisters] – like many other
> religious objectors who have participated in the litigation and
> rulemakings leading up to today's decision – have had to fight for
> the ability to continue in their noble work without violating their
> sincerely held religious beliefs.  After two decisions from this Court
> and multiple failed regulatory attempts, the Federal Government
> has arrived at a solution that exempts the Little Sisters from the
> source of their complicity-based concerns - the administratively
> imposed contraceptive mandate.  We hold today that the
> Departments had the statutory authority to craft that exemption, as
> well as the contemporaneously issued moral exemption.  We
> further hold that the rules promulgating these exemptions are free
> from procedural defects.  Therefore, we reverse the judgment of the
> Court of Appeals and remand the cases for further proceedings
> consistent with this opinion.

*Id.* at 2386.  It is with this decision in the forefront of my mind that I turn to the motions

to dismiss before me.

## Discussion

In order to survive a motion to dismiss under Rule 12(b)(6) for failure to state a

claim upon which relief can be granted, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While I must accept all factual allegations

as true and draw all reasonable inferences in the complainant's favor, I don't need to

accept threadbare legal conclusions supported by purely conclusory statements.  *See

Iqbal*, 556 U.S. at 678.  Plaintiffs must allege "more than labels and conclusions, and a

6

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

at 555.  Making the plausibility determination is "a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

U.S. at 679.

## I.      The Attack on the Settlement Agreement is No Longer Ripe

Plaintiffs' allegations in Counts I and II are aimed at the Settlement Agreement,

and Count IV alleges both the Settlement Agreement and Rules violate the

Establishment Clause.  I will address the claims relating to the Settlement Agreement

first, and turn to the Rules later in this opinion.

I have to acknowledge how much has changed since I drafted the earlier opinion

in this case.  When Notre Dame previously argued that the claims against the

Settlement Agreement weren't ripe because the current regulations exempted Notre

Dame from the mandate, frankly, I gave this argument short shrift.  I did so because the

prevailing sentiment at the time was that the Rules appeared to be on a shaky

foundation.  Indeed, two circuits had affirmed preliminary injunctions and found that

plaintiffs across the country were likely to succeed on the merits of their claim that the

Rules violated the APA.  *See Pennsylvania v. President of the United States*, 930 F.3d 543

(3d Cir. 2019); *California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410 (9th Cir.

2019).  I therefore reasoned that it was "likely that Notre Dame will need to seek refuge

in the Settlement Agreement as its reason for denying contraceptive coverage without

cost-sharing." [Opinion, DE 80, at 28.]  In other words, it looked like the lawfulness of

the Settlement Agreement was very much in play at the time.  But, of course, the

injunctions striking down the Rules which I relied upon as persuasive authority in my

earlier opinion no longer exist.  *Little Sisters* vacated the injunction arising out of the

Third Circuit and the day after that decision, the Supreme Court also vacated the

injunction affirmed by the Ninth Circuit.  *Little Sisters*, 140 S.Ct. at 2386; *Dep't of Health*

*and Human Servs. v. California*, No. 19-1038, 2020 WL 3865243 (July 9, 2020).

Now that the Rules have been upheld and are firmly in place, it is entirely

appropriate for me to revisit the issue of whether any challenge to the Settlement

Agreement is ripe. "Like mootness, but unlike standing, ripeness is reevaluated

throughout the course of litigation."  *Milwaukee Police Ass'n v. Board of Fire & Police*

*Comm'rs of the City of Milwaukee*, 708 F.3d 921, 933 (7th Cir. 2013) (citation omitted).

Ripeness "is peculiarly a question of timing" and "it is the situation now" that governs.

*Blanchette v. Connecticut General Ins. Corp.,* 419 U.S. 102, 140 (1974).

With the Rules having been upheld by the Supreme Court, I can't really say that

the Settlement Agreement itself is causing injury to the Plaintiffs because the same

result the Settlement Agreement provides Notre Dame (exempting it from the

contraceptive coverage mandate) is equally provided by the Rules (the validity of which

were upheld).  The challenge to the Settlement Agreement "is not ripe for adjudication

[because] it rests upon contingent future events that may not occur" - i.e., the

speculative possibility that the exemption might be invalidated at some point in the

future (whether that might happen through other extended litigation, or just a new

8

administration changing course).  *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal

quotation marks omitted).  Unless that exemption is actually struck down or the present

administration decides to scrap it at some point in the future, I can't say that the

Settlement Agreement is, by its own right, injuring Plaintiffs right now.  Thus, there is

no "genuine need to resolve a real dispute," *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759

(7th Cir. 2008) (citation omitted), and under the doctrine of prudential ripeness, I need

to refrain from deciding Plaintiffs' attack on the Settlement Agreement.  *Am. Petroleum*

*Inst. v. E.P.A.*, 683 F.3d 382, 387 (D.C. Cir. 2012) ("Put simply, the doctrine of prudential

ripeness ensures that Article III courts make decisions only when they have to.").

 Because the attack on the Settlement Agreement is no longer ripe, I will dismiss

those claims involving the Settlement Agreement. Generally, when a complaint is

dismissed because it is not ripe, it is dismissed without prejudice unless it seems there is

no way the plaintiff's grievances could ever mature into justiciable claims.  *See*

*Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 796 (7th Cir. 2002); *see also Forseth v.*

*Village of Sussex*, 199 F.3d 363, 373-74 (7th Cir. 2000) (affirming dismissal of federal

claims without prejudice for lack of ripeness).  Here, the Rules could still be struck

down at some point in the future, and if they were, the Settlement Agreement would

impede the Plaintiffs from getting the contraceptive services they would then be

otherwise entitled to.  At that point, the validity of the Settlement Agreement would be

back in play.  As such, I'll dismiss the claims relating to the Settlement Agreement

without prejudice.[2]

## II.      The Final Rules Are Consistent With the Establishment Clause

Count IV alleges the Rules and Settlement Agreement violate the Establishment

Clause which "commands a separation of church and state." *Cutter v. Wilkinson*, 544

U.S. 709, 719 (2005). Specifically, Plaintiffs claim the Settlement Agreement and Rules

have the primary purpose and principal effect of promoting, advancing, and endorsing

religion, and "impermissibly impose on Plaintiffs and other third parties undue costs,

burdens, and harms arising from the granting of religious exemptions from the ACA."

[DE 102 at 43-44.] I have already found the claims involving the Settlement Agreement

are not ripe, so I'll concentrate on whether the Rules run afoul of the Establishment

Clause.

Even though I determined this claim survived during the previous round of

motions to dismiss, candidly, it was a very close call. The briefing on this issue was

somewhat skimpy and because other claims were proceeding, I was swayed at the first

dismissal stage (barely) to keep this claim in the case as well. However, upon further

reflection, and after considering the reasoning set forth in *Massachusetts v. United States*

*Department of Health and Human Services*, No. 17-11930-NMG, 2021 WL 185243, at *8-9

---

[2] Indeed, I am cognizant of the fact that still pending before me on summary judgment is a substantive challenge to the Rules under the APA. Nonetheless, as it stands right now, the Rules remain in place. If this court or another at some point strikes down the Rules on the grounds that they are arbitrary and capricious, then the validity of the Settlement Agreement could once again be put in play since the dismissal of the claims against Notre Dame is without prejudice. But for now, with the Rules firmly in place, any challenge to the Settlement Agreement remains unripe.

(D. Mass. Jan. 15, 2021), I find that Plaintiffs have not shown that the Rules violate the

Establishment Clause.

As I recognized before, the proper test to analyze whether government action

jibes with the Establishment Clause is the three-part test established in *Lemon v.*

*Kurtzman*, 403 U.S. 602, 612-13 (1971) (citations omitted): "First, the statute must have a

secular legislative purpose; second, its principal or primary effect must be one that

neither advances nor inhibits religion; finally, the statute must not foster an excessive

government entanglement with religion."  I concur with the recent analysis of the

district court in *Massachusetts*, which applied and analyzed the *Lemon* test too.

The *Massachusetts* court found the plaintiff "has not shown that the Departments

intended to advance a particular religion or to promote religion in general."  2021 WL

185243, at *8.  It concluded the departments tried to "maintain neutrality and reduce

interference with religious decisionmaking in promulgating the Final Rules."  *Id.*  That

court also recognized the second *Lemon* requirement "does not mean that a law cannot

permit religious entities to advance religion.  Rather, it is impermissible for the

government itself to advance religion *through its own activities and influence*."  *Id.*

(internal quotation marks and citation omitted, emphasis added).  And, the court

concluded the Commonwealth had not shown the principal effect of the rules is the

advancement of religion by the government, rationalizing that "[p]ermitting entities to

practice their beliefs as they would in the absence of the relevant government-imposed

regulations does not, in this instance, rise to an unconstitutional violation of the

11

Establishment Clause." *Id.* Finally, the District Court of Massachusetts found that the Rules did not constitute excessive government entanglement with religion, noting "the Final Rules do not vest significant (or any) governmental authority in religious entities by creating an exemption from a statutory mandate." *Id.*

Overall, I agree with the straightforward reasoning set forth by the *Massachusetts* court. Although I recognize that the *Massachusetts* court decided its case on summary judgment, I fail to see what factual record needs to be further developed in this matter to properly analyze the Establishment Clause issue at this stage of the litigation. Indeed, challenges to governmental action under the Establishment Clause are frequently addressed at the motion to dismiss stage of litigation. *See, e.g., Mayle v. United States,* 891 F.3d 680, 684-87 (7th Cir. 2018) (finding on de novo review that Establishment Clause claim failed at dismissal stage); *Newdow v. United States*, No. 13 CV 741, 2013 WL 4804165 (S.D.N.Y. Sept. 9, 2013) (granting motion to dismiss Establishment Clause claim), *aff'd*, *Newdow v. Peterson*, 753 F.3d 105 (2d Cir. 2014), *cert denied*, 574 U.S. 1079 (2015); *Christian Legal Soc'y Chapter of Univ. of California v. Kane*, No. C 04-4484 JSW, 2005 WL 850864, at *3-6 (N.D. Cal. Apr. 12, 2005) (analyzing Establishment Clause claim under the *Lemon* test on a motion to dismiss, and granting motion to dismiss that claim); *McGinley v. Houston*, 282 F.Supp.2d 1304, 1306-08 (M.D. Ala. 2003) (granting motion to dismiss Establishment Clause claim when Ten Commandments monument was removed from judicial building); *Cathy's Tap, Inc. v. Village of Mapleton*, 65 F.Supp.2d 874, 891-92 (C.D. Ill. 1999) (holding on motion to

dismiss that ordinance did not violate the Establishment Clause).  In sum, I simply cannot find the Rules have the primary purpose of promoting, advancing, and endorsing religion.

Aside from this independent determination that the Rules do not violate the Establishment Clause, I note that *Little Sisters* hints at a similar conclusion.  The parties in *Little Sisters* did not argue that the Rules violated the Establishment Clause.  But Justices Alito and Gorsuch flat out observed in their concurring opinion that "there is no basis for an argument" that the Religious Exemption Rule violates the Establishment Clause.  *Little Sisters*, 140 S. Ct. at 2396 n.13.  Moreover, the discussion of RFRA in *Little Sisters* also lends credence to a hunch that the majority of that Court would also find the Rules could withstand an attack under the Establishment Clause.

The majority opinion in *Little Sisters* declined to determine whether RFRA independently compelled the agencies to adopt the Rules.  But if it had taken one step further and found RFRA did require the Rules, I think that would necessarily mean that the Rules do not violate the Establishment Clause.  *See, e.g., Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (recognizing that "RFRA is no ordinary statute . . . [t]hat is why our case law analogizes RFRA to a constitutional right.").  However, the *Little Sisters* majority did indicate that its previous decisions "all but instructed the Departments to consider RFRA going forward" and found "it was appropriate for the Departments to consider RFRA."  *Little Sisters*, 140 S.Ct. at 2383.

RFRA provides that the government "shall not substantially burden a person's

exercise of religion" unless it is "in furtherance of a compelling governmental interest"

and "is the least restrictive means" of doing so. 42 U.S.C. § 2000bb-1. A substantial

burden exists "where [the government] denies [an important] benefit because of

conduct mandated by religious belief, thereby putting substantial pressure on an

adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. Of Ind.*

*Emp't Sec. Div.*, 450 U.S. 707, 717-18 (1981).

The *Little Sisters* Court "made it abundantly clear that, under RFRA, the

Departments must accept the sincerely held complicity-based objections of religious

entities" and "must accommodat[e] the free exercise rights of those with complicity-

based objections to the self-certification accommodation." *Little Sisters*, 140 S.Ct. at 2383.

And, to the extent I voiced my personal view in the previous opinion that the self-

certification accommodation was a neutral law and did not impose a substantial burden

on institutions like Notre Dame, I recognize and accept the Supreme Court's reiteration

that the Departments cannot "tell the plaintiffs that their beliefs are flawed because, in

the Departments' view, the connection between what the objecting parties must do . . .

and the end that they find to be morally wrong . . . is simply too attenuated." *Little*

*Sisters*, 140 S.Ct. at 2383 (quoting *Burwell v. Hobby Lobby*, 573 U.S. 682, 723-24 (2014)).

When the majority stated "[i]t is hard to see how the Departments could promulgate

rules consistent with these decisions if they did not overtly consider these entities'

rights under RFRA," I accept this for what it is worth – a forecast that the Rules don't

encroach upon the Establishment Clause, because they are consistent with RFRA. *Id.* at

2383.

Justices Alito and Gorsuch, in their concurring opinion, voiced that they believed

exactly this - that "RFRA compels an exemption for the Little Sisters and any other

employer with a similar objection to what has been called the accommodation to the

contraceptive mandate." *Id.* at 2387.  Like the Little Sisters organization, it is

undisputed that Notre Dame has a sincere religious objection to the use of

contraceptives and a sincere belief that utilizing the accommodation would make them

complicit in providing services to which they religiously object.  As the concurring

opinion noted, as in *Hobby Lobby*, "it is not for us to say that their religious beliefs are

mistaken or insubstantial."  *Id.* at 2390 (quoting *Hobby Lobby*, 573 U.S. at 725).

Because *Little Sisters* makes clear that the government should have considered

the religious beliefs of affected entities in promulgating the Rules, and the Rules satisfy

the three-part test in *Lemon*, Plaintiffs have not shown the Rules violate the

Establishment Clause.  Therefore, Count IV as it relates to the claims against the Rules

will be dismissed with prejudice.

### III.    To the Extent Count III Alleges the Rules Violate The APA (Setting Aside the Argument They are Arbitrary and Capricious), Dismissal is Warranted

Count III of the second amended complaint alleges the Rules violate the APA.

[DE 102 at 40-43.]  *Little Sisters* found the Rules "contained all of the elements of a notice

of proposed rulemaking as required by the APA" and held they fully complied with

"the maximum procedural requirements [that] Congress was willing to have the courts

impose upon agencies in conducting rulemaking procedures."  *Little Sisters*, 140 S.Ct. at

2384, 2386 (quotation omitted).  As such, to the extent this count alleges any procedural

attack on the Rules, dismissal is mandated by the Supreme Court.

As noted above, Count III also alleges that substantively, the Rules are contrary

to the Establishment Clause.  [DE 102 at 181.]  I just addressed and rejected this

argument, so this portion of the count should be dismissed as well. Finally, the majority

of the Supreme Court declined to answer, and left as a remaining question for another

day, whether the Rules are arbitrary and capricious.  Because, as noted above, the

Federal Defendants in this case removed this issue from my consideration at this

dismissal stage by filing a lengthy administrative record along with a motion for partial

summary judgment on the issue of whether the Rules are arbitrary and capricious [DE

114], this portion of Count III remains pending.

### Conclusion

For the reasons set forth above, the motion to dismiss filed by Defendant

University of Notre Dame [DE 108] and the motion to dismiss filed by the Federal

Defendants [DE 109] are GRANTED as follows.

Notre Dame's motion to dismiss [DE 108] is GRANTED and Count II is

dismissed WITHOUT PREJUDICE as to Notre Dame because it is not ripe.

The Federal Defendants motion [DE 109] is GRANTED and the claims against the

Federal Defendants relating to the settlement agreement (Count I, Count II, and the

portion of Count IV that relates to the settlement agreement) are DISMISSED

WITHOUT PREJUDICE because they are not ripe.  The claims against the Federal

16

Defendants relating to the Rules (Count III on all claims except the claim that the Rules are arbitrary and capricious) and the claims that the Rules violate the Establishment Clause (Count IV) are DISMISSED WITH PREJUDICE.  The portion of Count III relating to the claims that the Rules are arbitrary and capricious REMAINS PENDING.

SO ORDERED.

ENTERED: August 12, 2021.

> /s/   Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT